Certification CITIUS
Made in: 14-12-2015

Justice Ministry
General Department of Justice Administration
Av. D. João ll, n.º 1.08.01 D/E, piso 0.º, 9.º a 14.º
1990-097 Lisboa

342310619

LETTERS OF REQUEST

HAGUE CONVENTION ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR
COMMERCIAL MATTERS, OF MARCH 18, 1970

| Identity and address of the Applicant | Address of receiving authority: |
|---|---|
| *Judicial District of Lisbon, Lisbon – Inst. Central, 1<sup>stCivil</sup> Section – J15 Phone number: 213846400 Fax: 211373579 E-mail: lisboa.centralcivel@tribunais.org.pt Palácio da Justiça, Rua Marquês de Fronteira* | *U.S. Department of Justice – Civil Division 1100 L Street N.W., Room 11006, Washighton, D.C. 20530 United States of America* |

**1. Person to whom the executed request is to be returned.**

| Identity and Address |
|---|
| Comarca de Lisboa, Palácio da Justiça, Rua Marquês de Fronteira |

**2. Specification of the date by wich the requesting authority requires receipt of the reponse to the letter of request.**

| Date : |
|---|
| Reason for urgency: |

IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOUR TO SUBMIT THE FOLLOWING REQUEST:

**3. a) Requesting Judicial Authority (article 3, a)**

*Judicial District of Lisbon, Lisbon – Inst. Central, 1<sup>stCivil</sup> Section – J15, Phone number: 213846400 Fax: 211373579 E-mail: lisboa.centralcivel@tribunais.org.pt Palácio da Justiça, Rua Marquês de Fronteira*

**b) To the competent authority of (article 3, a)**

| The requested State : U.S. Department Of Justice - Civil Division, Washington, D.C., 20530 United States Of America Estados Unidos da América |
|---|

AUG 1 0 2016

1894-36-1616  TO1

EXHIBIT 1

c) Name of the case and any identifying number

Type: ordinary procedure, File nr: 194466/12.2YIPRT

**4. Name and address of the parties and their representatives in the requested State)ª (article 3, b)**

a) Plaintiff:

Powerwave Tecnhologies, Inc.,

b) Defendant

Net Plan - Telecomunicações e Energia, S.A.

Representatives

Dr(a). Tiago Castanheira Marques, Lawyer of the Plaintiff, Powerwave Tecnhologies, Inc., with office at Av. das Forças Armadas, 125 - 12º, 1600-079 Lisboa; contacts: telephone - 217231800, fax - 217231899, e-mail - tcm-203511@adv.oa.pt
Dr(a). Tânia Correia de Jesus, Lawyer of the Defendant, Net Plan - Telecomunicações e Energia, S.A., with office at Avª. de Berna, 24 - 6º. Dtº., 1050-041 Lisboa; contacts: e-mail - taniacorreiajesus-145261@adv.oa.pt

c) Other parties

**5 a) Nature and proceedings (divorce, paternity, breach of contract, product liability, etc.) (article 3, c)**

Civil lawsuit arising from contract

b) Summary of complaint

The Plaintiff claims the payment by the Defendant of the invoices attached to the lawsuit, related with the supply of equipment under a reselling agreement named "Reseller Agreement".

c) Summary of defense and counterclaim

The Defendant opposed to the such request stating that it is also a creditor of the Plaintiff, asking for the offsetting of claims.

d) Other necessary information or documents

Attached please find copy of the initial application, opposition to the claim, reply to the opposition and documentation, as well as minutes of the preliminary court hearing.

*6. a) Evidence to be obtained or other judicial act to be performed (article 3, d)*

101

EXHIBIT 1

Witness examination

**b) Purpose of the evidence or judicial act sought**

For decision of the claim made in the lawsuit.

**7. Identity and address of any person to be examined (article 3, e)**

Witness: Stacey Collovi, address: 5001 Beach Boulevard, Apartment n.° 117, Buena Park, California, United States of America

**8. Questions to be put to the persons to be examined or statement of the subject-matter about witch they are to be examined (article 3, f)**

Examination of the witness to all the facts alleged by the Plaintiff and to the exception of compensation alleged by the Defendant, namely articles 12° to 14° and 26° to 31° of the opposition to the claim.

(or see attached list)

**9. Documents or other property to be inspected (article 3, g)**

**10. Any requirement that the evidence be given on oath or affirmation and any special form to be used (article 3, h)**

(in the event that the evidence cannot be taken in the manner requested, specify whether it is to be taken in such manner as provided by local law for the formal taking of evidence)

**11. Special methods or procedure to be followed (e.g. oral or in writing, verbatin, transcript or summary, cross-examination, etc.) (article 3, i and 9)**

Written statement and / or audio recording.

(in the event that the evidence cannot be taken in the manner requested, specify whether it is to be taken in such manner as provided by local law)

**12. Request for notification of the time and place for the execution of the request and identity and address of any person to be notified (article 7)**

**13. Request for attendance or participation of judicial personnel of the requesting authority at execution of the Letter of Request (article 8)**

EXHIBIT 1

14. Specification of privilege or duty refuse to give evidence under the law of the State of origin (article 11, b)

(Attach copies of relevant law or regulations )

15. The fees and costs incurred with are reimbursable under second paragraph of article 14 or under article 26 will be borne by :

(Identity and address)

| Date of request | Lisbon, the 15-December-2015 |
|---|---|
|  | (Signature and stamp) Dr.ª Gabriela de Fátima Marques |

Note:
In accordance with article 4º, first section, the letters of request must be written in the language of the requested authority, or accompanied with a translation in such language. However, in accordance with paragraphs 2 and 3 of article 4º the use of the French, English or other language can be allowed.

In order to avoid confusion, it is asked that the month is written in letter form in all dates.
It is requested the filling of the original and one copy of this form (if necessary use and attachment).

* Delete if unnecessary

EXHIBIT 1

National Applications Service

Only in case of returning this letter, send it to:
Apartado 8291
EC Cabo Ruivo
1803-001 Lisboa

Direct contacts:
Campo Mártires da Pátria, Palácio da Justiça
4099-012 Porto
Telephone: 220949310 to 19 – Fax: 220949505
VAT number: 600083551
E-mail: porto.bni@tribunais.org.pt

Application nr. 194466/12.2YIPRT
Postal registry: RN214859038PT

Dear Sir

Net Plan – Telecomunicações e Energia, S.A.

Centro Empresarial de Telheiras, Rua Hermano Neves, 22, 2ªA

Lisboa

1600-477 LISBOA

Registered with P.D.

NOTIFICATION

| Application nr. 194466/12.2YIPRT | Ref.: 600147203090 | Date. 11-12-2012 |
|---|---|---|
| Plaintiff | Powerwave Tecnologies, Inc.<br>Address: 1801 East Saint Andrew Place, Santa Ana, California, Santa Ana, 0000-000 | |
| Lawyer: | Pedro Sousa Uva (Tel.:217231800)<br>Address: Av. das Forças Armadas, 125 – 12, 1600-079 Lisboa | |
| Defendant: | Net Plan – Telecomunicações e Energia, S.A. | |

The addressee is hereby notified to, in 15 days, pay to the Plaintiff the claim bellow identified. In the same deadline the addressee can file an opposition to the claim through a petition.

After the end of the deadline without payment being made or opposition filed, the enforcement order shall be issued in the application, giving the Plaintiff the possibility to start an enforcement procedure.

The lack of payment of the claimed amount and of the court costs paid by the Plaintiff, shall give rise to the payment of interest at the legal interest rate., since the date the application was filled, and interest at the interest rate of 5% a year, since the date the enforcement order was issued.

The filling of opposition whose lack of justification the Defendant cannot ignore determines the condemnation of the same, in the judgment to be issued in the proceedings, in fine of value equal to the double of the court costs of the proceedings.

The applicant claims the payment of the amount of €691.816,75, in accordance with the discrimination and due to the reasons bellow identified:

Principal Debt: 664192,42        Interests: 27471,33     at the rate of :%        since

Until the current date;   Other amounts:        Court Costs paid: 153

Agreement of: Supply of services and goods                          Page: 1 of 3

Computer processed              Act: 14.703.090-0

EXHIBIT 1

Date of the agreement: 2012-04-30      Period referred to: 2012-02-22 to 2012-11-29

Allegation of the facts that justify the claim:

1. The Plaintiff is a commercial company duly incorporated under the laws of the State of Delaware and has the corporate purpose of developing, producing and selling telecommunications equipment'.
2. The Plaintiff and the Defendant have a commercial relationship for more than 10 years.
3. Within such commercial relationship, the Plaintiff entered into with the Defendant, in 30.04.2010, in a Reseller Agreement, hereinafter referred to as "Agreement".
4. Within such agreement, the Defendant had the obligation to sell, without exclusivity in the Portuguese Territory, certain products of the Plaintiff (clause 2.1).
5. The Agreement was being promptly complied by the parties until the moment the Defendant stopped paying the invoices for the equipment supplied by the Plaintiff starting from 28.02.2013, due date of Invoice nr. 2069929, in the amount of €71.590,80.
6. The Defendant did not pay the invoice identified in 5, and furthermore stopped paying all the subsequent invoices issued by the supplied equipment, as described below.
7. Nonetheless the lack of payment of the invoices by the Defendant, it kept receiving the products supplied by the Plaintiff without paying them.
8. Although the several formal requests made by the Plaintiff with the purpose of the Defendant paying the invoices, being the last letter dated of 26.10.2012 sent by the lawyers of the Plaintiff, the Defendant did not made the total or partial payment of the debt until the present date.
9. Taking in consideration the above, the Plaintiff has no other alternative but to file the present application in order to satisfy its claim and recover its credit.
10. The debt of the Defendant is net and due.
11. Therefore, the following amounts are owed by the Defendant, in relation to the following invoices:

Invoice nr. 2069929 in the amount of 71.590, 80 € + interests between 28-02-2012 and 26-11-2012 (4283, 68 €)

Invoice nr. 2071552 in the amount of 10.738, 62 € + interests between 26-03-2012 and 26-11-2012 (579, 01 €)

Invoice nr. 2071553 in the amount of 8.392, 00 € + interests between 26-03-2012 and 26-11-2012 (452, 48 €)

Invoice nr. 2071554 in the amount of 12.588, 00 € + interests between 26-03-2012 and 26-11-2012 (678, 71 €)

Invoice nr. 2071766 in the amount of 12.588, 00 € + interests between 26-03-2012 and 26-11-2012 (678, 71 €)

Invoice nr. 2070724 in the amount of 20.980, 00 € + interests between 12-03-2012 and 26-11-2012 (1195, 58 €)

Invoice nr. 2070831 in the amount of 9.741, 00 € + interests between 13-03-2012 and 26-11-2012 (552, 97 €) Page: 2 of 3

Page: 2 of 3

Computer processed          Act: 14.703.090-0

9                                                          EXHIBIT 1

Invoice nr. 2071907 in the amount of 13.125, 00 € + interests between 11-04-2012 and 26-11-2012 (661, 64 €)

Invoice nr. 2072145 in the amount of 6.294, 00 € + interests between 15-04-2012 and 26-11-2012 (311, 77 €)

Invoice nr. 2072146 in the amount of 17.833, 00 € + interests between 15-04-2012 and 26-11-2012 (883, 34 €)

Invoice nr. 2073775 in the amount of 3.960, 00 € + interests between 15-05-2012 and 26-11-2012 (170, 11 €)

Invoice nr. 2073966 in the amount of 31.131, 00 € + interests between 21-05-2012 and 26-11-2012 (1296, 41 €)

Invoice nr. 2074282 in the amount of 19.601, 00 € + interests between 27-05-2012 and 26-11-2012 (790, 48 €)

Invoice nr. 2074332 in the amount of 72.639, 00 € + interests between 27-05-2012 and 26-11-2012 (2.929, 44 €)

Invoice nr. 2074430 in the amount of 29.978, 50 € + interests between 29-05-2012 and 26-11-2012 (1195, 85 €)

Invoice nr. 2074917 in the amount of 1.778, 50 € + interests between 05-06-2012 and 26-11-2012 (68, 22 €)

Invoice nr. 2075042 in the amount of 92.240, 00 € + interests between 07-06-2012 and 26-11-2012 (3497, 54 €)

Invoice nr. 2075043 in the amount of 14.256, 00 € + interests between 07-06-2012 and 26-11-2012 (540, 56 €)

Invoice nr. 2075603 in the amount of 25.344, 00 € + interests between 18-06-2012 and 26-11-2012 (899, 88 €)

Invoice nr. 2075604 in the amount of 15.840, 00 € + interests between 18-06-2012 and 26-11-2012 (562, 43 €)

Invoice nr. 2075964 in the amount of 1.829, 60 € + interests between 21-06-2012 and 26-11-2012 (63, 76 €)

Invoice nr. 8000705 in the amount of 1.081, 50 € + interests between 25-06-2012 and 26-11-2012 (36, 72 €)

Invoice nr. 2076227 in the amount of 100.311, 00 € + interests between 26-06-2012 and 26-11-2012 (3.385, 84 €)

Invoice nr. 2076228 in the amount of 6.585, 00 € + interests between 26-06-2012 and 26-11-2012 (222, 27 €)

Invoice nr. 2077332 in the amount of 20.610, 50 € + interests between 11-07-2012 and 26-11-2012 (627, 91 €)

Computer processed          Act: 14.703.090-0

Invoice nr. 2078267 in the amount of 18.805, 50 € + interests between 05-08-2012 and 26-11-2012 (469, 88 €)

Invoice nr. 2078983 in the amount of 1.074, 60 € + interests between 18-08-2012 and 26-11-2012 (23, 79 €)

Invoice nr. 2079111 in the amount of 845, 00 € + interests between 20-08-2012 and 26-11-2012 (18, 34 €)

Invoice nr. 2079619 in the amount of 9.990, 00 € + interests between 30-08-2012 and 26-11-2012 (194, 87 €)

Invoice nr. 2079974 in the amount of 3.557, 00 € + interests between 04-09-2012 and 26-11-2012 (65, 49 €)

Invoice nr. 2080756 in the amount of 7.092, 00 € + interests between 18-09-2012 and 26-11-2012 (108, 81 €)

Invoice nr. 2081142 in the amount of 1.477, 50 € + interests between 24-09-2012 and 26-11-2012 (20, 73 €)

Invoice nr. 2081296 in the amount of 295, 50 € + interests between 25-09-2012 and 26-11-2012 (4,08 €).

Initial principal: 664 192,42€

Total Interests: 27 471,33€

Accrued capital: 691 663,75€

12. As well as late payment interests, already due and becoming due until full payment.
13. Added with court costs.

The courk Clerk

[illegible signature]

(Fátima Mendes)

- - The deadline above mentioned runs continuously since the date certified by the postman, suspending itself during judicial vacations that run from December 22 to January 3, from Palm Sunday to Monday after Easter and from July 16 to August 31. If the deadline ends in a day that the courts are closed, the deadline is transferred to the first business day following.**- If you want to make payment, you should do it directly to the Plaintiff.

Page: 3 of 3

Computer processed          Act: 14.703.090-0

EXHIBIT 1

Procedural document submitted by electronic means on the time and date indicated near the digital signature of the signee (cfr. last page), affixed in compliance with the rules established under the implement order nr. 114/2008, February, 6th, 2008.

STATEMENT OF OPPOSITION ( APPLICATION)

Ref.ª : 12079641

## DESCRIPTION

Purpose: add to application procedure          Ref. of judicial fees:

Competent Judicial Court: Nacional Application Service

Section: General Secretariat          Procedure number: 194466/12.2YIPRT

## DEMANDED

**Name/designation: Net Plan – Telecomunicações e Energia, S.A.**

Profession/Activity:

Adress: Centro Empresarial de Telheiras, Rua Hermano Neves, 22, 2.º A

District: Lisbon

ZIP Code: 1600-477, Lisbon

Telephone: 217521250          Fax: 217521255          NIF: 505407140

Email:          NIB:

ASSOCIATED PARTICIPANTS

## WITNESS
**Ana Isabel Parreira Lobo Rosa Dias Lobão Ferreira**

Profession/Activity:

Adress: Rua Hermano Neves, 22, 2.º B

District: Lisbon

Zip Code: 1600-477, Lisbon

Telephone:          Fax:          NIF:

Email:          NIB:

## WITNESS

**Nuno Miguel Carreiro Passos**

Profession/Activity:

Adress: Rua Hermano Neves, 22, 2.º B

District: Lisbon

Zip Code: 1600-477, Lisbon

Telephone:          Fax:          NIF:

Email:          NIB:

Lawyer
**Tânia Correia de Jesus**

Document processed by computer          Statement of opposition (Injuction): 12079641

1

Procedural document submitted by electronic means on the time and date indicated near the digital signature of the signee (*cfr*. last page), affixed in compliance with the rules established under the implement order nr. 114/2008, February, 6th, 2008.

Signing Lawyer

Name: Tânia Correia de Jesus

Adress: Av. de Berna, n.º 24 – 6.º Dto.

District:

Zip Code: 1050-041, Lisbon

Telephone:  218128621          Fax:   218128628          Email: taniacorreiajesus-14526l@adv.oa.pt

Document processed by computer                    Statement of opposition (injuction): 12079641

2

*TM D.*

13                                                   EXHIBIT 1

National Applications Service

Injunction N. ° 194466/12.2YIPRT

HONORABLE JUDGE

NETPLAN – TELECOMUNICAÇÕES E ENERGIAS, S.A., demanded on the abovementioned procedure, notified of the Application filed against her, by POWERWAVE TECNHOLOGIES INC, hereby present,

STATEMENT OF OPPOSITION,

On the terms and with the arguments below,

1. EXCEPTION

**I. – Lack of International Jurisdiction -**

1.º

Following the commercial relation that exists for more than ten years, the Plaintiff and the Defendant entered into on 30.04.2010 a purchase agreement for resale of equipment (Reseller Agreement), attached as doc. nr. 1.

2.º

On the said agreement, it is established, in clause 30.º, that all the disputes, disagreements and complains, as well as the breach, termination or voidance of the agreement, should be remitted to an arbitration procedure, in accordance with the rules foreseen by the Arbitration Institute of the Stockholm Chamber of Commerce.

3

EXHIBIT 1

3.º

On the same clause, it was also established that the arbitration procedures should be promoted in Stockholm, Sweden, in English.

4.º

And, finally, it is also foreseen, on the said clause, that what was stipulated with reference to the arbitration doesn't prevent the Plaintiff to present the request for payment before a court or an entity with legal capacity to demand an indisputable and a due payment.

5.º

However, the Defendant understands that the values in question are not entirely due and are disputable, as explained below.

6.º

Bearing in mind the above, it was signed a jurisdiction agreement between the Plaintiff and the Defendant, in which they opted for an arbitral court to be promoted in Stockholm, with the exclusion of any other court, withdrawing competence from the Portuguese courts to resolve any dispute.

7.º

The signing of a jurisdiction pact it is considered valid by the fulfillment of the criteria established on article 99.º, n.º 3 of the CPC.

8.º

Being such a pact known and agreed upon by the Plaintiff, on the date of the signing of the mentioned agreement.

9.º

Terms under which, if a breach of the jurisdiction pact agreed upon by the parties, occurs, such fact, constitute an exception of international competence, of the Portuguese court to judge this procedure.

**II – The Set-Off –**

10.º

In its application the Plaintiff claims the payment of invoice nr. 2071907, dated from January 12, 2012, in the amount of € 13.125,00, as per invoice attached under nr. 2.

11.º

In fact this invoice is not owed.

Please note that,

4

12.º

In November 2011, the Plaintiff supplied the Defendant equipment with reference «8212.40 Single Band Large Housing.Ret3GPP10-30VDC, supported by invoice nº 2060331, dated from November 17, 2011, in the amount of € 13.125,00, as per Doc. Nr. 3.

13.º

The Defendant received the equipment and paid the identified invoice, as per doc. nº 4.

14.º

In the meanwhile, the Plaintiff and the Defendant concluded that there was a mistake in the equipment sent and the Plaintiff, in January 2012, made a new shipment with the correct equipment with reference 8212.40 RET for simple band antenna 10-30VDC,AISGv2, supported by invoice nr. 2071907, dated from January 12, 2012, in the amount of € 13.125,00, as per Doc. 2

15.º

In this kind of situation, the usual between the Plaintiff and the Defendant was the issuing of a credit note by the Plaintiff in favor of the Defendant, which in the case *sub judice*, would be in the amount of € 13.125,00.

16.º

Though it was requested by the Defendant, the Credit note was never issued by the Plaintiff, as per Doc. 5.

17.º

It is necessary to stress out that the Plaintiff has full knowledge of this credit in favor of the Defendant in the amount of €13.125,00.

18.º

Notwithstanding, the Plaintiff until now has not issued the correspondent credit note.

19.º

The Defendant must be compensated of the referred credit in its favor, in the amount of €13.125,00 (thirteen thousand one hundred and twenty five euros) and being considered without effect the interest claimed regarding invoice nr. 2071907 in the amount of € 661,64.

Moreover,

20.º

The commercial relations between the Plaintiff and the Defendant always run in the best possible way.

5

EXHIBIT 1

In fact,

21.º

The Defendant is exclusive responsible for the sale of the Plaintiff's products in Portugal since 2001.

22.º

Acting, in fact, as an exclusive distributor of the Plaintiff's products for the Portuguese Territory.

23.º

This commercial relation, which lasts since 2001, has resulted in the sale of products of the Plaintiff made by the Defendant in a total amount superior to 5 million Euros.

24.º

The good commercial relation existing between the Plaintiff and the Defendant was recognized by the Defendant, in letter sent to the Plaintiff, dated from September 26, 2012 (as per doc. nr. 6 attached).

25.º

In the referred letter the Plaintiff, after stressing that values the long lasting relationship with Netplan ("we value our long-standing relationship with NetPlan") states that intends to share with the Defendant part of the sales of products of the Plaintiff.

Therefore,

26.º

In the letter sent in September 26, 2012, the Plaintiff states that intends to offer to the Defendant a credit in the amount of 12.000 dollars ("I am prepared to offer NetPlan a Credit Memo in the amount of §12k USD.") (as per doc. nr. 6).

27.º

The amount of 12.000 dollars recognized by the Plaintiff to be credited to the Defendant would be equivalent to 2% of 600.000 dollars resulting of alleged sale of products made directly to TMN by NokiaSiemens (NSN) and not, as it used to happen since 2001 by the Defendant.

28.º

In fact, the Plaintiff recognizes in the letter of September 26, 2012, that it was the role of the Defendant, while representative of the Plaintiff in Portugal since 2001, that allowed to affirm the brand and the recognition of the Plaintiff's products in Portugal.

6

EXHIBIT 1

Therefore,

29.º

The Plaintiff intended, through its letter of September 26, 2012, to reward the Defendant for the commercial effort made through the years, because since 2012 the Plaintiff had started to sell products to companies other than the Defendant.

30.º

The Defendant must be paid by the Plaintiff for the commercial relation existent since 2001 -- as recognized in the letter of September 26 -, which allowed the Plaintiff to reach new businesses as the one made with TMN through NSN.

31.º

However the sales made by the Plaintiff to TMN reached the total amount of 1.925.005,00€ (as per Doc. nr. 7 attached).

32.º

And not as alleged by the Plaintiff in the letter of September 26, 2012, of only 600.000

dollars (as per Doc. n.º 6).

Furthermore,

33.º

In equivalent cases the percentage given to the distributor – that was always the Defendant – is of 5%.

34.º

And not 2%, as alleged by the Plaintiff, in the letter of September 26, 2012.

In fact,

35.º

The Plaintiff and the defendant had agreed in a generic value of commission equivalent to 4%.

36.º

The value of 4% of commission to be paid by the Plaintiff to the Defendant results clairly from the e-mail sent by the Defendant to the Plaintiff in March 21, 2010 (as per doc. nr. 8 attached)

37.º

7

EXHIBIT 1

To the value of 4% is added a commission of 1% over each business made as a result of the resources invested by the Defendant in the commercial relation developed in Portugal in favor of the Plaintiff.

38.º

Which makes a total commission of 5%.

Therefore,

39.º

The Defendant is creditor of the Plaintiff in the amount of 97.600,00€, equivalent to 5% of the amount of 1.952.005,00€.

40.º

As a consequence the Defendant must be compensated of the referred credit in its favor, in the amount of €97.600,00 (ninety seven thousand and six hundred euros).

Under this terms and other terms of law, that your Excellence, will duly fulfill, shall the present statement of opposition be considered in favor of the Defendant and in consequence:

a) Should the exception of relative incompetence, derived from the breach of the jurisdiction pact, be considered verified, and, as result, the Portuguese court be considered incompetent to judge this dispute, and, as result of that be the Defendant acquitted from this judicial instance.

b) Should the exception of offsetting be considered in favor of the Defendant, and, as result of that be the Defendant acquitted from this judicial instance.

c) Should the special claim, derived from these proceedings, be dismissed, for lack of proof and the Defendant acquitted from the legal request, with all the legal consequences derived from that.

Witnesses:

- Ana Isabel Parreira Lobo Rosa Dias Lobão Ferreira, Chief of the Administrative and Finantial Department with office at Rua Hermano Neves, 22 – 2.º B, 1600 – 477 Lisboa – to be notified by the court;

8

EXHIBIT 1

- Nuno Miguel Carreiro Passos, Commercial Director, with office at Rua Hermano
Neves, 22 – 2.° B, 1600 – 477 Lisboa – to be notified by the court

**Recording of the Court Hearing:** It is requested the recording of the court hearing.

**Value:** the one of the application.

**Attached:** Power of attorney, 8 documents.

The Lawyer,

9

EXHIBIT 1

Dcc. 1

-12

RESELLER AGREEMENT

by and between

POWERWAVE TECHNOLOGIES, INC.

and

NET PLAN – TELECOMUNICAÇÕES E ENERGIA, S.A.

C: Users\noasoos\Desktop\Reseller Agreement EMEA rev 18-03-2010-NetPlan.doc

TO1B.

Powerwave Confidential

This Reseller Agreement is made and entered into by and between Powerwave Technologies, Inc. a company duly incorporated and organized under the laws of the state of Delaware and having its offices at 1801 East Saint Andrew Place, Santa Ana, California 92705 USA ("Powerwave"), and Net Plan – Telecomunicações e Energia, S.A., Registration Number 11293/20010525, a company duly incorporated and organized under the laws of Portugal and having its registered office at Centro Empresarial de Telheiras, Rua Hermano Neves, nº 22 - 2º A, 1600-477 Lisboa – Portugal ("Reseller").

Recitals

A.  WHEREAS, Powerwave is engaged in the development, manufacture and sale of telecommunication equipment, including, but not limited to, base station components, antennas, power amplifiers, repeaters and TMAs; and

B.  WHEREAS, Powerwave has agreed to appoint Reseller as its non-exclusive reseller in the Territory (as hereinafter defined) to resell certain Powerwave products, and Reseller has agreed to accept such appointment on the terms and conditions of the Agreement (as hereinafter defined).

NOW, THEREFORE, in consideration of the foregoing and the mutual agreements hereinafter set forth, Powerwave and Reseller agree as follows:

1.     **Definitions**

1.1     Whenever used in this Agreement (which term is deemed to include the Appendices hereto) the following terms and expressions shall, to the extent the context does not require otherwise, have the following meaning:

1.1.1   "Agreement" means this Reseller Agreement by and between Powerwave and Reseller as it may be amended from time to time in accordance with the terms set forth herein.

1.1.2   "Customer" means the party who acquired or plans to acquire a Product from Reseller.

1.1.3   "Product(s)" means the products described in Exhibit 1, which is attached hereto and incorporated herein by this reference, and such other products as the parties may agree to add to Exhibit 1 from time to time.

1.1.4   "Territory" means the geographic area listed in Exhibit 1 in which Reseller is authorized to resell the Products

1.1.5   "Trademarks" means any and all current or future company names, product names, marks, logos, designs, trade dress and other designations or brands used by Powerwave in connection with its products and services. 

2.     **Grant and Scope**

2.1     Powerwave hereby appoints Reseller to act as a non-exclusive reseller of Powerwave for the resale of the Products in the Territory during the term of this Agreement, and Reseller accepts such appointment in accordance with the provisions of this Agreement. Powerwave reserves the right to increase or decrease the number of authorized resellers in the Territory at any time without notice to Reseller

2.2     Reseller shall perform its obligations hereunder in accordance with all reasonable instructions that Powerwave may give Reseller from time to time. Reseller is free to set its own retail prices.

2.3     Reseller is not authorized to market or advertise the Products to Customers ocated outside of the Territory. Reseller shall refrain from actively seeking Customers for the Products outside the Territory and from establishing any branch or legal entity outside the Territory for the marketing and/or resale of the Products

1

C:\Users\...\Desktop\Reseller Agreement EMEA rev 16-03-2010-NetPlan.doc



Powerwave Confidential

2.4    For so long as Reseller acts as Powerwave's Reseller in the Territory, Reseller shall neither directly nor indirectly manufacture, import, market or sell any products that compete with the Products

2.5    Reseller represents and warrants to Powerwave that it has the necessary ability and experience to carry out the obligations assumed by it hereunder and that by virtue of entering into the Agreement it is not and will not be in breach of any agreement or any binding obligation to any third party

2.6    All inquiries regarding the Products received by Reseller from Customers situated outside the Territory shall be forwarded to Powerwave, solely for information purposes.

3.    Products

3.1    The Products are designed and manufactured in accordance with all applicable laws and regulations. If the Products at any time do not comply with laws and regulations applicable in the Territory, Reseller shall promptly inform Powerwave in writing. Such non-compliance shall not result in any liability whatsoever for Powerwave in favour of Reseller. Should Powerwave decide in its sole discretion that it cannot, for any reason, comply with the applicable laws and regulations of the Territory, then Powerwave shall inform Reseller thereof, and either party shall be entitled to terminate this Agreement upon sixty (60) days' prior written notice.

3.2    Powerwave reserves the right to withdraw one or more Products from the world market or the Territory. Any such decision shall be effective immediately upon communication of written notice to Reseller. Powerwave shall not incur any liability to Reseller based on any Product withdrawal, but in case of such withdrawal, either party shall be entitled to terminate this Agreement upon sixty (60) days' prior written notice.

4.    Independent Contractors

The relationship between Powerwave and Reseller established by this Agreement is that of vendor and purchaser and nothing in this Agreement shall be construed to make the Reseller a partner, joint venturer, officer, agent, or employee of Powerwave.   In performance of this Agreement, Reseller shall at all times act as an independent contractor.  Reseller has no authority to assume or create any obligation or responsibility, express or implied, on behalf of or in the name of Powerwave or to bind Powerwave in any manner whatsoever.  Reseller acknowledges that: (i) it is responsible for its own taxes and expenses and maintaining its own books and records; (ii) it is responsible for providing benefits for its own employees; and (iii) in performing its obligations under this Agreement, Reseller will have control of and be responsible for establishing the method and means by which it performs its services under the Agreement.

5.    Orders

Reseller shall submit orders to Powerwave on written purchase orders that shall constitute binding commitments to accept and pay for the number and type of Products stated therein, in accordance with the terms and conditions hereof.  Any terms or conditions contained in Reseller's orders other than the number and type of Products that Reseller is ordering shall not be binding unless accepted in writing by Powerwave  Any conflict between the terms and conditions of this Agreement and the terms and conditions of any order or other communication submitted by Reseller to Powerwave shall be resolved in favor of the terms and conditions of this Agreement.  No order shall be binding on Powerwave unless accepted in writing by Powerwave. Acceptance shall occur only through Powerwave's written confirmation or shipment. Risk of loss or damage for the Products shall pass to Reseller upon release of the Products by Powerwave to the transport carriers or shippers transporting the Products.   Reseller shall be responsible for freight, insurance, customs duties, taxes, tariffs and storage charges incurred in transit, unless otherwise provided by Powerwave

6.    Prices and Terms of Payment

6.1    Reseller shall purchase the Products at the prices set forth in Exhibit 1 or as otherwise mutually agreed between the Parties in writing.  Powerwave shall have the right to change the prices from

2

C:\Documents and Settings\Desktop\Reseller Agreement EMEA rev 18-08-2010-HkPlan .doc

Powerwave Confidential

time to time for any Products not yet the subject of an order submitted and accepted hereunder, on thirty (30) days' prior written notice. Price changes will not apply to Products for which Powerwave has received and accepted an order prior to the day the change is effective. All prices are based upon deliveries made FCA shipper's site (Incoterms 2000) unless otherwise specified by Powerwave.

6.2      All prices will be quoted and invoiced in either United States Dollars or Euros in which payment by Reseller is to be made.

6.3      The prices, fees and other charges of Powerwave do not include import licenses, customs duties, assessments, tariffs, value added tax, sales tax and similar taxes as well as any city, municipal, state or federal taxes or any withholding taxes, whether currently imposed or imposed in the future. If any such tax is found to be applicable, the appropriate amount of tax shall be invoiced to and paid by Reseller to Powerwave at the same time and on the same terms as applied to the payment due.

6.4      Unless otherwise agreed, Powerwave will render invoices to Reseller upon delivery of the Products ordered. Any amounts payable hereunder shall be paid within ninety (90) days from the date of invoice, and payment shall be made in accordance with the instructions stated on the invoice. Payment will not be considered effected until Powerwave receives in available funds the full amount due. All amounts paid to Powerwave by Reseller hereunder are nonrefundable and shall not be returned or repaid to Reseller upon termination of this Agreement or for any other cause. Product may not be returned to Powerwave except for warranty repair as provided in Clause 15.1 below.

6.5      If Reseller does not pay an invoice when it becomes due for payment, Powerwave reserves the right to stop delivery of Products to Reseller until the invoice has been duly paid. Powerwave agrees that this right shall not be executed without giving Reseller prior notice and a reasonable time period to settle the invoice.

6.6      Without prejudice to any of Powerwave's other rights, Reseller agrees to indemnify and hold Powerwave harmless from and against any and all loss, damage, expense or liability, including reasonable legal fees that arise or result from Reseller's failure to discharge its obligations under this Clause 6. In addition hereto, Powerwave may from the date on which Reseller was in default charge interest on unpaid amounts at an annual rate of eighteen percent (18%) or the maximum interest rate allowed under Swedish law, whichever is lower.

6.7      Reseller agrees to maintain good financial standing with Powerwave and agrees to provide Powerwave with such financial and credit information reasonably requested by Powerwave from time to time.

7.      **Sales Promotion**

7.1      Reseller shall maintain an efficient sales organisation within the Territory for the Products and shall use its best efforts to promote the sale of the Products in the Territory. Reseller shall maintain at its cost and expense suitable demonstration facilities for the Products. Reseller shall insure that the Products marketed to Customers are appropriate for the Customer's requirements. It is Reseller's responsibility to assure Customer satisfaction with Products and Reseller's related activities.

7.2      Reseller shall use adequate marketing resources so as to achieve an optimal coverage for the Products in the Territory.

7.3      Powerwave shall supply Reseller with a reasonable number of all its relevant printed sales promotion materials to serve as a basis for the promotional materials produced by Reseller. Reseller may produce printed sales promotion materials for its marketing of the Products. Such materials must be approved in writing by Powerwave before being published or in any other way made available to Customers or any third party.

7.4      Reseller shall carry its own costs for the marketing and sale of the Products.

3

C:\Users\nilsson\Desktop\Reseller Agreement EMEA rev 18-03-2010 Rhi-Plan.doc

     EXHIBIT 1

Powerwave Confidential

7.5     Reseller may not engage agents, value-added resellers or other third parties in the resale of the Products without the prior written consent of Powerwave and then only provided that Reseller causes the provisions of this Agreement to be complied with by such third parties. Reseller shall remain entirely responsible towards Powerwave for the fulfilment of the provisions of this Agreement by such third parties as well as for the activities of such third parties.

7.6     Powerwave shall be entitled to take part in Reseller's sales activities concerning the Products and in this connection, among other activities, be present at Customers' visits, fairs and policy meetings.

8.      **Sales Forecast**

Reseller shall provide to Powerwave on a monthly basis, a rolling three (3) month sales forecast in a format specified by Powerwave.

9.      **Maintenance and Service**

9.1     Reseller shall use its best efforts to report to Powerwave promptly all suspected and actual problems with the Products. Powerwave will endeavor to keep Reseller apprised of known Product problems.

9.2     Reseller shall establish and maintain an efficient service organisation for the Products in the Territory.

9.3     Reseller shall perform all reasonably required end-user planning for the physical installation of the Products. Reseller shall provide installation and support services for all Products

9.4     Reseller shall not make any representation or give any assurance that exceeds or differs from the scope of Powerwave's written limited warranty. Reseller agrees to indemnify Powerwave and to hold it harmless from and against any loss, damage, claims or demands whatsoever arising out of any express warranties or representations made by Reseller, its agents or employees which are not part of Powerwave's written warranty and approved specifications for the Products.

10.     **Records and Reports**

10.1    Reseller shall keep Powerwave continuously informed about marketing conditions within the Territory such as development of the market for the Products in the Territory, competition, market shares, Reseller's sales promotion, sales made, prospective sales as well as other information reasonably requested by Powerwave. Reseller shall on an annual basis, in such manner as Powerwave may from time to time require, provide Powerwave with detailed marketing plans.

10.2    Reseller shall maintain a record for each Product sold to a Customer. The record shall include the name and address of the Customer, the date of the sale, the Product and the Product type.

10.3    Reseller shall provide Powerwave with monthly, quarterly and annual reports concerning its sales to Customers in a format specified by Powerwave as Powerwave shall reasonably require. Reseller shall be liable to Powerwave for the accuracy of any such reports and for any delays in providing such reports   Reseller specifically agrees to reimburse Powerwave in full to the extent that Powerwave incurs liquidated damages or penalties to a Customer based on Reseller's failure to provide accurate and/or timely reports.

11.     **Training**

11.1    If agreed between the parties Powerwave may provide training in the use and installation of the Products for Reseller's personnel. Such agreement shall be either added as an exhibit to this Agreement or documented in a separate agreement

11.2    Any additional training requested by Reseller may be provided by Powerwave upon written agreement in accordance with its standard scale of charges in force from time to time

4

C:\dsverompackson\Desktop\Reseller Agreement EMEA rev 14-03-2000 HeyPbm.doc

Powerwave Confidential

12.     **Trademarks and Other Intellectual Property Rights**

12.1    Powerwave grants Reseller the limited permission to use the Powerwave mark solely to identify the Products acquired from Powerwave under this Agreement.  Reseller must indicate that all Powerwave Trademarks are registered trademarks of Powerwave, and must comply with the then current Powerwave trademark and logo policies.  Powerwave reserves the right to revoke or limit the use of the Trademarks at any time upon reasonable notice.

12.2    Except as stated above, Reseller is granted no right, title, license or interest in the Trademarks. Reseller acknowledges Powerwave's rights in the Trademarks and agrees that any and all use of the Trademarks by Reseller shall inure to the sole benefit of Powerwave.  Reseller agrees that it shall take no action inconsistent with Powerwave's ownership of the Trademarks and agrees not to challenge Powerwave's rights in or attempt to register any of the Trademarks, or any other name or mark owned or used by Powerwave or any mark confusingly similar thereto.  If at any time Reseller acquires any rights in, or any registration or application for, any of the Trademarks by operation of law or otherwise, it will immediately, upon request by Powerwave and at no expense to Powerwave, assign such rights, registrations, or applications to Powerwave, along with any and all associated goodwill. 

12.3    Upon the expiration or termination of this Agreement Reseller shall not be entitled to use the Trademarks

12.4    Reseller shall not register, or attempt to register, any Trademarks or any marks confusingly similar thereto in any jurisdiction.

12.5    Reseller shall ensure that the legal interests of Powerwave regarding its intellectual property rights are adequately protected in Reseller's Customer contracts.

12.6    Reseller shall promptly notify Powerwave of any use by any third party of Trademarks or any use by such third parties of similar marks which may constitute an infringement or passing off of the Trademarks  Powerwave reserves the right, in its sole discretion, to institute any proceedings against such third party infringers and Reseller shall refrain from doing so itself.  Reseller agrees to cooperate fully with Powerwave in any action taken by Powerwave against such third parties, provided that all expenses of such action shall be borne by Powerwave and all damages which may be awarded or agreed upon in settlement of such action shall accrue to Powerwave.

13.     **Reseller's Responsibility**

        Reseller shall take complete responsibility and liability, including claims from third parties, arising from Reseller's and/or its appointed third parties' activities or negligence under this Agreement and Reseller hereby undertakes to indemnify and to hold Powerwave harmless from any responsibility, liability and expense thereof.

14.     Insurance

        Reseller will keep its business and properties insured at all times against such risks for which insurance is usually made by other persons engaged in a similar business similarly situated (including without limitation insurance for, commercial general liability, fire and other hazards and insurance against liability on account of damage to persons, or property and insurance under all applicable workman's compensation laws).  Reseller shall add Powerwave as an additional named insured to such insurance policy and provide Powerwave with a certificate evidencing such coverage within thirty (30) days of the execution of this Agreement

15.     **Limited Warranty, Disclaimer and Limitations.**

5

C:\sers\mgac\os\Desktop\Reseller Agreement EMEA rev *8-03-2012\NRP on Jot

15.1    Powerwave warrants that the Products are free from defects in material and workmanship and will perform in accordance with their published specifications for a period of one (1) year from the date of delivery. This warranty shall not apply to any defect that has been caused by a Customer and arises from mishandling, misuse, neglect or improper installation, testing or repair. Any Product which does not conform to the above warranty may be returned to Powerwave at its designated location for repairs during the warranty period for repair or replacement, at Powerwave's sole discretion. Before returning any Product, Reseller must obtain a return merchandise authorization ("RMA Number") from Powerwave. Reseller shall be responsible for all freight charges, duties and tariffs in returning Product on a DDU basis to Powerwave's designated repair facility. Powerwave will pay the freight charges in returning repaired or replacement Product on a DDU basis to Reseller's designated location. Powerwave's standard no fault found, out of warranty repair, and beyond economic repair charges will apply to any units returned for repair as applicable. Any additional or other warranty made by Reseller to its end-user Customers shall be the sole responsibility of Reseller and Reseller agrees to hold Powerwave harmless from and against any liability or obligation Powerwave may incur as a result of any such additional or other warranty. ANY IMPLIED WARRANTIES, INCLUDING WARRANTIES OR CONDITIONS OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE EXPRESSLY EXCLUDED.

15.2    The sole and exclusive remedy of Reseller, as well as its successors and assigns, for any defect or nonconformity in the Products shall be to obtain repair or replacement of the defective units that are returned to Powerwave during the warranty period, pursuant to the Incoterms specified above.

15.3    POWERWAVE DISCLAIMS ANY AND ALL LIABILITY FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING LOSS OF PROFITS) ARISING OUT OF THIS AGREEMENT OR WITH RESPECT TO THE INSTALLATION, USE, OPERATION OR SUPPORT OF THE PRODUCTS EVEN IF POWERWAVE HAS BEEN APPRISED OF THE POSSIBILITY OF SUCH DAMAGES.

15.4    Except for infringement of third party intellectual property or property damage caused by the negligent or intentional acts of Powerwave or its employees, Reseller specifically agrees that any liability for Products provided under this Agreement on the part of Powerwave, whether in contract, tort or other legal theory, shall not exceed the amount paid to Powerwave for the Products giving rise to the liability.

16.     Intellectual Property Rights Indemnity

16.1    There may be patents, utility models, trademarks, trade names, design patterns, copyrights and other intellectual property rights relating to the products delivered to Reseller that belong to Powerwave. Reseller agrees to respect any such intellectual property rights and understands that the use of Products and any intellectual property rights pursuant to the Agreement does not include or cause the transfer of ownership thereof or give any proprietary or license rights, unless specifically agreed herein or in a separate written agreement, in any of them to Reseller. Reseller agrees to inform Powerwave as soon as it receives any knowledge of any intellectual property right belonging to or used by Powerwave being infringed or allegedly infringed.

16.2    Powerwave will defend or settle, at its own expense, but under its sole direction and contingent on Reseller's cooperation, any claim alleging that any Product in its unmodified form infringes any patent, trademark, copyright, or trade secret in the Territory. If any Product becomes the subject of such a claim, Powerwave reserves the right, at its option to: (1) modify or replace the affected parts so the Product becomes non-infringing, (2) obtain for Reseller the right to continue to use the Product or (3) if the foregoing cannot reasonably be accomplished, refund the fees paid for the infringing Product, less depreciation (based on a "straight-line" five-year depreciation formula applicable to the actual period of use). This section states the entire liability of Powerwave for any infringement involving the Products.

17.     Confidential Information

6

Powerwave Confidential

17.1    Reseller acknowledges that it will receive confidential information and trade secrets (the "Confidential Information") from Powerwave in the course of performing this Agreement The term Confidential Information shall include all information, data or knowledge (whether in oral, written, graphic, electronic, machine-readable or other form) related to Powerwave's business, operations, products, financial affairs, customers and vendors, including without limitation, technical data, research, concepts, ideas, designs, know-how, concepts, patent applications, forecasts, customer lists and contacts.

17.2    Reseller agrees to maintain the secrecy of Powerwave's Confidential Information.   Confidential Information shall be used solely for the purposes set forth in this Agreement and be made known solely to employees on a need-to-know basis. Reseller shall ensure that the aforementioned employees are made aware of and on their own account adhere to these contractual obligations regarding the confidentiality of Confidential Information

17.3    Confidential Information shall not include any information that is publicly available at the time of disclosure or subsequently becomes publicly available through no fault of the recipient party or is rightfully acquired by the recipient party from a third party who is not in breach of an agreement to keep such information confidential

17.4    The foregoing obligations shall replace any previously agreed obligations regarding secrecy in respect of information relating to the Products and/or this Agreement and they shall survive the termination of this Agreement and remain valid for a period of five (5) years after such termination, unless such information shall be disclosed to the public or shall become public knowledge other than by breach of this obligation.

18.     **Force Majeure**

18.1    Neither Powerwave nor Reseller shall be liable to the other for any delay or non-performance of its obligations under the Agreement in the event and to the extent that such delay or non-performance is due to an event of Force Majeure (as defined hereinafter).

18.2    Events of Force Majeure are events beyond the control of a party or any of its sub-contractors that occur after the date of Powerwave's order confirmation referred to above and which were not reasonably foreseeable at that time and whose effects are not capable of being overcome without unreasonable expense and/or loss of time to the party concerned. Events of Force Majeure shall include (without being limited to) war, civil unrest, strikes, lockouts and other general labour disputes, acts of government, natural disasters, exceptional weather conditions, breakdown or general unavailability of transport facilities, accidents, fire, explosions, and general shortages of energy and materials.

18.3    A party directly affected by an event of Force Majeure shall lose the right to rely on the same, unless, promptly after the time when the party became or ought to have become aware of the occurrence of the event, that party gives the other party written notice thereof. When the event of Force Majeure has come to an end, the said other party shall be notified and also, if possible, be informed when any measure postponed by the event will be effected

19.     **Term of the Agreement**

19.1    This Agreement shall enter into force when duly signed by an authorized representative of Powerwave and Reseller and shall remain in force for a period of one (1) year

19.2    This Agreement may be terminated by either party by providing the other party sixty (60) days' advance written notice. Upon expiration of the original term of this Agreement, it shall continue from year to year thereafter with the approval of both parties in writing subject to termination at any time as aforesaid with thirty (30) days' prior written notice

19.3    Notwithstanding the foregoing provisions, this Agreement may be terminated

7

C:\...\Powerwave Device Reseller Agreement EMEA rev 18-03-2010-NetPlan.doc

Powerwave Confidential

(a)   by either party immediately upon written notice if the other party should become insolvent or enters into negotiations on composition with its creditors or a petition in bankruptcy should be filed by it or it should make an assignment for the benefit of its creditors; or

(b)   by either party immediately upon written notice if the other party should fail to fulfil any of its obligations under this Agreement and such failure is not remedied within thirty (30) days from having received a request for such remedial action from the first party; or

(c)   by Powerwave upon thirty (30) days written notice if Reseller shall (or shall threaten to) sell, assign, part with or cease to carry on its business or that part of its business relating to the marketing and resale of the Products; or

(d)   by Powerwave immediately upon written notice if the control of Reseller shall be transferred to any person(s) other than the person(s) in control of Reseller at the effective date of this Agreement (but Powerwave shall only be entitled to terminate within the period of sixty (60) days after Powerwave shall have been notified in writing of the change in control); or

(e)   by Powerwave immediately upon written notice in the event that Reseller breaches its obligations to Powerwave under Section 27.1 of this Agreement.

20.   **No Compensation; No Right of Return**

Reseller shall not because of the termination of this Agreement be entitled to any damage or other compensation whatsoever whether for loss of Customers or any other detriment. Reseller shall have no right to return any Products ordered or purchased from Powerwave except as set forth in the limited warranty provision above.

21.   **Effects of Termination**

21.1   On the termination of this Agreement all rights and obligations of the parties hereunder shall automatically terminate except:

(a)   for such rights of action as shall have accrued prior to such termination and any obligation which expressly or by implication are intended to come into or continue in force on or after such termination; and

(b)   Reseller shall be entitled to sell any of its stocks of the Products which have been fully paid for and which are required to fulfil unperformed contracts of Reseller outstanding at the date of termination (and to the extent and for that purpose the provisions of this Agreement shall continue in effect)

21.2   Reseller shall at its own expense forthwith return to Powerwave or otherwise dispose of as Powerwave may instruct all technical and promotional materials and other documents and papers whatsoever sent to Reseller and relating to the Products or the business of Powerwave (other than correspondence between the parties) and all property of Powerwave being in each case in Reseller's possession or under its control.

21.3   All orders for undelivered Products shall be automatically cancelled

21.4   All outstanding unpaid invoices in respect of the Products shall become immediately payable in place of the payment terms previously agreed between the parties

21.5   Powerwave shall be entitled to repossess any of the Products that have not been paid for against cancellation of the relevant invoices (and so that Reseller hereby irrevocably permits Powerwave its employees and agents to enter any of the premises of Reseller for such purpose).

21.6   Powerwave shall be entitled (but not obliged) to purchase all or any unsold Products in the possession or under the control of Reseller which have been paid for by Reseller (and which are not required to fulfil any unperformed contracts of Reseller outstanding at the date of termination) at the

8

Powerwave-Spacedek Reseller Agreement EMEA rev 18-03-2010-NetPlan.doc

price paid to Powerwave by Reseller for such Products  subject to Powerwave paying all necessary value added tax and other taxes, duties or levies  and paying the cost of arranging transport and insurance and to notifying Reseller in writing of its requirements with fourteen (14) days of the date of termination. Reseller shall give Powerwave necessary assistance and co-operation for the purpose of giving effect to the provisions of this Clause and of delivering the Products to Powerwave but, subject thereto, any Products which are not purchased by Powerwave within thirty (30) days of its notice may be sold by Reseller (Reseller using its best efforts to sell the same within three (3) months thereafter) in accordance with the terms of this Agreement (and to that extent and for that purpose such terms shall continue in effect).

22. **No Revival**

After the termination of this Agreement, the acceptance of orders from Reseller by Powerwave or the continuance of the sales by Reseller of the Products or the referring or inquiries to Reseller by Powerwave shall not be construed as a revival of this Agreement.

23. **Assignment**

23.1 Reseller will not assign or attempt to assign or otherwise transfer any right or obligation arising out of this Agreement without obtaining Powerwave's prior written consent.

23.2 Powerwave may assign any or all of its rights or obligations arising out of this Agreement to any third party by giving notice to Reseller.

24. **Amendments**

No amendments, changes, revisions or discharges of this Agreement, in whole or in part, shall have any force or effect unless set forth in writing and signed by the parties hereto.

25. **Agreement**

25.1 This Agreement (together with all attachments and exhibits hereto) constitutes the entire agreement between the parties and supersedes any and all prior proposals, representations, understandings, and all other agreements between the parties, whether written or oral, with respect to the subject matter hereof. Any purchase order, order acknowledgement, invoice or other document containing additional or different terms or conditions shall not have force or effect upon the terms and conditions of this Agreement and any party receiving such document shall not be deemed to have accepted said additional or different terms or conditions by its failure to object thereto.

25.2 In the event of a conflict between the various parts of this Agreement, the documents of this Agreement will, unless otherwise specified, prevail in the following order of precedence:

(a) The numbered Clauses of this Agreement.

(b) The Appendices in numerical order.

26. **Waiver**

The failure of either party hereto to insist upon the strict adherence to any term of this Agreement on any occasion shall not be considered as a waiver of any right hereunder nor shall it deprive that party of the right to insist upon the strict adherence to that term or any other term of this Agreement at some other time.

27. **Compliance with Law and Supplier Code of Conduct**

27.1 Reseller agrees to comply with all applicable laws in respect of this Agreement and to indemnify and hold harmless Powerwave from and against all claims, damages, losses, expenses, fines and

9

C:\users\spaxson\Desktop\Reseller Agreement EMEA  ev '8 03 2010 RedPlan.doc

Powerwave Confidential

penalties incurred by, or asserted against, Powerwave which arise as a result of Reseller's violation or alleged violation of any such laws.

27.2    Reseller certifies and represents that, in connection with its activities with or for Powerwave, it:

(a) will comply with the laws, rules and regulations of all applicable jurisdictions including, but not limited to, the Foreign Corrupt Practices Act ("FCPA") and other applicable anti-bribery laws including any applicable laws, regulations, and administrative requirements promulgated under the OECD Convention on Combating Bribery of Foreign Public Officials and that it will not otherwise take any actions that will cause Powerwave to violate those laws.

(b) will not, directly or indirectly, make or authorize any payments or gifts, or offers or promises of payments or gifts or things of value, directly or indirectly, to any official or employee of any U.S. or foreign national, state, or local government or any agency or instrumentality thereof; to any candidate for public office, to any political party, or any officer or employee thereof in violation of the FCPA, other applicable anti-bribery laws, or with Powerwave's FCPA Policy, which is attached hereto as Exhibit 2 and incorporated herein by this reference, and Powerwave's Supplier Code of Conduct, which is attached hereto as Exhibit 3 and incorporated herein by this reference.

27.3    Powerwave and Reseller shall comply with all applicable export control laws, including U.S. export laws and regulations, and each party agrees that, without obtaining the necessary license or approval from the United States government it will not (i) export or re-export, directly or indirectly, any Product or technical data or any direct product of that technical data (including Confidential Information) to any country for which the U.S. Government at the time of export, requires an export license or other governmental approval, or (ii) disclose any technical data (including Confidential Information) acquired from the other party to any national of any country for which the U.S. Government requires an export license or other governmental approval.  Reseller will obtain Powerwave's prior written consent for any re-export or re-transfer of Powerwave's Products and technical data, as well as for any disclosure of such technical data to a national of any country for which the United States government or any agency thereof requires an export license or other governmental approval.  Under no circumstances may Reseller export or re-export any Powerwave Products or technical data to countries, persons, or entities that are subject to U.S. economic sanctions or that are subject to restrictions under the U.S. Export Administration Regulations. Countries subject to broad economic sanctions currently include Cuba, Iran, North Korea, Sudan and Syria.

27.4    Terms of Sale or other specific agreement will denote the IMPORTER OF RECORD.  The importer of record shall comply with all applicable import laws, rules and regulations of the United States and/or any other applicable countries.  The importer of record is responsible for all customs duties and other customs-related fees.  The importer of record is eligible for duty drawback rights to the Products

27.5    Reseller shall comply with the latest version of the Powerwave's FCPA Policy and Supplier Code of Conduct, both of which shall be updated and made available to Reseller at the internet web page set forth below. http://www.powerwave.com/governance.asp.  Reseller shall recertify its compliance with Powerwave's FCPA Policy and Supplier Code of Conduct on an annual basis

27.6    Reseller will fully cooperate in any investigation, including making employees available for interviews, in the event that Powerwave requests such cooperation.

27.7    With respect to Reseller's compliance with its obligations under this Agreement, at all times that this Agreement remains in effect and for a period of twenty-four months following any lapse or termination of this Agreement, Powerwave shall have the right to conduct an audit of Reseller's records that reasonably relate to such compliance.  Such audit shall include the right to interview Reseller's employees, representatives, contractors, and agents with respect to such records.

10

C:\Users\dgpeters\Desktop\Reseller Agreement EMEA rev 18-03-2010-NetPlan.doc

Powerwave Confidential

27.8    Any breach of the foregoing obligations shall constitute a material breach of this Agreement which may result in immediate termination of this Agreement by Powerwave.

28.    **Survival of Rights and Obligations**

Rights and obligations under this Agreement, which by their nature would continue beyond the termination or ending in any other way of this Agreement shall survive the termination of this Agreement.

29.    **Governing Law**

This Agreement shall be governed by, and construed and enforced in accordance with the substantive laws of the Kingdom of Sweden without regard to its principles of conflicts of laws or the United Nations Convention on the International Sale of Goods.

30.    **Disputes**

Any and all disputes, controversies and claims arising out of or in connection with this Agreement, or the breach, termination or invalidity thereof, shall be settled by arbitration in accordance with the rules of the Arbitration Institute of the Stockholm Chamber of Commerce. Unless the parties agree otherwise, the arbitration proceedings shall be conducted in Stockholm, Sweden, in the English language. The arbitral tribunal shall be composed of one (1) arbitrator. Unless the disputing parties agree otherwise, the Arbitration Institute of the Stockholm Chamber of Commerce shall appoint the arbitral tribunal. The arbitration award shall be final and binding upon the parties. The foregoing shall not restrict Powerwave from going to court or to a competent authority in order to seek payment from Reseller of an amount which is undisputed and due for payment

31.    **Notices**

All notices, requests, demands and other communications required by this Agreement to be given by either party to the other party shall be forwarded by registered mail, telefax or hand delivery and shall be addressed as follows:

If to Powerwave, to:

Powerwave Technologies, Inc
1801 E. St. Andrew Place
Santa Ana, California 02705 USA
Telefax: +001 714 466 5801
Attn: Chief Financial Officer

If to Reseller, to:

Net Plan – Telecomunicações e Energia, S A
Centro Empresarial de Telheiras
Rua Hermano Neves, nº 22, 2º A
1600-477 Lisboa - Portugal
Telefax: +351 21 752 12 50
For the Attention of Administrator

or to such other address as either party may specify from time to time in writing to the other. Notices shall have been received or deemed received by the intended recipient on the date of registered delivery, sender's telefax confirmation of transmission or upon signed receipts for hand deliveries, as the case may be

11

C. Lburen.esasco-DisputepReseller Agreement EMEA rev 18-03-2010 NetPlan .doc

Powerwave Confidential

This Agreement has been executed in two identical counterparts, whereof the parties have taken one each. This Agreement enters into force and effectiveness on the date fully signed by both parties

Place: Santa Ana, California USA

Powerwave Technologies, Inc.

By: _____

(print name)   KEVIN T. MICHAELS

Title:   CHIEF FINANCIAL OFFICER

Date:   MAY 5, 2010

Place: Lisboa, Portugal

Net Plan – Telecomunicações e Energia, S.A.

By: _____

(print name) Rui Pereira da Silva

Title:Administrator

Date:30.04.2010

12

Powerwave process Distributor/Reseller Agreement EMEA rev 18-03-2010 NetPlan.doc

P⟶

Foy

**Powerwave**
by powerwave



| INVOICE NO. 2201927 | | DATE 12-JAN-2012 | Page 1 of 1 |
|---|---|---|---|
| SALES ORDER NO. 21021650 | | RELEASE NO. | |
| PO NUMBER: 2952011 | | | |

Bill To:
NET PLAN TELECOMUNICACOES LDA
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22/2A
LISBON 1600-177
Portugal

Ship To:
TIEGA GL SA
ZONA INDUSTRIAL DA MARICA
LOTE 22-APARTADO 55
CORUCHE 2100-905
Portugal

| CUSTOMER VRN | | SHIP METHOD | | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|
| P106543-0740 | | | | PREPAY | EUR |
| | | ADDITIONAL INFORMATION | | SITE CODE | |
| Intra Community Supply | | | | | |

| | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|
| | | 175 | Each | 175 | 75.00 | 13,125.00 |

| Item Total | | 13,125.00 |
|---|---|---|
| Freight | | .00 |
| Vat | | .00 |
| Total | EUR | 13,125.00 |

# Powerwave

## INVOICE

| INVOICE NO.2002631 | | DATE 17-NOV-2011 | Page 1 of 1 |
|---|---|---|---|

| SALES ORDER NO 21026169 | RELEASE NO. |
|---|---|

| PO NUMBER: 2309/2011 | |
|---|---|

**Bill To:**
NET PLAN TELECOMUNICACOES LDA
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22/3A
LISBON 1600-477
Portugal

**Ship To:**
TESACE, SA
ZONA INDUSTRIAL DA BARCA
LOTE 22-APARTADO 66
CORROIOS 2101-902
Portugal

| CUSTOMER P.O. | PAYMENT TERMS | DUE DATE | POWERWAVE VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|
| | Net 30 | 14-DEC-11 | | INVOICE-CHOOSED-STANDARD | Prepay | |

| CUSTOMER VRN | HANDLED BY | ORD POINT | POWERWAVE REGION | UNCTE CODE |
|---|---|---|---|---|

| CUSTOMER REFERENCE | ADDITIONAL INFORMATION |
|---|---|

| Line | PC Line | Item | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|
| | | | 175 Each | | 175 | 75.00 | 13,125.00 |

| Item Total | 13,125.00 |
|---|---|
| Freight | .00 |
| Vat | .00 |
| Total | EUR 13,125.00 |

EXHIBIT 1

*Doc. 4*

| | | |
|---|---|---|
| [company Symbol ] | Payment note | |

Net Plan - Telecomunicações e Energia, S.A.
Centro Empresarial de Telheiras
Rua Hermano Neves, 22 – 2.º A
1600 - 477 Lisboa

| | |
|---|---|
| Original | |

Phone + 351  217521250
Fax. + 351  217521255

| Number | 112 |
|---|---|
| Data | 28-02-2012 |

Taxpayer Number: 505 407 140
Equity: 300.000,00
Register number: 11293/2001-05-25

Dear Sirs

Powerwave Technologies Sweden AB
Box 1155
164 26 Kista - Sweden

Att: Mr: Vicent Fasquelle

| Currency | Y/Taxpayer Nr. |
|---|---|
| EUR | 556458086701 |

Dear Srs.

Hereby, the payment of the total amount of 35.606,72 (thirty five thousand, six hundred and six euros and seventy two cents).

| MOV. | Number | Description | Bank | Value |
|---|---|---|---|---|
| TRP | 28/02/2012 | Bank Transfer | BCP | 35.606,72 |

For the liquidation of the documents referred below:

| Doc. | Doc. Number | Nr.PRT | Doc. Value | Value | value | Due value |
|---|---|---|---|---|---|---|
| VFA | 2069012 | 1 | 4.772,72 | 4.772,72 | 0,00 | 0,00 |
| VFA | 2069258 | 1 | 764,00 | 764,00 | 0,00 | 0,00 |
| VFA | 2069330 | 1 | 13.125,00 | 13.125,00 | 0,00 | 0,00 |
| VFA | 2069331 | 1 | 13.125,00 | 13.125,00 | 0,00 | 0,00 |
| VFA | 2069827 | 1 | 3.820,00 | 3.820,00 | 0,00 | 0,00 |
| | Total | | 35.606,72 | 35.606,72 | 0,00 | 0,00 |

Total amount paid (EUR)        35.606,72

Best Regards,

_____

[Symbols ]

EXHIBIT 1

Page 1 of 1

Euro Zone Transfer

[Bank Symbol]

## Occasional International Transfer / Euro Zone/SEPA

| | |
|---|---|
| Reference | 0 |
| Account | 0000000279262322 – EUR -Current Account |
| Processing date | 2012-02-28 |
| Beneficiary | Powerwave technologies Inc. |
| Account to Credit / IBAN | DE27500210004910175644 |
| BIC Swift | INGBDEFF |
| Destiny Country | Germany |
| Type of Transfer | International Transfer Euro Zone - SEPA |
| Amount | 35.606,72 EUR-EURO |
| Type os Expenses | Shared |
| Issuance Expenses | 1,44 EUR |
| Stamp Duty | 0,06 EUR |
| Communication expenses | 0,00 EUR |
| I.V.A (legal rate) | 0,00 EUR |
| Total of Expenses | 1,50 EUR (tax included) |
| Total amount to debit | 35.606,72 EUR |
| Description | |
| Transaction code | 101-EXP – IMP ( not included on 111 A 161) |



EXHIBIT 1

## Nuno Passos

| | |
|---|---|
| From: | Nuno Passos <nuno.passos@netplan.pt> |
| Sent: | sexta-feira, 11 de Maio de 2012 18:04 |
| To: | Juan Algani |
| Cc: | 'Joao Santos' |
| Subject: | Invoices |
| Attachments: | Net Plan AR March 5_20120511.xlsx |

Hi Juan,

Please find attached the forecasted payments for the open invoices.

We are also missing two invoices (CW20) and hopefully in the end of this month (1/5) or beginning of June (1/6).

Regarding the invoice 2012032 you don't have this invoice in our system. Can you please send us a copy of it?

Regarding the invoice 2012032 you need a credit note because this is regarding the RETs that were wrong and were already paid in the invoice 2Ybb9321 →
We received 2 invoices for the RETs \\ 17 (units) from Powerwave and obviously we could only invoice TXM regarding 1 \\ 175units, because the first RETs were sent wrongly Powerwave.

The total bill Regard...
Juan Santos

Click here to report this email as spam.

Date: 26 September 2012

Attn: Mr. Silva                    (via legal representative)

Copy: Maria Passos        [maria.passos@netplan.pt]
      João Santos         [joao.santos@netplan.pt]

Re: Plan - Telecomunicações e Energia, S.A
Centro Empresarial de Telheiras
Rua Prof......... Reino, №. 72 - 74 A, 1600 - 477 Lisboa
Phone: + 351 217 521 250
Fax: + 351 217 521 255

Dear Mr. Silva and Mr. Passos,

My team has provided me a copy of your letter dated 20 September 2012. In this letter you are claiming that Powerwave compensate NetPlan 97.6k Euros for the profits you lost as a result of TMN awarding a portion of their Powerwave business to NSN. Your assertion is that you are entitled to this compensation because Powerwave disadvantaged NetPlan in some manner. I have reviewed the facts and there is simply no merit to this position.

The facts that I have suggest that NetPlan was successful in winning majority market share with TMN in 2011 and in 2012. This is a direct result of your efforts and your relationships with TMN.

The actual Powerwave sales to TMN through NSN in 2012 were approximately one-third of the sales figures you have used in your 20-Sept letter. I'm not sure the source of the data you have used, but I can assure you that your numbers are significantly over-stated.

During your discussions with my Head of Europe, the figures that you shared with her were that NetPlan enjoy approximately a 2% margin on Powerwave products.

We value our long standing relationship with NetPlan. In order to help move this forward, I am prepared to offer NetPlan a Credit Memo in the amount of $12k USD. The $12k USD is equal to 2% of $600k. This is certainly lower than your initial request, but I do believe this amount fairly reflects the facts of the situation.

The key issue for me is to understand your position on the Past Due balance owed to Powerwave. The current Past due balance is approximately 640k Euros. When can Powerwave expect resolution on this balance? I would like to resolve this as quickly as possible. If we are unable to reach an understanding I will be compelled to put this on the hands of our CFO and he will be required to pursue all available remedies to him to secure resolution of this past due amount.

Please respond to me by close of business Monday 27 September. I look forward to your favorable response.

Thank you,

Robert Sun Segall
Senior Vice President of Sales
Powerwave Technologies Inc
1801 E. St Andrew Place
Santa Ana, CA 92705
Phone: 714 466 1777
Mobile: 714 ... ...
robert.sunsegall@pwav.com

Nuno Passos

| From: | Nuno Passos <nuno.passos@netplan.pt> |
|---|---|
| Sent: | quinta-feira, 20 de Setembro de 2012 11:38 |
| To: | 'Juan Aigua' |
| Cc: | rui.silva@netplan.pt; 'joao.santos@netplan.pt' |
| Subject: | Proposal of compensation from Powerwave |

[...]

[...] the information in detail, our proposal of compensation, regarding the estimated values of sales from NSN and Ericsson, is as follows:

| Ref° | Descr. | Cost | NSN | | ERICSSON | |
|---|---|---|---|---|---|---|
| 8212.40 | RET SINGLE BAND | 75.00 € | 815 | 61.125,00 € | 600 | 45.000,00 € |
| 8230.40 | RET TRI BAND | 240.00 € | 250 | 60.000,00 € | 300 | 72.000,00 € |
| P65-18-XDHWV2-N | LTE Antena - 2500-2690 MHz | 1.153,00 € | 1200 | 1.383.600,00 € | | 0,00 € |
| P65-15-XDHWV2-N | LTE Antenna - 2170/2500-2690 MHz | 792,00 € | 90 | 71.280,00 € | | 0,00 € |
| P65-17-XDH-M | LTE Antenna -790-960/1710-2470 MHz | 792,00 € | | 0,00 € | | 0,00 € |
| P65-17-XDHWV2-N | LTE Antenna Triband | 1.036,00 € | 250 | 259.000,00 € | | 117.000,00 € |
| | | | | 1.835.005,00 € | | |
| | | | 5% | 1.952.005,00 € | | |
| | | | | 97.600,00 € | | |

[...] from the feedback we could obtain.

[...] in order to get the estimated values for NSN and Ericsson.
[...] in order to get more accurate values.
[...] a complete picture and to get more accurate values.
[...] if possible, but from your side, if you can also get some figures in order to validate these values, it will be good.

[...]

TO1

EXHIBIT 1

cjcradvogados

De:         "Juan Algara" <Juan.Algara@pwav.com>
Para:       "Nuno Passos"  "João Santos"
Cc:         "Vincent Fasquelle" <Vincent.Fasquelle@pwav.com>
Enviado:    domingo, 21 de Março de 2010 07 55
Anexar:     Reseller Agreement EMEA rev 18-03-2010.doc
Assunto:    Reseller agreement

Dear Nuno and João

Please, find attached the reseller agreement including 90 days payment
Commission is not stated in the agreement as it is a fixed fee for agreement but, as we agreed, it is 4%
Please, we will appreciate to have the agreement duly signed before end of march

Best regards

Juan Algara
Powerwave Technologies
RSM Spain&Portugal
+34 669 868 312

POWER OF ATTORNEY

NET PLAN – Telecomunicações e Energia, S.A., a duly registered Lisbon company, under the no. 505 407 140, with its headquarters in Lisbon, at the Centro Empresarial de Telheiras, Rua Hermano Neves, n.º 22 – 2.º A,  registered at Conservatória do Registo Comercial de Lisboa under the same identification number, represented in this act by its administrators, Rui Pereira da Silva and Mário Sergio Duarte Melo, hereby appoints as their lawful attorneys, Tânia Correia de Jesus, Teresa Gonzalez and the Trainee Lawyer Helena Pinto Simões, lawyers with office in Lisbon, at Avenida de Berna n.º 24, 6.º Dt.º, to whom it grants, with the powers to delegate some or all of the above described powers acting jointly or individually, the widest  legal representative powers, including the special powers to confess, withdraw and settle any judicial proceedings, as well as to receive payment.


Lisbon, January 7, 2013


[illegible signatures]



EXHIBIT 1

Index

Attachment no.1 - Opposition

Attachment no.2 – doc 1

Attachment no.3 – doc 2

Attachment no.4 – doc 3

Attachment no.5 – doc 4

Attachment no.6 – doc 5

Attachment no.7 – doc 6

Attachment no.8 – doc 7

Attachment no.9 – doc 8

Attachment no.10 – Power of Attorney

Document electronically signed.
This electronic signature replaces the hand made signature.

Wednesday, January 9, 2013 – 10:27:14 GMT

VALIDITY UNKNOWN
Signed by Tania Correia de Jesus – Bar Association
Date: 2013.01.09 10:27:14 GMT
Digital certification of the petition



EXHIBIT 1

Document signed electronically.
The electronic signature replaces the hand made signature.
Dr(a). Gabriela de Fátima Marques



**Judicial District of Lisbon**
Lisboa - Inst. Central - 1ª Civil Section - J15
Palácio da Justiça, Rua Marquês de Fronteira - 1098-001 Lisboa
Telef. 213846400 Fax: 211373579 Mail: lisboa.centralcivel@tribunais.org.pt

File Nº 194466/12.2YIPRT

Our/Reference: 342009375

### MINUTES OF PRELIMINARY HEARING

Date: December 3, 2015, at 10h30.
File number: 194466/12.2YIPRT
Ordinary proceeding
Plaintiff: Powerwave Technologies, Inc
Defendant: Net Plan - Telecomunicações e Energia, S.A.
Judge of Law: Dr.ª Gabriela de Fátima Marques.
Lawyer of the Plaintiff: Tiago Castanheira Marques
Lawyer of the Defendant: Dr.ª Tânia Correia de Jesus
Court Clerk: José Manuel dos Santos Pereira
People present: The Lawyers of both parties.

*

After opening the hearing, her Honor the Judge tried to reach an agreement between the parties, which was not possible, having the Lawyers of both parties justified the maintenance of the dispute with the existence of irreconcilable positions regarding the facts and the amounts claimed in the proceedings.

*

After, her Honor the Judge issued the order referred in article 595 of the Portuguese Civil Code, without fixation of the value given the order of sheet 238.

*

### CURACTIVE ACT

The Court is competent in view of the nationality, matter and hierarchy.
In what regards the objection of lack of jurisdiction, taking in consideration the decision taken by the Supreme Court of Justice, the proceeding must follow. The objection of offsetting must be considered as impeditive fact and not as a counterclaim, due to the fact that the objection was argued by the Defendant in a date previous to the new Civil Procedure Code, and therefore being decided in this Court as an exception with competence either to the collection of the debt, either by the possible knowledge of the fact partially prohibitive or extinctive of the right.
The proceeding is correct and is not vitiated by any absolute nullity.

Page 1 of 3

EXHIBIT 1



**Judicial District of Lisbon**
Lisboa - Inst. Central - 1ª Civil Section - J15
Palácio da Justiça, Rua Marquês de Fronteira - 1098-001 Lisboa
Telef: 213846400 Fax: 211373579 Mail: lisboa.centralcivel@tribunais.org.pt

File Nº 194466/12.2YIPRT

The parties have legal personality and judicial capacity and are dully represented. In fact, we understand that due to the reply of the Plaintiff and taking in consideration the insolvency of the Defendant , the said is represented in the proceeding.

There are no delaying exceptions, incidental or procedural or incidental motions that are necessary to decide for now.
*

After the discussion with the parties, mentioned in article 596 of the Civil Procedure Code, her Honor the Judge decided the following:

**Order**
**Object of the proceedings:**
1 – The right of the Plaintiff in being paid by the Defendant of the of the value of the equipment supplied by the Plaintiff and itemized in the invoices under discussion, added with interests since the due date of each invoice.

2 – The right of the Defendant to set-off its credit in the amount of €97.600,00, plus €13.125,00.
*

**Evidence Themes:**
1 – The Reseller Agreement entered into between the Plaintiff and the Defendant and its clauses.
2 – The supply of equipment by the Plaintiff to the Defendant, under the Reseller Agreement and the issuing and delivery of the correspondent invoices, in the amount claimed, by the Plaintiff to the Defendant.
3 – The set-off of a credit due to the necessity of issuing a credit note by the Plaintiff to the Defendant in the amount of €13.125,00.
4 – The agreement between the Plaintiff and the Defendant on the existence of a 4% compensation, added with a commission of 1%, on the basis of the equipment sold to TMN, whose amount reached €1.925.005,00.
*

Later, her Honor the Judge gave the floor to the Lawyers of both parties, who said that they did not had any complaint against the previous order.
*

**Means of Evidence:**
After, her Honor the Judge gave the floor to the Lawyers of both parties who said that they reaffirmed the list of witnesses indicated in the proceedings.
*

Page 2 of 3

TCT

EXHIBIT 1



**Judicial District of Lisbon**
Lisboa - Inst. Central - 1ª Civil Section - J15
Palácio da Justiça, Rua Marquês de Fronteira - 1098-001 Lisboa
Telef: 213846400 Fax: 211373570 Mail: lisboa.centralcivel@tribunais.org.pt

File Nº 194466/12.2YIPRT

After his Honor the Judge decided the following:

**ORDER**
I accept the list of witnesses indicated by the Plaintiff of sheets 76 e 77, determining that the two last witnesses be heard through letters of request to all the facts alleged by the Plaintiff and sett-off exception alleged by the Defendant, specifically articles 12 to 14 and 26 to 31 of the opposition.

I accept the list of witnesses of the Defendant of sheet 14 and 15.

Notify.

٭

Nothing more having to determine, the hearing was closed.
The present minute, made with the help of electronic means, after read and considered correct, is going to be signed electronically by her Honour the Judge and signed the the Court Clerk that made it.
The Court Clerk
José Manuel dos Santos Pereira

Page 3 of 3

EXHIBIT 1

EXHIBIT 1

Application delivered through electronic system in the date and at the hour indicated in the electronic signature of the signee (cf. last page), according to the terms and provisions set out in the Order no. 144/2008, of February 6

# APPLICATION TO THE COURT

**REF. no.: 12714567**

## DESCRIPTION

| | |
|---|---|
| Goal: To be joined to an existing proceeding | Ref. of payment: |
| Competent Court: Lisbon – Civil Court | |
| Organic Unit: 10th Civil Court | No. of proceedings 194466/12.2YIPRT |

## LAWYER

| | |
|---|---|
| Name: Pedro Sousa Uva | Lawyer card no.: 217641 |
| Address: Av Forças Armadas, 125 – 12º | Tax ID no.: 222793660 |
| Location: | |
| Postal Code: 1600-079 Lisbon | |
| Phone no.: 217231800          Fax no.: 217231899 | E-mail: pedro.s.uva-21764l@adv.oa.pt |

### Multiple signees

The signee Lawyer hereby declares under article 12, no. 2 of the Order no 114/2008, of February 6, that this Application will also be subscribed by

Bernardo Teixeira de Abreu, Lawyer, with lawyer card no. 354121

### Notification between lawyers under article 229º-A of the Civil Procedure Code

Name: Tânia Correia de Jesus

Notified electronically

---

Document processed by computer                    Application no. 12714567 Pag. 1/1

EXHIBIT 1

[Law firm's identification]

Proceeding no. 194466/12.2YIPRT

His Excellency the Judge

of the 10th Civil Court of Lisbon

POWERWAVE TECHNOLOGIES INC., Plaintiff in the above indicated proceeding, in which the Defendant is NETPLAN – TELECOMUNICAÇÕES E ENERGIAS, S.A., notified of the Opposition and documents presented by the Defendant, hereby presents, under article 3, no. 3 of the Portuguese Civil Code, its:

**RESPONSE TO THE OPPOSITION**

Which the Plaintiff presents in the terms and with the following grounds:

## I. ALLEDGED EXCEPTION OF INTERNATIONAL LACK OF JURISDICTION

1. The Defendant alleges, in its Opposition, that the Portuguese Courts do not have jurisdiction because of the choice of forum clause correspondent to Clause 30 of the *sub judice* Agreement, alleging that the Portuguese Court does not have jurisdiction over the matter, and consequently asking for the end of the proceeding with the absolution of the Defendant.

2. Nevertheless, as the Plaintiff will demonstrate, the Defendant is not right, and the exception should be totally denied, for the following reasons:

[law firm's adresses]

EXHIBIT 1

[Law firm's identification]

3. According to clause 30 of the *sub judice* Agreement – which full version[1] is hereby presented for all legal purposes under **Document no. 1**, being that its translation will furthermore be presented to the Court – the parties expressly agreed as follows:

> *"30. Disputes*
>
> *"Any and all disputes, controversies and claims arising out of or in connection with this Agreement, or the breach, termination, or invalidity thereof, shall be settled by arbitration in accordance with the rules of the Arbitration Institute of the Stockholm Chamber of Commerce. Unless the parties agree otherwise, the arbitration proceedings shall be conducted in Stockholm, Sweden, in the English language. The arbitral tribunal shall be composed of one (1) arbitrator. Unless the disputing parties agree otherwise, the Arbitration Institute of the Stockholm Chamber of Commerce shall appoint the arbitral tribunal. The arbitration award shall be final and binding upon the parties. The foregoing shall not restrict Powerwave from going to court or to a competent authority in order to seek payment from Reseller of an amount which is undisputed and due for payment."*

[In the English language in the original document]

(the underlining and bolds are our own)

Which, in the Portuguese language, correspondents to the following:

> *"30. Disputes*

---

[1] Even though the contents of the Agreement presented by the Defendant are correct, this version is incomplete because it does not include pages 13 to 21.

[law firm's adresses]

EXHIBIT 1

[Law firm's identification]

*"Any and all disputes, controversies and claims arising out of or in connection with this Agreement, or the breach, termination, or invalidity thereof, shall be settled by arbitration in accordance with the rules of the Arbitration Institute of the Stockholm Chamber of Commerce. Unless the parties agree otherwise, the arbitration proceedings shall be conducted in Stockholm, Sweden, in the English language. The arbitral tribunal shall be composed of one (1) arbitrator. Unless the disputing parties agree otherwise, the Arbitration Institute of the Stockholm Chamber of Commerce shall appoint the arbitral tribunal. The arbitration award shall be final and binding upon the parties. The foregoing shall not restrict Powerwave from going to court or to a competent authority in order to seek payment from Reseller of an amount which is undisputed and due for payment."*

(the underlining and bolds are our own)

4. As one can verify through the analysis of the above cited clause, the will of the parties to the Agreement *sub judice* was to establish a choice of forum clause with a mixed regime, including arbitration without prejudice to the possibility to use the judicial courts to claim undisputed amounts (*amount which is undisputed* [in the English language in the original document]) and due for payment (*due for payment* [in the English language in the original document]).

5. As a matter of fact, the option to establish such a clause allows for a certain flexibility for the parties in the choice of the adequate forum to solve disputes with certain characteristics.

6. The ratio behind such a choice is justified by the will of both parties to avoid a more costly way than the courts – an arbitration – in cases where this way is not justified, like the case of undisputed and due for payment amounts, like for instance undisputed invoice, like the ones that were the basis for the injunction proceeding

[law firm's adresses]

51                                                    EXHIBIT 1

[Law firm's identification]

that originated the present proceeding and which are now presented to the court as Documents no. 2 to 33, for all legal purposes.

7. The final part of clause 30 of the Agreement *sub judice* reflects the express will of the parties in allowing the Plaintiff, as a creditor, to use the judicial courts to <u>demand its credits which are undisputed and due for payment,</u> and not to use an arbitration.

8. It is perfectly perceptible that this clause was negotiated and agreed upon between the parties and thought for a certain concrete type of litigation – litigation arising from pending debts, which are due and are undisputed, so to speak – and not as an usual arbitration clause or other according to which arbitration would be the only means admissible to solve any litigation.

9. It is a manifestation of the parties' autonomy in what regards the choice of the forum which is thought to be the most adequate according to the litigation in question.

10. In fact, if the will of the parties was for all litigation arising from the Agreement *sub judice* to be solved over an arbitration, they would simply have included in the Agreement a model clause of the SCC (Stockholm Chamber of Commerce) – institution they have chosen for litigation arising from the first part of the clause in question – or they would have chosen another arbitration clause that stipulated arbitration and only arbitration, as a method of alternative dispute resolution, without any reference to the judicial courts.

11. Nevertheless, the parties did not choose this option, and they did not choose it deliberately and consciently, opting for a mixed clause.

[law firm's adresses]

EXHIBIT 1

[Law firm's identification]

12. Being so, if this were to be the spirit of the clause in question, and not the one expressly stated on the said clause, the debtor, *in casu*, the Defendant, each time it was presented with invoices due for payment and undisputed, would allege that an arbitration in Stockholm, Sweden, was due, obstructing to the possibility to use the courts expressly allowed in the clause for these cases.

13. The hypothesis referred to in 13 never corresponded to the will of the parties, but exactly the diametrically opposed, i.e., with due for payment and undisputed credits, the parties are able to use the competent authorities, which legitimates, naturally, the use of the injunction mechanism.

14. The Defendant's thesis renders almost unviable the possibility to solve matters such as the ones in the present proceeding according to the mechanism agreed by the parties in the end of the clause in question.

15. It must be taken into account that the **fundamental moment to consider a debt as due for payment and undisputed, in what regards clause 30 of the Agreement, is the moment before the injunction proceeding is presented by the Plaintiff, and not the moment after it.**

16. *In casu*, **before the injunction proceeding** the Plaintiff's credit was never disputed, actually on the contrary, the same was admitted and confessed by the Defendant, according to documents no. 5 and 6 presented with the Opposition, as well as other documents that will be presented as follows.

[law firm's adresses]

EXHIBIT 1

[Law firm's identification]

17. In fact, the invoices in question were never disputed by the Defendant in a pre-judicial phase. It is exactly this fact that allows for the second part of clause 30 of the Agreement to be executed.

18. In reality, until this date, the Defendant simply never paid the debt nor did it question the validity or the maturity of the invoices, well knowing that the same were waiting for payment for months as will be further demonstrated.

19. This situation legitimates the Plaintiff to, *ab initio*, execute the second part of clause 30 of the Agreement, using judicial mechanisms like the injunction proceeding and the competent Portuguese court, to claim its credit.

20. On the same way, in its Opposition, the Defendant, with exception from only one invoice, with a reduced value (approximately 13 thousand euros) does not dispute the invoices nor does it dispute the respective credit alleged by the Plaintiff.

21. Even the presentation of an Opposition to the Plaintiff's application does not stop the possibility to execute the second part of clause 20ª by the Plaintiff, otherwise the final part of the clause would not make sense, and would be useless.

22. In reality, if that were to be the case, we would be left in a troubling position where it would be sufficient for the Defendant to oppose judicially to any undisputed credit to avoid the effects and utility of the second part of clause 30 of the Contract.

23. That would make no sense and does not correspond to the real and express will of the parties.

[law firm's adresses]

EXHIBIT 1

[Law firm's identification]

24. The Defendant violates, thus, the basic principle of *pacta sunt servanda*, by invoking the exception of lack of jurisdiction.

25. One should note that the Defendant <u>challenged only one</u> in 32 invoices, not denying, nor generically, nor specifically, all of the Plaintiff's credit, correspondent to the remaining 31 invoices.

26. Specifically, the Defendant partially challenged the credit correspondent to invoice no. 2071907, in the amount of € 13,125, and correspondent interests, matter to which the Plaintiff will answer in the following chapter, as it constitutes matter of exception.

27. Nevertheless, the Defendant did not challenge the remaining 31 invoices referred to in the injunction proceeding, which means that the amount correspondent to €651,067.42 is not challenged.

28. Which means that, without prejudice to the fact that the invoices in question were never challenged in a pre-judicial manner, all 31 invoices that were not specifically challenged in the Opposition to the injunction proceeding, must be considered as undisputed credits, legitimating the jurisdiction of the Portuguese courts.

29. Being so, also considering the position assumed by the Defendant – and irrespectively of the credit claimed by the Plaintiff before the presentation of the injunction proceeding being considered an undisputed and due for payment credit – it should be considered that the great majority of the Plaintiff's request, also in court, remains undisputed.

30. Finally, pursuant to Article 490 of Civil Procedure Code, the Defendant has the burden of specified impugnation, and when contest "*should take a defined position before the articulated facts in the petition.*"

31. What the Defendant, roughly, did not.

[law firm's adresses]

[Law firm's identification]

32. Thus, the facts which were not contested by the Defendant under Article 490º, 2 of the CPC should be accepted by agreement (*"efeito cominatório semi-pleno"*).

33. In view of the above, it's concluded that the claim alleged by the Plaintiff is indeed a credit due and not contested by the Defendant, and as such it falls totally in the type of disputes provided in the final part of Clause 20 of the Agreement.

34. Thus, according to the Clause 30 of the Agreement, the Court with international jurisdiction to decide the dispute in this case is, without a doubt, the Judicial District Court of Lisbon, since the Defendant is based in Lisbon.

35. The interpretation of the Plaintiff, in addition to be substantiated in the literal wording of Clause 20 and in the real and common intent of parties, also finds support in doctrine and international jurisprudence most relevant on this matter, as demonstrate below:

36. As refers Gary Born[2]:

*"It is almost uniformly held or assumed that generally-applicable rules of contract construction apply to the interpretation of international arbitration agreements. Arbitral tribunals routinely refer to generally-applicable canons of contract interpretation, often not derived from any single national legal system, in determining the meaning and scope of arbitration agreements. 20 Similarly, national courts often begin their analysis of the scope of an international arbitration agreement by applying ordinary rules of contract interpretation. 21 (...) These generally-applicable rules of contract interpretation include principles of ascertaining the parties' objective intentions, 23 contra proferentem, 24 the specific prevailing over the general, 25 giving effect to all parts of the parties' agreement, 26 ut res magis valeat quam pereat, 27 notions of good faith 28 and common usage of terms at the time of the agreement. 29 In principle, other generally-applicable rules of contract construction are also applicable to the interpretation of arbitration agreements."*

37. In fact, is the real and common intent of parties, substantiated in the wording of the arbitration Clause that should govern the scope thereof, as explained in the following arbitral decision rendered by the International Chamber of Commerce (ICC)[3]:

---

[2] *International Commercial Arbitration,* Kluwer Law Arbitration Volume I, 2009, pags. 1063 e ss.

[law firm's adresses]

[Law firm's identification]

*"An arbitral tribunal should construe the validity and scope of an arbitration clause in accordance with the general principles of the interpretation of contracts, i.e., seeking the real and common intent of parties, based on the wording of the clause, and the principle of confidence or good faith");*

38. The Judge should not interpret the arbitration clause without the least correspondence with the wording of the same, as rightly said the following arbitral decision also rendered in ICC arbitration[4]:

*"prefer[ring] the interpretation which gives meaning to the words, rather than that which renders them useless or nonsensical";*

39. Without wishing to belittle, also by the specification of the arbitration clause which overlapping the more general provisions, according the following arbitral judgment[5]:

"Under the rule of interpretation *lex specialis derogat legi generali* the more specific provision takes precedence over the more general one";

40. The specification of certain type of disputes in an agreement of jurisdiction or in an arbitration clause corresponds to the clear willingness of the parties. In fact, the parties' freedom at the moment of the construction of the arbitration clause and their freedom to stipulate what best suits them is mentioned in the next decision, whose extract goes quoted:

*"It serves to underline the golden rule that if the parties wish to have issues as to the validity of their contract decided by one tribunal and issues as to its meaning or performance decided by another, they must say so expressly. Otherwise they will be taken to have agreed on a single tribunal for the resolution of all such disputes.[6]"*

41. In addition, any arbitration clause must be constructed and interpreted according to the dictates of good faith, taking into account the commitments and expectations of the parts, as reports the following arbitral decision:

*("any convention, including conventions to arbitrate, should be construed in good faith, that is to say by taking into account the consequences of the commitments the parties may be considered as having reasonably and legitimately envisaged.");*

---

[3] Interim Award no caso CCI n°. 7929, XXV Y.B. Comm. Arb. 312, 317(2000)
[4] Arbitral Decision in case ICC n°. 1434, 103 J.D.I. (Clunet) 978, 982 (1976)
[5] Arbitral Decision in case ICC n°. 5946, XVI Y.B. Comm. Arb. 97, 102 (1992)
[6] Decision of the *English Court of Appeal* in FionaTrust & Holding Corp. v. Privalov, 2007, confirmed by *House of Lords.*

[law firm's adresses]

*TCM ↓r*

[Law firm's identification]

42. Concerning to the interpretation of the arbitration clause, it should also be seen the following decision[7]:

"endorsing an "interpretation, based on the investigation of the real intention of the parties, *[that] has nothing to do with extensive or restrictive interpretation*");

43. Finally, it must also be noted the following extract of the arbitral decision rendered in an arbitration ICC[8]:

"the interpretation of an arbitration clause, like that of any clause in a contract, depends primarily upon the wording of that clause"

44. In view of the above and concerning to the identified exception, it can be concluded as follows:

- The petitioned claim in the application is an uncontested and overdue claim, which allows to trigger the 2nd half of Clause 30 of the Agreement, which justifies the recourse to judicial courts and not the arbitral forum.
- It was express intent of the parties to exclude from arbitration the resolution of overdue and uncontested debts; otherwise, parties would have simply resorted to an arbitration clause simple without any reference to the competent judicial court;
- A literal interpretation of the Clause 30 of the agreement, corresponding to the real and manifested intent of Parties may not result in a different interpretation than the present dispute concerning to a not contested claim is the responsibility of the competent judicial courts, since the creditor under the clause 30 had that freedom of choice of forum and thus exercised.
- Thus, it should be recognized the international jurisdiction of the Portuguese Judicial Court for the judgment of the merit of this lawsuit.
- If so do not understand, it is necessary to say that the petitioned credit was not contested by the Defendant in Opposition, which allows to stress the fact that, concerning a great part of the credit - the amount corresponding to 36 of 37 invoices - we are indeed facing a debt due and uncontested.
- Thus, if it is understood that there is a part (minimum) of the credit that was contested and another that it was not, the truth is that there is not any objection or legal or contractual impediment to a dispute being solved in part by arbitration and in part by litigation, as this was the expressed and real intent of the parties.
- Which would mean, in practice, that only the matter concerning to Invoice No. 2071907, in the amount of € 13.125,00, interests, set-off and other claims deducted by the Defendant - which does not happen in this case because there are no counterclaims - would be decided by arbitration.

---

[7] Arbitral Decision in case ICC Case nç. 4145, XII Y.B. Comm. Arb. 97, 100 (1987)
[8] Preliminary decision (Interim Award) in case ICC n°. 7929, XXV Y.B. Comm. Arb. 312, 316 (2000)

[law firm's adresses]

[Law firm's identification]

51. As agreed in the mentioned Contract, the Defendant took the mentioned position of reseller, without exclusivity, of certain Plaintiff's products, as paragraph B of recitals and also in Section 2.1, both of the Contract:

*"Powerwave has agreed to appoint Reseller as its non-exclusive reseller in the Territory"*

*"Powerwave hereby appoints Reseller to act as a non-exclusive reseller of Powerwave for the resale of the Products in the Territory during the term of this Agreement (...)"*

52. Moreover, it was also expressly agreed in the same paragraph that the Plaintiff could use other distributors without prior notification of the Defendant:

*"Powerwave reserves the right to increase or decrease the number of authorized resellers in the territory at any time without notice to Reseller."*

53. Thus, the activity of the Defendant under the Contract consisted in order amounts of a certain kind of Author's products and then resell them in Portuguese territory, at the price wanted, taking their pay by the difference between the price of purchase of goods and the resale of them.

54. Without right to any commission, since the Defendant was never agent, distributor or dealer of the Plaintiff, with or without an exclusive basis.

55. That being said, the Plaintiff is utterly surprised by the Defendant's allegations, namely, by the arguments made in articles 21.° and 22.°, included in the Opposition, when he states that "it is exclusively responsible for the sale of the Plaintiff's products in Portugal" and that it "acted in fact, as the exclusive distributor in the Portuguese territory for the Plaintiff's products".

56. What is, evidently false.

57. Being impossible for the Plaintiff to understand the legal or contractual grounds on which the Defendant sustains such allegations – nor does the Defendant indicate those reasons.

[law firm's adresses]

59                                                    EXHIBIT 1

[Law firm's identification]

58. The truth is that not by fact, or by the law, was ever the Defendant a distributor of the Plaintiff's products, but simply a reseller, and even less with exclusivity character, in the terms expressly agreed in the Agreement.

59. This is why the Plaintiff how the Defendant though attaching the Agreement *sub judice*, giving it entirely reproduced, and then ignores its content without further grounds or documental evidence to support it.

60. This way, there is no sufficient proof to sustain the claim that the Defendant was ever the exclusive distributor of the Plaintiff's products in Portugal, for the simple fact that the Plaintiff has other distribution contracts with several other operators, such as Ericsson and NSN, as the Defendant is well aware.

61. In fact, it results explicitly from the Contract as well as from all the correspondence sent between the Plaintiff and the Defendant that this commercial relation was set on a non-exclusive basis, as can be seen in the email of February 23rd 2010, at 10:43 am, sent from Nuno Passos, the Defendant's CFO, to Juan Algara, on the Plaintiff's behalf, before the celebration of the contract, and when said contract was being negotiated, email which is now annexed doc. 34, together with previous emails, that are fully reproduced for all legal purposes.

"PWAV will not sign an exclusive agreement, but as long as they are performing well; we will not introduce another reseller";( our own bold and underlining).

62. This is why the Plaintiff does not understand why the Defendant is now claiming there was any exclusivity associated to this contract.

63. Never did the Defendant wanted to become the Plaintiff's agent.

64. In fact, the Defendant always wanted to control the resell price, choosing a Reseller Agreement, reason why it never received any payments, during the period on the contract was in effect, nor commissions, matters subject to further appreciation ahead.

B) Compensation allegedly due to the Defendant

[law firm's adresses]

EXHIBIT 1

[Law firm's identification]

65. Based on the previous argument -- unjustified, nonetheless -- that the Defendant was the exclusive distributor of the Plaintiff's products, what is false as was previously shown, the Defendant claims to be entitled to a commission for the sales made in Portugal.

66. This commission was not foreseen in the contract, nor is it part of any legal provision, as will be demonstrated.

67. To support this claim the Defendant states the Plaintiff acknowledged a $ 12. 000, 00 (twelve thousand dollars) in its favor (cf. article 26 of the Opposition), annexing a letter of September 26th 2012, that was identified as Doc. 6.

68. That allegation is stated deprived of its context, hence being completely false.

69. In fact, the Defendant wants to remove that letter from its context, which was nothing more than an offer made by the Plaintiff to reward the Defendant's commercial efforts, e a context of resolution of a standstill, due to the fact the Defendant had not paid all of its debt to the Plaintiff.

70. However, said letter was never intended to assume the form of a commission or any other binding nature.

71. Thus the Defendant cannot argue that it is in any way the Plaintiff's creditor for its good performance...

72. When the Defendant is itself in debt towards the Plaintiff according to the letter annexed by the Defendant (Doc 5 of the Opposition) where said debt is expressly recognized:

"Please find attached the forecast of payments for the open invoices. Some we are paying still today, others next week (CW20) and hopefully in the end of this month (E/5) or beginning or June (B/6)".

73. What never took place in any of the three moments promised by the Defendant.

74. In fact, it is difficult to not have a good performance when the reseller does not pay to its supplier, as is the Defendant's case, in a sum above € 600.000,00 (six hundred thousand euros).

[law firm's adresses]

EXHIBIT 1

[Law firm's identification]

75. Let it be noticed, that said proposal was made in a time when the Defendant claimed the Plaintiff was selling its products directly to TMN through Nokia Siemens (NSN).

76. This is clearly true, as well as legitimate and reveals, once more there was no deal of exclusivity between the two parties.

77. In fact, the Plaintiff could well sell its products without resorting to the Defendant.

78. It is this way, forcibly and under a hypothetical exclusivity, which does not exist, the Defendant supports its claims.

79. On the 14th of September 2012, at 10 am, the Plaintiff, represented by Juan Agra an Julia Hogan, went to Portugal to attend a meeting with the Defendant, represented by Rui Silva and Nuno Passos, so that the first could, once more, insist that the latter would pay the full amount of the debt of 655 thousand euros.

80. In that meeting, the Defendant showed no desire to settle its debt, unless the proper compensation for the alleged deals with TMN and NSN was given.

81. However, nothing in this regard was settled, and no documents to sustain these claims were presented by the Defendant.

82. Like it was previously stated, there is no contractual or legal grounds for such a claim, nor does the nature of the contract of resale comprises such understanding.

83. Likewise, as stated before, the proposal sent by letter from the Plaintiff to the Defendant on September 26 does not constitute a recognition of a credit but just a proposal for debate ([I] am prepared to offer a NetPlan [...]).

84. Let it be noticed, the Defendant, craftily forgets to mention the credit mentioned by the Plaintiff.

85. That is a direct part of the context in which it is inserted.

[law firm's adresses]

62

EXHIBIT 1

[Law firm's identification]

86. The Plaintiff mentions in said letter, the amount of debt due by the Defendant, which amounted to € 640. 000, 00 (six hundred and forty thousand euros).

87. The Plaintiff, in spite of valuing its long commercial relation with the Defendant, cannot sustain such a debt.

88. That debt, after all this time is still outstanding.

89. Moreover, from the content of said letter results the Plaintiff's clear intention to try and understand the reason why the Defendant was in such an extreme debt of 640k: ("[T]he key issue for me is to understand your position on the Past Due balance owed to Powerwave [...]", cf. as Doc. 6 from the Opposition).

90. Moreover, the Plaintiff expressly and peremptorily denied any the amounts claimed by the Defendant, as the 4th paragraph of said letter indicates: "I'm not sure the source of the data you have used, but I can assure that your numbers are significantly over-stated."

91. It was in this context that, in order to resolve such predicament, the Plaintiff, willingly proposed to pay the amount of 12 thousand dollars for the Defendant's effort.

92. Nothing more can be extracted from this, let alone the thesis of the credit so to support the compensation that is now said to be in the amount of approximately € 100.000,00.

93. Which is not owed.

LET US SEE,

94. The Defendant claims, in article 27.º of the Opposition that "[the] amount of 12.000 dollars acknowledged by the Plaintiff owed by the Defendant would be equivalent to 2% of 600.000 dollars as a result of the alleged sales of Author's products done directly to TMN by NokiaSiemens (NSN), and not, as usually done since 2001, by the Defendant.

[law firm's adresses]

EXHIBIT 1

[Law firm's identification]

95. Well, it expressly results from paragraph 2.1 of the Contract that there is no exclusivity, so the Plaintiff can increase the number of distributors on Portuguese territory without even notifying the Defendant.

96. This being said, the "compensation" was handled as a mere liberality for the the recognition of the good commercial relations between the Defendant and the Plaintiff.

97. Which should be seen as the ultimate demonstration of the Plaintiff's willingness to maintain said relations.

98. In fact without prejudice of the existent debt, the Plaintiff made every efforts to keep the present commercial relation.

99. Like so, in spite of the invoices in debt accumulated since 2010 – which were not disputed in this court by the Defendant – there was no other course of action that the Plaintiff could follow, other than the coercive execution of its credit.

100.   Let it be noticed that nowhere in the contract, or in any other document, can we find any statement to support the Defendant's claims.

## EVEN IF THIS IS NOT THE COURT'S UNDERSTANDING

101.   There is no logic supporting the Defendant's claims.

102.   Indeed, an email sent from the Defendant's manager is not proof enough to reach a conclusion on the sales made by the Plaintiff to TMN (cf. Doc 7 of the Opposition).

103.   When that exact email would be disputed by the Plaintiff through a letter which dates back to September 26th 2010 – cf. Doc. 7 of the Opposition:

"[T]he actual Powerwave sales to TMN through NSN in 2012 were approximately one-third of the sales figures you have used in your 20-Sept letter[.]"

[law firm's adresses]

EXHIBIT 1

[Law firm's identification]

104. As well as it is still left to the Defendant to demonstrate that in "equivalent cases the percentage given to distributor is [...] 5 %"( cf. article 33. ° of the Opposition).

105. Nor is there any reference to what constitutes an equivalent case.

106. Moreover, the Defendant does not make its remuneration from the amounts sold but from the resale prices.

107. Regarding this matter, one must analyze the clause 2.2 of the contract where there is a provision stating the "[r]eseller is free to set its own retail prices [.]

108. Moreover, even if there was any right for a commission – which is only admitted as a mere conjecture – there is no basis for a 5% percentage as the Defendant claims.

109. This commission, if it ever existed, would never be higher than 2%, as stated in doc. 6 of the Opposition.

## MOREOVER,

110. Nor is it understandable, from the email of March 21st 2010 annexed as Doc. 8 of the Opposition, to what is related the value of 4% indicated there.

111. Even more, when the Defendant's remuneration in the agreement was limited to the difference between the purchase price and the resale price in Portugal.

112. Nothing indicates that during the agreement execution, such percentage has not changed.

113. Moreover, the 1% the Defendant claims to be a part of a cost have always been entirely supported by this party, cf. clause 7.4 of the contract).

114. In fact as stated before, never has the Plaintiff paid the Defendant any amounts as commissions.

[law firm's adresses]

EXHIBIT 1

[Law firm's identification]

115.   Which makes perfect sense, being an agreement for purchase and sale for resale.

116.   Therefore, the Defendant invokes, again, facts without any support, either documental or of any other sort.

117.   Actually, the fact that the Defendant does not challenge most part of the claimed debt cannot be disregarded.

118.   Nevertheless, and quoting the Defendant on paragraph 10 of the Opposition, "indeed, this invoice (Invoice no. 2071907, attached as doc. […]) is not due [.]".

119.   And arguing nothing concerning the others, without even challenging them.

120.   Whereby all the other credits are to be considered as confessed by agreement, under the terms of paragraph 1 of article no. 484 of Code of Civil Procedure.

121.   Therefore resulting a contradiction between claims b) and c) of the Opposition raised by the plaintiff, when requesting the acquittal of the claim, for not-proven.

## THE "COMPENSATION" INTENDED BY THE DEFENDANT

122.   The subject of compensation cannot be appreciated in court under the terms of Clause 20 of the contract *sub judice*, since the competent jurisdiction is the arbitral forum and not the judicial, being that it does not fit in the type of disputes foreseen in the latter part of the said clause (amounts due and not contested).

123.   In fact, the alleged credit at stake was previously challenged by the Plaintiff, on its letter dated of September 26th, 2012 ("[I] can assure you that your numbers are significantly over stated [.]" (doc. 6 of the Opposition)

124.   For that reason the compensation exception must be considered as completely dismissed.

[law firm's adresses]

66                                                      EXHIBIT 1

[Law firm's identification]

125. However, the following must be said:

126. Under the terms of article 847 of the Civil Code, only when 2 people are mutually creditor and debtor, any of them can be free from its obligation through set-off with the obligation of its creditor, when certain requisites established by the said provision are fulfilled.

127. Nevertheless, *in casu*, it must be said that such set-off cannot operate, once the requisites for set-off are not fulfilled, since there is not a credit and, even if there was, it would not be judicially eligible by the Defendant.

128. The aforementioned requisite is not verified, as hereby broadly exposed , because (i) it was never contractually established any commission; (ii) no commission was ever paid to the Defendant by effect of the commercial relation existent between the parts; (iii) the amount suggested by the Plaintiff of $ 12.000,00 USD does not correspond to a commission, but to a mere reward suggested to award the performance of the Defendant and, as such, does not substantiate any obligation of the Plaintiff, much less a recognized credit; (iv) there is not any legal or contractual ground justifying the alleged percentage of 5% of "commission"; (v) if existent, which we do not grant, the basis alleged by the Defendant (€1.952.005,00) – contained on document 7 of the Opposition – does not have any fundament or correspondence with reality, as it is expressly referred by the Defendant at the end of the said doc. 7, as well as it is alleged by the Plaintiff according to doc. 6 of the Opposition.

129. In fact, it is clear that the credit claimed by the plaintiff, due and recognized by the Defendant, completely differs from the credit alleged by the said Defendant, which concerns an alleged commission that is not due and that was expressly challenged by the plaintiff at the pre-judicial phase.

130. Note that the request of the Plaintiff is based on invoices due and not paid, concerning equipment that was provided to the Defendant and resold. On the other hand, the request of the Defendant does not have any legal or documental support, and concerns an alleged commission that was never due.

131. Whereby the requisites for set-off are not fulfilled,

[law firm's adresses]

EXHIBIT 1

[Law firm's identification]

132.    Such subject, since it was expressly challenged, would have to be discussed in arbitral judgment, under the terms of the jurisdiction pact contained on the agreement *sub judice*.

Lastly,

INVOICE NO. 2071907 MATTER

133.    On paragraph 10 of the Opposition, the Defendant refers that this invoice is not due.

134.    And claims, for that effect, the payment of a previous invoice (invoice no. 2060331, doc. 3 of the Opposition).

135.    From a careful reading of documents 2 to 5 of the Opposition the alleged mistake in the sending of equipment is not clear, as well as its eventual return, and, mainly, not even that the payment of invoice no. 2071907, attached to the Opposition as doc. 2, was fully made.

136.    Still, note that the Defendant paid invoice no. 2060331, issued on November 17th, 2011 on February 28th, 2012, after the issuance of invoice no. 2071907 of January 12th, 2012 (as contained in doc. 5 of the Opposition).

137.    Also, note that it is not given any documental proof concerning a return bill or a copy of the consignment note that would be customary practices in this type of commercial relation.

138.    Or even any other mean of communication confirming what is alleged by the Defendant.

139.    The same can be said concerning the alleged knowledge of the plaintiff of that credit, under the terms of paragraph 17 of the Opposition, that does not have any support, neither document, nor factual.

[law firm's adresses]

EXHIBIT 1

[Law firm's identification]

140.    Thus, even if there was any mistake made by the Plaintiff, which is not admitted, it would be necessary that the Defendant had returned the equipment, a fact that lacks demonstration.

141.    Whereby the respective amount of € 13.125,00 corresponding to invoice no. 2071907 will always be due, amount added with the respective amount of interest.

Terms under which:

i)    The exception of international lack of jurisdiction, due to alleged violation of the jurisdiction pact, must be totally dismissed, for clear lack of legal ground;

ii)    The exception of compensation must be totally dismissed, for clear lack of legal ground;

iii)    The Opposition shall be totally dismissed and, consequently, shall the Defendant be convicted, under the terms required on the injunction petition, to the payment of the amount of €691.663,75 euros, corresponding to the owed principal worth €644.192,42, increased by the interest due up until November 26th, 2012, worth €24.471,33, under the terms of the application petition, increased by the compensatory interest due and becoming due until the whole and effective payment.

Attached: Power of Attorney, subdelegation and 34 documents.

To be attached: 1 document.

It is hereby requested the recording of the trial hearing.

Testimonial evidence:

☐    Gary Smith, financial manager of Powerwave Europe, with professional domicile at Knarrarnasgatan , 7 8tr., Kista, Sweden. To be presented.

☐    Juan Algara Díaz, sales manager of Powerwave Technologies in the Iberian market, with professional domicile at C/Villaamil 17, 1stC, 28039 Madrid, Spain. To be presented.

[law firm's adresses]

EXHIBIT 1

[Law firm's identification]

☐   Julia Sudakova-Hogan, with professional domicile at 11773 Azure Drieve, Frankfort, Illinois 60423 USA.

☐   Stacey Collovi, previously Accounts Receivable Manager of Powerwave Technologies, with professional domicile at 5001 Beach Boulevard, Apartment no. 117, Buena Park, California 90621 USA.


**R.D.**


**The Lawyer**                    **The Trainee Lawyer**


[law firm's adresses]

70                                         EXHIBIT 1

EXHIBIT 1

Doc. N⁰ 1

RESELLER AGREEMENT

by and between

POWERWAVE TECHNOLOGIES, INC.

and

NET PLAN – TELECOMUNICAÇÕES E ENERGIA, S.A.

C:\Users\npassos\Desktop\Reseller Agreement EMEA rev 18-03-2010-NetPlan.doc

Powerwave Confidential

This Reseller Agreement is made and entered into by and between Powerwave Technologies, Inc., a company duly incorporated and organized under the laws of the state of Delaware and having its offices at 1801 East Saint Andrew Place, Santa Ana, California 92705 USA ("Powerwave"), and Net Plan – Telecomunicações e Energia, S.A., Registration Number 11293/20010525, a company duly incorporated and organized under the laws of Portugal and having its registered office at Centro Empresarial de Telheiras, Rua Hermano Neves, nº 22 – 2º A, 1600-477 Lisboa - Portugal ("Reseller").

Recitals

    A.  WHEREAS, Powerwave is engaged in the development, manufacture and sale of telecommunication equipment, including, but not limited to, base station components, antennas, power amplifiers, repeaters and TMAs; and

    B.  WHEREAS, Powerwave has agreed to appoint Reseller as its non-exclusive reseller in the Territory (as hereinafter defined) to resell certain Powerwave products, and Reseller has agreed to accept such appointment on the terms and conditions of the Agreement (as hereinafter defined).

NOW, THEREFORE, in consideration of the foregoing and the mutual agreements hereinafter set forth, Powerwave and Reseller agree as follows:

**1.**     **Definitions**

1.1     Whenever used in this Agreement (which term is deemed to include the Appendices hereto) the following terms and expressions shall, to the extent the context does not require otherwise, have the following meaning:

1.1.1     "Agreement" means this Reseller Agreement by and between Powerwave and Reseller as it may be amended from time to time in accordance with the terms set forth herein.

1.1.2     "Customer" means the party who acquired or plans to acquire a Product from Reseller.

1.1.3     "Product(s)" means the products described in Exhibit 1, which is attached hereto and incorporated herein by this reference, and such other products as the parties may agree to add to Exhibit 1 from time to time.

1.1.4     "Territory" means the geographic area listed in Exhibit 1 in which Reseller is authorized to resell the Products.

1.1.5     "Trademarks" means any and all current or future company names, product names, marks, logos, designs, trade dress and other designations or brands used by Powerwave in connection with its products and services.

**2.**     **Grant and Scope**

2.1     Powerwave hereby appoints Reseller to act as a non-exclusive reseller of Powerwave for the resale of the Products in the Territory during the term of this Agreement, and Reseller accepts such appointment in accordance with the provisions of this Agreement. Powerwave reserves the right to increase or decrease the number of authorized resellers in the Territory at any time without notice to Reseller.

2.2     Reseller shall perform its obligations hereunder in accordance with all reasonable instructions that Powerwave may give Reseller from time to time. Reseller is free to set its own retail prices.

2.3     Reseller is not authorized to market or advertise the Products to Customers located outside of the Territory. Reseller shall refrain from actively seeking Customers for the Products outside the Territory and from establishing any branch or legal entity outside the Territory for the marketing and/or resale of the Products.

1

C:\Users\npassos\Desktop\Reseller Agreement EMEA rev 18-03-2010-NetPlan.doc

EXHIBIT 1



<u>Powerwave Confidential</u>

2.4    For so long as Reseller acts as Powerwave's Reseller in the Territory, Reseller shall neither directly nor indirectly manufacture, import, market or sell any products that compete with the Products.

2.5    Reseller represents and warrants to Powerwave that it has the necessary ability and experience to carry out the obligations assumed by it hereunder and that by virtue of entering into the Agreement it is not and will not be in breach of any agreement or any binding obligation to any third party.

2.6    All inquiries regarding the Products received by Reseller from Customers situated outside the Territory shall be forwarded to Powerwave, solely for information purposes.

**3.**    <u>Products</u>

3.1    The Products are designed and manufactured in accordance with all applicable laws and regulations. If the Products at any time do not comply with laws and regulations applicable in the Territory, Reseller shall promptly inform Powerwave in writing. Such non-compliance shall not result in any liability whatsoever for Powerwave in favour of Reseller. Should Powerwave decide in its sole discretion that it cannot, for any reason, comply with the applicable laws and regulations of the Territory, then Powerwave shall inform Reseller thereof, and either party shall be entitled to terminate this Agreement upon sixty (60) days' prior written notice.

3.2    Powerwave reserves the right to withdraw one or more Products from the world market or the Territory. Any such decision shall be effective immediately upon communication of written notice to Reseller. Powerwave shall not incur any liability to Reseller based on any Product withdrawal, but in case of such withdrawal, either party shall be entitled to terminate this Agreement upon sixty (60) days' prior written notice.

**4.**    <u>Independent Contractors</u>

The relationship between Powerwave and Reseller established by this Agreement is that of vendor and purchaser and nothing in this Agreement shall be construed to make the Reseller a partner, joint venturer, officer, agent, or employee of Powerwave. In performance of this Agreement, Reseller shall at all times act as an independent contractor. Reseller has no authority to assume or create any obligation or responsibility, express or implied, on behalf of or in the name of Powerwave or to bind Powerwave in any manner whatsoever. Reseller acknowledges that: (i) it is responsible for its own taxes and expenses and maintaining its own books and records; (ii) it is responsible for providing benefits for its own employees; and (iii) in performing its obligations under this Agreement, Reseller will have control of and be responsible for establishing the method and means by which it performs its services under the Agreement.

**5.**    <u>Orders</u>

Reseller shall submit orders to Powerwave on written purchase orders that shall constitute binding commitments to accept and pay for the number and type of Products stated therein, in accordance with the terms and conditions hereof. Any terms or conditions contained in Reseller's orders other than the number and type of Products that Reseller is ordering shall not be binding unless accepted in writing by Powerwave. Any conflict between the terms and conditions of this Agreement and the terms and conditions of any order or other communication submitted by Reseller to Powerwave shall be resolved in favor of the terms and conditions of this Agreement. No order shall be binding on Powerwave unless accepted in writing by Powerwave. Acceptance shall occur only through Powerwave's written confirmation or shipment. Risk of loss or damage for the Products shall pass to Reseller upon release of the Products by Powerwave to the transport carriers or shippers transporting the Products. Reseller shall be responsible for freight, insurance, customs duties, taxes, tariffs and storage charges incurred in transit, unless otherwise provided by Powerwave.

**6.**    <u>Prices and Terms of Payment</u>

6.1    Reseller shall purchase the Products at the prices set forth in Exhibit 1 or as otherwise mutually agreed between the Parties in writing. Powerwave shall have the right to change the prices from

2

C:\Users\npassos\Desktop\Reseller Agreement EMEA rev 18-03-2010-NetPlan.doc

EXHIBIT 1

Powerwave Confidential

time to time for any Products not yet the subject of an order submitted and accepted hereunder, on thirty (30) days' prior written notice.  Price changes will not apply to Products for which Powerwave has received and accepted an order prior to the day the change is effective.  All prices are based upon deliveries made FCA shipper's site (Incoterms 2000) unless otherwise specified by Powerwave.

6.2     All prices will be quoted and invoiced in either United States Dollars or Euros in which payment by Reseller is to be made.

6.3     The prices, fees and other charges of Powerwave do not include import licenses, customs duties, assessments, tariffs, value added tax, sales tax and similar taxes as well as any city, municipal, state or federal taxes or any withholding taxes, whether currently imposed or imposed in the future. If any such tax is found to be applicable, the appropriate amount of tax shall be invoiced to and paid by Reseller to Powerwave at the same time and on the same terms as applied to the payment due.

6.4     Unless otherwise agreed, Powerwave will render invoices to Reseller upon delivery of the Products ordered. Any amounts payable hereunder shall be paid within ninety (90) days from the date of invoice, and payment shall be made in accordance with the instructions stated on the invoice. Payment will not be considered effected until Powerwave receives in available funds the full amount due.  All amounts paid to Powerwave by Reseller hereunder are nonrefundable and shall not be returned or repaid to Reseller upon termination of this Agreement or for any other cause.  Product may not be returned to Powerwave except for warranty repair as provided in Clause 15.1 below.

6.5     If Reseller does not pay an invoice when it becomes due for payment, Powerwave reserves the right to stop delivery of Products to Reseller until the invoice has been duly paid. Powerwave agrees that this right shall not be executed without giving Reseller prior notice and a reasonable time period to settle the invoice.

6.6     Without prejudice to any of Powerwave's other rights, Reseller agrees to indemnify and hold Powerwave harmless from and against any and all loss, damage, expense or liability, including reasonable legal fees that arise or result from Reseller's failure to discharge its obligations under this Clause 6. In addition hereto, Powerwave may from the date on which Reseller was in default charge interest on unpaid amounts at an annual rate of eighteen percent (18%) or the maximum interest rate allowed under Swedish law, whichever is lower.

6.7     Reseller agrees to maintain good financial standing with Powerwave and agrees to provide Powerwave with such financial and credit information reasonably requested by Powerwave from time to time.

7.      Sales Promotion

7.1     Reseller shall maintain an efficient sales organisation within the Territory for the Products and shall use its best efforts to promote the sale of the Products in the Territory. Reseller shall maintain at its cost and expense suitable demonstration facilities for the Products.  Reseller shall insure that the Products marketed to Customers are appropriate for the Customer's requirements. It is Reseller's responsibility to assure Customer satisfaction with Products and Reseller's related activities.

7.2     Reseller shall use adequate marketing resources so as to achieve an optimal coverage for the Products in the Territory.

7.3     Powerwave shall supply Reseller with a reasonable number of all its relevant printed sales promotion materials to serve as a basis for the promotional materials produced by Reseller. Reseller may produce printed sales promotion materials for its marketing of the Products. Such materials must be approved in writing by Powerwave before being published or in any other way made available to Customers or any third party.

7.4     Reseller shall carry its own costs for the marketing and sale of the Products.

3

C:\Users\npassos\Desktop\Reseller Agreement EMEA rev 18-03-2010-NetPlan.doc

Powerwave Confidential

7.5 Reseller may not engage agents, value-added resellers or other third parties in the resale of the Products without the prior written consent of Powerwave and then only provided that Reseller causes the provisions of this Agreement to be complied with by such third parties. Reseller shall remain entirely responsible towards Powerwave for the fulfilment of the provisions of this Agreement by such third parties as well as for the activities of such third parties.

7.6 Powerwave shall be entitled to take part in Reseller's sales activities concerning the Products and in this connection, among other activities, be present at Customers' visits, fairs and policy meetings.

8. **Sales Forecast**

Reseller shall provide to Powerwave on a monthly basis, a rolling three (3) month sales forecast in a format specified by Powerwave.

9. **Maintenance and Service**

9.1 Reseller shall use its best efforts to report to Powerwave promptly all suspected and actual problems with the Products. Powerwave will endeavor to keep Reseller apprised of known Product problems.

9.2 Reseller shall establish and maintain an efficient service organisation for the Products in the Territory.

9.3 Reseller shall perform all reasonably required end-user planning for the physical installation of the Products. Reseller shall provide installation and support services for all Products.

9.4 Reseller shall not make any representation or give any assurance that exceeds or differs from the scope of Powerwave's written limited warranty. Reseller agrees to indemnify Powerwave and to hold it harmless from and against any loss, damage, claims or demands whatsoever arising out of any express warranties or representations made by Reseller, its agents or employees which are not part of Powerwave's written warranty and approved specifications for the Products.

10. **Records and Reports**

10.1 Reseller shall keep Powerwave continuously informed about marketing conditions within the Territory such as development of the market for the Products in the Territory, competition, market shares, Reseller's sales promotion, sales made, prospective sales as well as other information reasonably requested by Powerwave. Reseller shall on an annual basis, in such manner as Powerwave may from time to time require, provide Powerwave with detailed marketing plans.

10.2 Reseller shall maintain a record for each Product sold to a Customer. The record shall include the name and address of the Customer, the date of the sale, the Product and the Product type.

10.3 Reseller shall provide Powerwave with monthly, quarterly and annual reports concerning its sales to Customers in a format specified by Powerwave as Powerwave shall reasonably require. Reseller shall be liable to Powerwave for the accuracy of such reports and for any delays in providing such reports. Reseller specifically agrees to reimburse Powerwave in full to the extent that Powerwave incurs liquidated damages or penalties to a Customer based on Reseller's failure to provide accurate and/or timely reports.

11. **Training**

11.1 If agreed between the parties Powerwave may provide training in the use and installation of the Products for Reseller's personnel. Such agreement shall be either added as an exhibit to this Agreement or documented in a separate agreement.

11.2 Any additional training requested by Reseller may be provided by Powerwave upon written agreement in accordance with its standard scale of charges in force from time to time.

4

C:\Users\npassos\Desktop\Reseller Agreement EMEA rev 18-03-2010-NetFlex.doc

EXHIBIT 1

Powerwave Confidential

**12.**     **Trademarks and Other Intellectual Property Rights**

12.1     Powerwave grants Reseller the limited permission to use the Powerwave mark solely to identify the Products acquired from Powerwave under this Agreement.   Reseller must indicate that all Powerwave Trademarks are registered trademarks of Powerwave, and must comply with the then current Powerwave trademark and logo policies.  Powerwave reserves the right to revoke or limit the use of the Trademarks at any time upon reasonable notice.

12.2     Except as stated above, Reseller is granted no right, title, license or interest in the Trademarks. Reseller acknowledges Powerwave's rights in the Trademarks and agrees that any and all use of the Trademarks by Reseller shall inure to the sole benefit of Powerwave.  Reseller agrees that it shall take no action inconsistent with Powerwave's ownership of the Trademarks and agrees not to challenge Powerwave's rights in or attempt to register any of the Trademarks, or any other name or mark owned or used by Powerwave or any mark confusingly similar thereto.  If at any time Reseller acquires any rights in, or any registration or application for, any of the Trademarks by operation of law or otherwise, it will immediately, upon request by Powerwave and at no expense to Powerwave, assign such rights, registrations, or applications to Powerwave, along with any and all associated goodwill.

12.3     Upon the expiration or termination of this Agreement Reseller shall not be entitled to use the Trademarks.

12.4     Reseller shall not register, or attempt to register, any Trademarks or any marks confusingly similar thereto in any jurisdiction.

12.5     Reseller shall ensure that the legal interests of Powerwave regarding its intellectual property rights are adequately protected in Reseller's Customer contracts.

12.6     Reseller shall promptly notify Powerwave of any use by any third party of Trademarks or any use by such third parties of similar marks which may constitute an infringement or passing off of the Trademarks.  Powerwave reserves the right, in its sole discretion, to institute any proceedings against such third party infringers and Reseller shall refrain from doing so itself.  Reseller agrees to cooperate fully with Powerwave in any action taken by Powerwave against such third parties, provided that all expenses of such action shall be borne by Powerwave and all damages which may be awarded or agreed upon in settlement of such action shall accrue to Powerwave.

**13.**     **Reseller's Responsibility**

Reseller shall take complete responsibility and liability, including claims from third parties, arising from Reseller's and/or its appointed third parties' activities or negligence under this Agreement and Reseller hereby undertakes to indemnify and to hold Powerwave harmless from any responsibility, liability and expense thereof.

**14.**     Insurance

Reseller will keep its business and properties insured at all times against such risks for which insurance is usually made by other persons engaged in a similar business similarly situated (including without limitation insurance for, commercial general liability, fire and other hazards and insurance against liability on account of damage to persons, or property and insurance under all applicable workman's compensation laws).  Reseller shall add Powerwave as an additional named insured to such insurance policy and provide Powerwave with a certificate evidencing such coverage within thirty (30) days of the execution of this Agreement

**15.**     **Limited Warranty, Disclaimer and Limitations.**

C:\Use:s\npasses\Desktop\Reseller Agreement EMEA rev 18-03-2010-NetPlan.doc

Powerwave Confidential

15.1    Powerwave warrants that the Products are free from defects in material and workmanship and will perform in accordance with their published specifications for a period of one (1) year from the date of delivery. This warranty shall not apply to any defect that has been caused by a Customer and arises from mishandling, misuse, neglect or improper installation, testing or repair. Any Product which does not conform to the above warranty may be returned to Powerwave at its designated location for repairs during the warranty period for repair or replacement, at Powerwave's sole discretion. Before returning any Product, Reseller must obtain a return merchandise authorization ["RMA Number"] from Powerwave. Reseller shall be responsible for all freight charges, duties and tariffs in returning Product on a DDU basis to Powerwave's designated repair facility. Powerwave will pay the freight charges in returning repaired or replacement Product on a DDU basis to Reseller's designated location. Powerwave's standard no fault found, out of warranty repair, and beyond economic repair charges will apply to any units returned for repair as applicable. Any additional or other warranty made by Reseller to its end-user Customers shall be the sole responsibility of Reseller and Reseller agrees to hold Powerwave harmless from and against any liability or obligation Powerwave may incur as a result of any such additional or other warranty. ANY IMPLIED WARRANTIES, INCLUDING WARRANTIES OR CONDITIONS OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE EXPRESSLY EXCLUDED.

15.2    The sole and exclusive remedy of Reseller, as well as its successors and assigns, for any defect or nonconformity in the Products shall be to obtain repair or replacement of the defective units that are returned to Powerwave during the warranty period, pursuant to the Incoterms specified above.

15.3    POWERWAVE DISCLAIMS ANY AND ALL LIABILITY FOR SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING LOSS OF PROFITS) ARISING OUT OF THIS AGREEMENT OR WITH RESPECT TO THE INSTALLATION, USE, OPERATION OR SUPPORT OF THE PRODUCTS EVEN IF POWERWAVE HAS BEEN APPRISED OF THE POSSIBILITY OF SUCH DAMAGES.

15.4    Except for infringement of third party intellectual property or property damage caused by the negligent or intentional acts of Powerwave or its employees, Reseller specifically agrees that any liability for Products provided under this Agreement on the part of Powerwave, whether in contract, tort or other legal theory, shall not exceed the amount paid to Powerwave for the Products giving rise to the liability.

16.     Intellectual Property Rights Indemnity

16.1    There may be patents, utility models, trademarks, trade names, design patterns, copyrights and other intellectual property rights relating to the products delivered to Reseller that belong to Powerwave. Reseller agrees to respect any such intellectual property rights and understands that the use of Products and any intellectual property rights pursuant to the Agreement does not include or cause the transfer of ownership thereof or give any proprietary or license rights, unless specifically agreed herein or in a separate written agreement, in any of them to Reseller. Reseller agrees to inform Powerwave as soon as it receives any knowledge of any intellectual property right belonging to or used by Powerwave being infringed or allegedly infringed.

16.2    Powerwave will defend or settle, at its own expense, but under its sole direction and contingent on Reseller's cooperation, any claim alleging that any Product in its unmodified form infringes any patent, trademark, copyright, or trade secret in the Territory. If any Product becomes the subject of such a claim, Powerwave reserves the right, at its option to: (1) modify or replace the affected parts so the Product becomes non-infringing, (2) obtain for Reseller the right to continue to use the Product or (3) if the foregoing cannot reasonably be accomplished, refund the fees paid for the infringing Product, less depreciation (based on a "straight-line" five-year depreciation formula applicable to the actual period of use). This section states the entire liability of Powerwave for any infringement involving the Products.

17.     Confidential Information

6

Powerwave Confidential

17.1 Reseller acknowledges that it will receive confidential information and trade secrets (the "Confidential Information") from Powerwave in the course of performing this Agreement. The term Confidential Information shall include all information, data or knowledge (whether in oral, written, graphic, electronic, machine-readable or other form) related to Powerwave's business, operations, products, financial affairs, customers and vendors, including without limitation, technical data, research, concepts, ideas, designs, know-how, concepts, patent applications, forecasts, customer lists and contacts.

17.2 Reseller agrees to maintain the secrecy of Powerwave's Confidential Information. Confidential Information shall be used solely for the purposes set forth in this Agreement and be made known solely to employees on a need-to-know basis. Reseller shall ensure that the aforementioned employees are made aware of and on their own account adhere to these contractual obligations regarding the confidentiality of Confidential Information.

17.3 Confidential Information shall not include any information that is publicly available at the time of disclosure or subsequently becomes publicly available through no fault of the recipient party or is rightfully acquired by the recipient party from a third party who is not in breach of an agreement to keep such information confidential.

17.4 The foregoing obligations shall replace any previously agreed obligations regarding secrecy in respect of information relating to the Products and/or this Agreement and they shall survive the termination of this Agreement and remain valid for a period of five (5) years after such termination, unless such information shall be disclosed to the public or shall become public knowledge other than by breach of this obligation.

18.    Force Majeure

18.1 Neither Powerwave nor Reseller shall be liable to the other for any delay or non-performance of its obligations under the Agreement in the event and to the extent that such delay or non-performance is due to an event of Force Majeure (as defined hereinafter).

18.2 Events of Force Majeure are events beyond the control of a party or any of its sub-contractors that occur after the date of Powerwave's order confirmation referred to above and which were not reasonably foreseeable at that time and whose effects are not capable of being overcome without unreasonable expense and/or loss of time to the party concerned. Events of Force Majeure shall include (without being limited to) war, civil unrest, strikes, lockouts and other general labour disputes, acts of government, natural disasters, exceptional weather conditions, breakdown or general unavailability of transport facilities, accidents, fire, explosions, and general shortages of energy and materials.

18.3 A party directly affected by an event of Force Majeure shall lose the right to rely on the same, unless, promptly after the time when the party became or ought to have become aware of the occurrence of the event, that party gives the other party written notice thereof. When the event of Force Majeure has come to an end, the said other party shall be notified and also, if possible, be informed when any measure postponed by the event will be effected.

19.    Term of the Agreement

19.1 This Agreement shall enter into force when duly signed by an authorized representative of Powerwave and Reseller and shall remain in force for a period of one (1) year.

19.2 This Agreement may be terminated by either party by providing the other party sixty (60) days' advance written notice. Upon expiration of the original term of this Agreement, it shall continue from year to year thereafter with the approval of both parties in writing subject to termination at any time as aforesaid with thirty (30) days' prior written notice.

19.3 Notwithstanding the foregoing provisions, this Agreement may be terminated

7

C:\Users\npassos\Desktop\Reseller Agreement EMEA rev 18-03-2010-NetPlan.doc

EXHIBIT 1

Powerwave Confidential

(a)    by either party immediately upon written notice if the other party should become insolvent or enters into negotiations on composition with its creditors or a petition in bankruptcy should be filed by it or it should make an assignment for the benefit of its creditors; or

(b)    by either party immediately upon written notice if the other party should fail to fulfil any of its obligations under this Agreement and such failure is not remedied within thirty (30) days from having received a request for such remedial action from the first party; or

(c)    by Powerwave upon thirty (30) days written notice if Reseller shall (or shall threaten to) sell, assign, part with or cease to carry on its business or that part of its business relating to the marketing and resale of the Products; or

(d)    by Powerwave immediately upon written notice if the control of Reseller shall be transferred to any person(s) other than the person(s) in control of Reseller at the effective date of this Agreement (but Powerwave shall only be entitled to terminate within the period of sixty (60) days after Powerwave shall have been notified in writing of the change in control); or

(e)    by Powerwave immediately upon written notice in the event that Reseller breaches its obligations to Powerwave under Section 27.1 of this Agreement.

20.    **No Compensation; No Right of Return**

Reseller shall not because of the termination of this Agreement be entitled to any damage or other compensation whatsoever whether for loss of Customers or any other detriment.  Reseller shall have no right to return any Products ordered or purchased from Powerwave except as set forth in the limited warranty provision above.

21.    **Effects of Termination**

21.1    On the termination of this Agreement all rights and obligations of the parties hereunder shall automatically terminate except:

(a)    for such rights of action as shall have accrued prior to such termination and any obligation which expressly or by implication are intended to come into or continue in force on or after such termination; and

(b)    Reseller shall be entitled to sell any of its stocks of the Products which have been fully paid for and which are required to fulfil unperformed contracts of Reseller outstanding at the date of termination (and to the extent and for that purpose the provisions of this Agreement shall continue in effect).

21.2    Reseller shall at its own expense forthwith return to Powerwave or otherwise dispose of as Powerwave may instruct all technical and promotional materials and other documents and papers whatsoever sent to Reseller and relating to the Products or the business of Powerwave (other that correspondence between the parties) and all property of Powerwave being in each case in Reseller's possession or under its control.

21.3    All orders for undelivered Products shall be automatically cancelled.

21.4    All outstanding unpaid invoices in respect of the Products shall become immediately payable in place of the payment terms previously agreed between the parties.

21.5    Powerwave shall be entitled to repossess any of the Products that have not been paid for against cancellation of the relevant invoices (and so that Reseller hereby irrevocably permits Powerwave, its employees and agents to enter any of the premises of Reseller for such purpose).

21.6    Powerwave shall be entitled (but not obliged) to purchase all or any unsold Products in the possession or under the control of Reseller which have been paid for by Reseller (and which are not required to fulfil any unperformed contracts of Reseller outstanding at the date of termination) at the

8

C:\Users\npasson\Desktop\Reseller Agreement EMEA rev 18-03-2010-NetPlan.doc

Powerwave Confidential

price paid to Powerwave by Reseller for such Products, subject to Powerwave paying all necessary value added tax and other taxes, duties or levies, and paying the cost of arranging transport and insurance and to notifying Reseller in writing of its requirements within fourteen (14) days of the date of termination. Reseller shall give Powerwave necessary assistance and co-operation for the purpose of giving effect to the provisions of this Clause and of delivering the Products to Powerwave but, subject thereto, any Products which are not purchased by Powerwave within thirty (30) days of its notice may be sold by Reseller (Reseller using its best efforts to sell the same within three (3) months thereafter) in accordance with the terms of this Agreement (and to that extent and for that purpose such terms shall continue in effect).

22.    **No Revival**

After the termination of this Agreement, the acceptance of orders from Reseller by Powerwave or the continuance of the sales by Reseller of the Products or the referring or inquiries to Reseller by Powerwave shall not be construed as a revival of this Agreement.

23.    **Assignment**

23.1    Reseller will not assign or attempt to assign or otherwise transfer any right or obligation arising out of this Agreement without obtaining Powerwave's prior written consent.

23.2    Powerwave may assign any or all of its rights or obligations arising out of this Agreement to any third party by giving notice to Reseller.

24.    **Amendments**

No amendments, changes, revisions or discharges of this Agreement, in whole or in part, shall have any force or effect unless set forth in writing and signed by the parties hereto.

25.    **Agreement**

25.1    This Agreement (together with all attachments and exhibits hereto) constitutes the entire agreement between the parties and supersedes any and all prior proposals, representations, understandings, and all other agreements between the parties, whether written or oral, with respect to the subject matter hereof. Any purchase order, order acknowledgement, invoice or other document containing additional or different terms of conditions shall not have force or effect upon the terms and conditions of this Agreement and any party receiving such document shall not be deemed to have accepted said additional or different terms or conditions by its failure to object thereto.

25.2    In the event of a conflict between the various parts of this Agreement, the documents of this Agreement will, unless otherwise specified, prevail in the following order of precedence:

(a) The numbered Clauses of this Agreement.

(b) The Appendices in numerical order.

26.    **Waiver**

The failure of either party hereto to insist upon the strict adherence to any term of this Agreement on any occasion shall not be considered as a waiver of any right hereunder nor shall it deprive that party of the right to insist upon the strict adherence to that term or any other term of this Agreement at some other time.

27.    **Compliance with Law and Supplier Code of Conduct**

27.1    Reseller agrees to comply with all applicable laws in respect of this Agreement and to indemnify and hold harmless Powerwave from and against all claims, damages, losses, expenses, fines and

9

C:\Users\npassos\Desktop\Reseller Agreement EMEA rev 18-03-2010-NetPlan.doc

Powerwave Confidential

penalties incurred by, or asserted against, Powerwave which arise as a result of Reseller's violation or alleged violation of any such laws.

27.2     Reseller certifies and represents that, in connection with its activities with or for Powerwave, it:

    (a) will comply with the laws, rules and regulations of all applicable jurisdictions including, but not limited to, the Foreign Corrupt Practices Act ("FCPA") and other applicable anti-bribery laws including any applicable laws, regulations, and administrative requirements promulgated under the OECD Convention on Combating Bribery of Foreign Public Officials and that it will not otherwise take any actions that will cause Powerwave to violate those laws.

    (b) will not, directly or indirectly, make or authorize any payments or gifts, or offers or promises of payments or gifts or things of value, directly or indirectly, to any official or employee of any U.S. or foreign national, state, or local government or any agency or instrumentality thereof; to any candidate for public office, to any political party, or any officer or employee thereof in violation of the FCPA, other applicable anti-bribery laws, or with Powerwave's FCPA Policy, which is attached hereto as Exhibit 2 and incorporated herein by this reference, and Powerwave's Supplier Code of Conduct, which is attached hereto as Exhibit 3 and incorporated herein by this reference.

27.3     Powerwave and Reseller shall comply with all applicable export control laws, including U.S. export laws and regulations, and each party agrees that, without obtaining the necessary license or approval from the United States government it will not (i) export or re-export, directly or indirectly, any Product or technical data or direct product of that technical data (including Confidential Information) to any country for which the U.S. Government at the time of export, requires an export license or other governmental approval, or (ii) disclose any technical data (including Confidential Information) acquired from the other party to any national of any country for which the U.S. Government requires an export license or other governmental approval. Reseller will obtain Powerwave's prior written consent for any re-export or re-transfer of Powerwave's Products and technical data, as well as for any disclosure of such technical data to a national of any country for which the United States government or any agency thereof requires an export license or other governmental approval. Under no circumstances may Reseller export or re-export any Powerwave Products or technical data to countries, persons, or entities that are subject to U.S. economic sanctions or that are subject to restrictions under the U.S. Export Administration Regulations. Countries subject to broad economic sanctions currently include Cuba, Iran, North Korea, Sudan and Syria.

27.4     Terms of Sale or other specific agreement will denote the IMPORTER OF RECORD. The importer of record shall comply with all applicable import laws, rules and regulations of the United States and/or any other applicable countries. The importer of record is responsible for all customs duties and other customs-related fees. The importer of record is eligible for duty drawback rights to the Products.

27.5     Reseller shall comply with the latest version of the Powerwave's FCPA Policy and Supplier Code of Conduct, both of which shall be updated and made available to Reseller at the internet web page set forth below. http://www.powerwave.com/governance.asp. Reseller shall recertify its compliance with Powerwave's FCPA Policy and Supplier Code of Conduct on an annual basis.

27.6     Reseller will fully cooperate in any investigation, including making employees available for interviews, in the event that Powerwave requests such cooperation.

27.7     With respect to Reseller's compliance with its obligations under this Agreement, at all times that this Agreement remains in effect and for a period of twenty-four months following any lapse or termination of this Agreement, Powerwave shall have the right to conduct an audit of Reseller's records that reasonably relate to such compliance. Such audit shall include the right to interview Reseller's employees, representatives, contractors, and agents with respect to such records.

10

C:\Users\npasso\Desktop\Reseller Agreement EMEA rev 18-03-2010-NetPlan.doc

EXHIBIT 1

27.8      Any breach of the foregoing obligations shall constitute a material breach of this Agreement which may result in immediate termination of this Agreement by Powerwave.

28.      **Survival of Rights and Obligations**

Rights and obligations under this Agreement, which by their nature would continue beyond the termination or ending in any other way of this Agreement shall survive the termination of this Agreement.

29.      **Governing Law**

This Agreement shall be governed by, and construed and enforced in accordance with the substantive laws of the Kingdom of Sweden without regard to its principles of conflicts of laws or the United Nations Convention on the International Sale of Goods.

30.      **Disputes**

Any and all disputes, controversies and claims arising out of or in connection with this Agreement, or the breach, termination or invalidity thereof, shall be settled by arbitration in accordance with the rules of the Arbitration Institute of the Stockholm Chamber of Commerce. Unless the parties agree otherwise, the arbitration proceedings shall be conducted in Stockholm, Sweden, in the English language. The arbitral tribunal shall be composed of one (1) arbitrator. Unless the disputing parties agree otherwise, the Arbitration Institute of the Stockholm Chamber of Commerce shall appoint the arbitral tribunal. The arbitration award shall be final and binding upon the parties. The foregoing shall not restrict Powerwave from going to court or to a competent authority in order to seek payment from Reseller of an amount which is undisputed and due for payment.

31.      **Notices**

All notices, requests, demands and other communications required by this Agreement to be given by either party to the other party shall be forwarded by registered mail, telefax or hand delivery and shall be addressed as follows:

If to Powerwave, to:

Powerwave Technologies, Inc.
1801 E. St. Andrew Place
Santa Ana, California 92705 USA
Telefax: +001 714 466 5901
Attn: Chief Financial Officer

If to Reseller, to:

Net Plan – Telecomunicações e Energia, S.A.
Centro Empresarial de Telheiras
Rua Hermano Neves, nº 22, 2º A
1600-477 Lisboa - Portugal
Telefax: +351 21 752 12 50
For the Attention of Administrator

or to such other address as either party may specify from time to time in writing to the other. Notices shall have been received or deemed received by the intended recipient on the date of registered delivery, sender's telefax confirmation of transmission or upon signed receipts for hand deliveries, as the case may be.

11

Powerwave Confidential

This Agreement has been executed in two identical counterparts, whereof the parties have taken one each. This Agreement enters into force and effectiveness on the date fully signed by both parties.

Place: Santa Ana, California USA

Powerwave Technologies, Inc.

By: _____

(print name)   KEVIN T. MICHAELS

Title:   CHIEF FINANCIAL OFFICER

Date:   MAY 5, 2010

Place:  Lisboa, Portugal

Net Plan – Telecomunicações e Energia, S.A.

By: _____

(print name) Rui Pereira da Silva

Title: Administrator

Date: 30.04.2010

12

Powerwave Confidential

Exhibit 1

Product List

**Territory**

Reseller's Territory under this Agreement is defined as ___PORTUGAL___.

**Product**                    **Price**

13

C:\Users\npassos\Desktop\Reseller Agreement EMEA rev 18-03-2010-NelPlan.doc

Powerwave Confidential

**Exhibit 2**
**Powerwave Technologies, Inc.**

**Foreign Corrupt Practice Act Policy**

1.   Introduction.

It has been and continues to be company policy to conduct operations in complete compliance with the letter and spirit of the Foreign Corrupt Practices Act ("FCPA.") The FCPA consists of two general parts. First, the FCPA prohibits international bribery, by making it a crime to make any corrupt payment to a foreign official in order to obtain or retain business or an advantage. Second, the FCPA regulates accounting practices, by requiring that appropriate books and records are established and maintained, and that an adequate system of internal accounting controls is maintained. The provisions below are designed to ensure that Powerwave and its employees comply with the FCPA. Each employee must follow and observe each of the provisions below. Failure to follow and observe the provisions below may result in termination or other disciplinary action, and may result in criminal charges.

The FCPA is broadly drafted and prohibits many acts that an employee may not think of as being "against the law." The consequences of failing to comply with the FCPA can be very damaging to Powerwave and its employees. Violations of the FCPA by a Company employee can result in large fines against the Company and can subject an employee to prosecution, criminal penalties and imprisonment. As a result, if you have any questions about this policy or its application to a particular circumstance or set of facts, you should notify your supervisor and Powerwave's legal department immediately.

1.1 *Payments to Foreign Officials*

You may not, directly or indirectly, make any payment, or give anything of value, to any foreign government official, employee of a government entity or organization, or any political party or candidate.

No Powerwave employee, or employee of any Powerwave subsidiary, shall make (or countenance) any payment or anything of value to any government official, including the employee of any government owned or controlled entity or any international organizations, any political party or party official, or any candidate for public office (all referred to as "Government Officials.") The FCPA prohibits such payments to Government Officials to secure, maintain, obtain or direct business. But because any payments to any foreign officials may be subject to strict scrutiny by the U.S. Department of Justice, including any payments that are *not* for the purpose of securing, maintaining, obtaining or directing business, no employee is permitted to make any payment to any Government Official unless and until it has been approved by the legal department and the Chief Financial Officer. Payments to attorneys, consultants, advisors, suppliers and customers of the Company also violate the FCPA if made while knowing that all or a portion of such payments will be offered, given or promised to a Government Official for any of the prohibited purposes stated above.

1.2 *Cash Payments*

You may not make payments in cash to any third party. You may not write any company checks payable to "cash" or "bearer."

To avoid even the appearance of impropriety, no payments to any third party shall be made in cash other than documented petty cash disbursements. No corporate checks shall be written to "cash," "bearer," or third party designees of the party entitled to payment. No payments shall be made outside the country of residence of the recipient without the prior written approval of the Chief Financial Officer.

1.3   *Consultants and Agents*

You may not hire or engage any consultant or agent in a foreign country, or for the purpose of facilitating business in a foreign country, without the prior approval of the legal department and the Chief Financial Officer.

14

C:\Users\npassos\Desktop\Reseller Agreement EMEA rev 18-03-2010-NetPlan.doc

Powerwave Confidential

The Company can be held responsible for the actions of consultants who make payments to Government Officials that are prohibited by the FCPA. In addition to obtaining prior approval from the legal department and the Chief Financial Officer, no Powerwave employee or employee of any Powerwave subsidiary, may retain such a consultant or agent until sufficient due diligence has been performed to reasonably ensure that the consultant or agent understands and will fully abide by the FCPA and this policy. Powerwave must have a written agreement with each of its consultants and agents in foreign countries (or consultants or agents used to facilitate business in a foreign country), and the agreement must contain specific representations and warranties and specifically bind the consultant or agent to comply with the FCPA as if it directly applied to him or her.

### 1.4 *Business Entertainment, Gifts, and Travel Expenses*

You may not, directly or indirectly, pay for, or offer to pay for, entertainment, gifts or travel expenses of any Government Official, foreign or domestic.

Employees must exercise good judgment and moderation in entertaining and offering gratuities to customers. When widely accepted, customarily practiced, consistent with the customer policies, and permissible under local law, employees may entertain or make gifts of nominal value to employees of non-governmental customers or pay bona fide travel expenses directly related to the promotion or performance of Powerwave's services.

In the case of foreign or domestic Government Officials (from any level of government), no entertainment or gifts may be offered, or travel expenses paid, except that employees may entertain or make gifts of nominal value to Government Officials if they are not in the form of cash (cash payments may be considered to be "Facilitating Payments" and are discussed below), if they are permissible under local law, and if they are not made with any corrupt intent or intent to influence the recipient. Other than as provided above, if a situation arises where an employee feels that it is critical to make such a payment or offer of payment, the employee must obtain the prior approval of the legal department and the Chief Financial Officer.

### 1.5 *Facilitating Payments*

You may not, directly or indirectly, make or offer to make any "Facilitating Payments" as defined below, without the prior approval of the legal department and the Chief Financial Officer.

"Facilitating payments" are small payments to a government official necessary to expedite or secure performance of a routine governmental action, such as obtaining official documents, processing governmental papers, or providing postal or utility services. Although discouraged, "Facilitating payments" may be made in countries other than the United States where such payments are recognized and open practices, but only with the prior written approval of the legal department and Chief Financial Officer. Facilitating payments never include payments made to assist in obtaining or retaining business, and any such payments are strictly prohibited.

### 1.6 *Political Contributions*

You may not, directly or indirectly, on behalf of Powerwave or for any purpose related to Powerwave's business, make any political contributions in a foreign country without the prior written approval of the legal department and Chief Financial Officer.

In certain countries, political contributions are lawful and expected as a matter of good corporate citizenship. Under these circumstances, contributions may be appropriate if prudent in amount and otherwise consistent with the exercise of good judgment. As a matter of prudence, however, use of the funds or assets of Powerwave or any subsidiary, directly or indirectly, to make political contributions, directly or indirectly, must be approved in advance by the legal department and the Chief Financial Officer.

### 1.7 *Books and Records*

15

EXHIBIT 1

<u>Powerwave Confidential</u>

All employees must ensure, at all times, that the Powerwave books and records, and any other accounting or financial documents pertaining to Powerwave, accurately and fairly reflect all business transactions and dispositions of funds or assets.

Employees must help to ensure that corporate books and records (which include virtually all forms of business documentation) accurately and fairly reflect, in reasonable detail, all transactions and dispositions of funds or assets. No undisclosed or unrecorded fund or asset may be established or maintained for any purpose. No employee shall participate in falsifying any accounting or other business record, and all employees must respond fully and truthfully to any questions from the Company's internal or independent auditors.

### 1.8   *Compliance*

Failure to comply with any of the above provisions will be grounds for termination or other disciplinary action. Designated personnel will be asked to certify periodically that they have read the above provisions and have complied with them at all times. Any employee with questions about these provisions or information concerning possible violations should contact the legal department.

16

EXHIBIT 1

Powerwave Confidential

Exhibit 3
Powerwave Technologies, Inc.
Code of Conduct for Suppliers and Agents

17

C:\Users\npassos\Desktop\Reseller Agreement EMEA rev 18-05-2010-NetPlan.dcc

EXHIBIT 1

<u>Powerwave Confidential</u>

## 1  PURPOSE AND OBJECTIVE

The commitment to excellence is fundamental to the philosophy of Powerwave Technologies, Inc.   This commitment isn't just about building innovative technology. It's also about who we are as a company, how we manage our business internally, and how we think about and work with suppliers, agents, and our customers. Not only do we endeavor to deliver the best products and services, we strive to conduct ourselves ethically and responsibly.   Powerwave expects its suppliers, agents, sales representatives and resellers to respect fundamental human rights, to treat their workforce fairly and with respect and to follow all applicable laws, rules, regulations, and standards.  In order to make our position clear to our suppliers, agents, sales representatives and resellers (collectively, "Suppliers") and any other affected parties, we have documented this Code of Conduct.

## 2  SCOPE

Powerwave expects that its Suppliers will share and embrace the letter and spirit of our commitment to integrity. We understand that Suppliers are independent entities; however, the business practices and actions of a Supplier may impact and/or reflect upon Powerwave.  Because of this, Powerwave expects all Suppliers and their employees, and authorized subcontractors to adhere to the Powerwave Code of Conduct for Suppliers and Agents while they are conducting business (directly or indirectly) with and/or on behalf of Powerwave.  All Powerwave Suppliers should educate their employees and authorized subcontractors to ensure they understand and comply with the Powerwave Code of Conduct for Suppliers and Agents.

## 3  GENERAL CODE OF CONDUCT FOR SUPPLIERS AND AGENTS

### 3.1  OBLIGATION TO INFORM

This document shall be displayed in such a way that anyone whose work contributes to our products and services is aware of the principles of this Code of Conduct.  It is the responsibility of Suppliers to ensure that their employees and authorized subcontractors are informed about and comply with this code.  Powerwave is prepared to clarify the content and associated requirements of this document upon request.

### 3.2  LEGAL REQUIREMENTS

All Powerwave Suppliers must, in all activities, obey national and regional statutory requirements in the countries in which they are operating.  If any of the requirements stated in this document violate the law in any country or territory, the local law will always take precedence.  In such case, a Supplier must immediately inform Powerwave.  It is, however, important to understand that Powerwave requirements are not limited to the requirements of national laws.

### 3.3  EMPLOYMENT PRACTICES

### 3.3.1  BASIC HUMAN RIGHTS

Anyone who works directly or indirectly for Powerwave is entitled to his or her basic human rights.

Powerwave does not accept the use of bonded workers, forced labor, prisoners or illegal workers.  If foreign workers are employed on a contract basis, they should never be required to remain in employment against their will.

Powerwave does not accept that workers are subject to corporal punishment, mental or physical disciplinary action, or harassment.  Dismissal of female workers due to pregnancy is not acceptable. Powerwave recommends that all workers are free to peacefully and lawfully join associations of their own choosing and have the right to bargain collectively.

No worker should be discriminated against because of age, race, gender, religion, sexual orientation, marital or maternity status, political opinion or ethnic background.

### 3.3.2  WAGES AND WORKING HOURS

All workers should know the basic terms and conditions of their employment.

18

C:\Users\npassas\Desktop\Reseller Agreement EMEA rev 18-03-2010-NclPlan.doc

Powerwave Confidential

Legislated minimum wages should be a minimum, rather than a recommended level. Wages should be paid regularly and on time. A normal workweek must not exceed the legal hourly limit, and all overtime work should be properly compensated.

Workers should be granted stipulated annual leave, sick leave and maternity/paternity leave without any form of repercussion.

### 3.3.3 SAFETY

#### 3.3.3.1 BUILDING AND FIRE SAFETY

Powerwave requires that worker safety is always a priority concern. Buildings must have clearly marked exits and emergency doors should be visible. All workers shall be informed of the safety arrangements. An evacuation plan should be displayed on every floor of a building and the fire alarm should be tested regularly. Regular evacuation drills are recommended.

#### 3.3.3.2   FIRST AID

First aid equipment must be available in a building, and at least one person in each department should be trained in a basic first aid. It is recommended that a doctor or nurse is available on short notice in the event of an accident on the premises. The employer should cover the costs (not covered by social security) of medical care for injuries incurred on their premises.

### 3.3.4   WORKPLACE CONDITIONS

It is important for all workers' well being that chemicals are handled in a safe and correct way. All chemicals shall be marked and labeled in the correct way. Training and instructions for handling chemicals must be performed, and workers must have adequate body protection.

The temperature and noise level of the work environment should be tolerable. Ventilation should be adequate. Lighting should be sufficient for the work performed.

The workplace should have an adequate number of clean sanitary facilities, which are preferably separated for men and women. Workers should have access to these facilities without unreasonable restrictions.

### 3.3.5   HOUSING CONDITIONS

Where staff's housing facilities are provided, we require that workers' safety is a priority concern. The recommended safety and workplace concerns described above are applicable to these housing facilities. All workers should be provided with their own individual bed, and the living space per worker must meet the minimum legal requirement.

Dormitories, toilets and showers should be separated for men and women. There should be no restriction on workers' rights to leave the dormitory during off-hours.

Fire alarms, fire extinguishers, unobstructed emergency exits, and evacuation drills are of particular importance in dormitory areas.

### 3.3.6   CHILD LABOR

#### 3.3.6.1      DEFINITION OF CHILD

A child in this context is a person younger than 15 years of age or 14 years of age in accordance with the exceptions for developing countries as set out in Article 2.4 in the ILO Convention No. 138 on Minimum Age.

#### 3.3.6.2      CHILD LABOR CODE

Powerwave bases its child labor code on the UN Convention on the Rights of the Child, Article 32.1.

19

C:\Users\npassos\Desktop\Reseller Agreement EMEA rev 18-03-2010-NetPlan.doc

EXHIBIT 1

Powerwave Confidential

Powerwave "recognize[s] the right of the child to be protected from economic exploitation and from performing any work that is likely to be hazardous or to interfere with the child's education or to be harmful to the child's health or physical, mental, spiritual, moral or social development."

### 3.3.6.3   IMPLEMENTATION OF OUR CHILD LABOR CODE

Powerwave does not accept child labor. Powerwave acknowledges that it exists and realizes that it cannot be eradicated by simply setting up rules or inspections, but by actively contributing to the improvement of children's social situations. Thus, Powerwave endeavors to improve the situation for any child affected by our ban on child labor. Powerwave will request that the employer acts in accordance with the overall best interests of the child. A satisfactory solution is whatever improves an individual child's overall situation. The employer should cover the costs for this.

### 3.3.6.4       ENFORCEMENT OF OUR CHILD LABOR CODE

Powerwave will discontinue cooperation with any party that persists in non-compliance with our child labor code.

### 3.3.6.5       APPRENTICESHIP PROGRAMS

Powerwave accepts apprenticeship programs for children between the ages of 12 and 15 years in countries where the law permits such programs, but only under certain conditions. The total numbers of hours spent on light work and school together should never exceed seven hours per day. The employer must be able to prove that work is not interfering with the child's education, that apprenticeship is limited to a few hours per day, that the work is light and clearly aimed at training, and that the child is properly compensated. Powerwave will not accept apprenticeship programs that do not comply with these terms.

### 3.3.6.6       SPECIAL RECOMMENDATIONS

Powerwave acknowledges that according to Article 1 of the UN Convention on the Rights of the Child, a person is a child until the age of 18. Powerwave, therefore, recommends that children in the age group 15-18 years be treated accordingly, i.e., by limiting the total number of working hours per day and implementing appropriate rules for overtime. Children in this age group are not allowed to perform hazardous work.

### 3.3.7   DRUG-FREE WORKPLACE

We prohibit the use, possession, distribution, and/or sale of illegal drugs by Suppliers while on Powerwave owned or leased property or while conducting business with and/or on behalf of Powerwave.

### 3.4       LEGAL AND REGULATORY COMPLIANCE PRACTICES

### 3.4.1   ENVIRONMENTAL ISSUES

The environment is of increasing concern globally, and Powerwave expects its Suppliers to comply with applicable environmental laws and regulations.

### 3.4.2   ANTI-CORRUPTION LAWS

All Suppliers must comply with the anti-corruption laws of the countries in which they do business, including the United States Foreign Corrupt Practices Act, and not make any direct or indirect payments or promises of payments to foreign government officials for the purpose of inducing the individual to misuse his or her position to obtain or retain business.

20

C:\Users\npasscs\Desktop\Reseller Agreement EMEA rev 18-03-2010-NoIPlan.doc

Powerwave Confidential

### 3.4.3   EXPORT REQUIREMENTS

All Suppliers must comply with all applicable trade control and applicable laws as well as all export, re-export and import requirements. Several United States laws restrict trade with certain countries and with persons and entities from those countries. Powerwave operations worldwide must comply with United States export restrictions. Suppliers who are uncertain of the legal trade status of any country or technology for export should contact the appropriate Powerwave representative.

### 3.4.4   ANTITRUST/FAIR COMPETITION

All Suppliers must conduct business in full compliance with antitrust and fair competition laws that govern the jurisdictions in which they operate.

### 3.4.5   ANTI-BOYCOTT

Suppliers must not cooperate with foreign boycotts that are not approved by the United States government. Any request for information or action that seems to be related to a foreign boycott, or other illegal boycott, should be immediately forwarded to the appropriate Powerwave representative.

### 3.5   BUSINESS PRACTICES

### 3.5.1   ACCURATE ACCOUNTS AND RECORD KEEPING

Suppliers should honestly and accurately record and report all business information and comply with all applicable laws regarding their completion and accuracy. Business records should be created, retained and disposed of in full compliance with all applicable legal and regulatory requirements.

### 3.5.2   CONFLICTS OF INTEREST

Suppliers must act in the best interests of Powerwave, its customers and other business partners, and avoid improper influence, or even the reasonable appearance of improper influence. Suppliers are naturally involved in business relationships with companies in addition to Powerwave. These relationships must not reasonably appear to compromise your responsibilities or ability to make sound, impartial, and objective business decisions in connection with your engagement with Powerwave. Any situation that creates or could reasonably appear to create a conflict of interest should be avoided and disclosed to the appropriate Powerwave representative.

### 3.6   MONITORING AND ENFORCEMENT

### 3.6.1   THE PRINCIPLE OF TRUST AND COOPERATION

Powerwave expects all of its Suppliers and their authorized subcontractors to respect this Code of Conduct and to actively do their utmost to achieve its standards. Powerwave will cooperate with our Suppliers to achieve adequate solutions. Powerwave is also prepared to take cultural differences and other relevant factors into consideration, but Powerwave will not compromise on the fundamental requirements described in this document.

### 3.6.2   MONITORING

All Suppliers are obliged to keep Powerwave informed about where each order is produced. Powerwave reserves the right to make unannounced visits to sites where people work directly or indirectly for Powerwave. Powerwave also reserves the right to let an independent party conduct an inspection.

21

C:\Users\npassos\Desktop\Reseller Agreement EMEA rev 18-03-2010-NetPlan.doc

EXHIBIT 1

Doc. N° 2

## Powerwave technologies

# INVOICE

| INVOICE NO.206929 | | DATE 30-NOV-2011 | Page 1 of 1 |
|---|---|---|---|
| SALES ORDER NO 21021464 | | | |
| PO_NUMBER_2912011 | | RELEASE NO. | |

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

Bill To :
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBOA 1600-477
Portugal

Ship To:
TEGAEL SA
ZONA INDUSTRIAL DA BARGA
LOTE 22-APARTADO 85
CORUCHE 2104-909
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 11700 | Net 90 Days Inet | 28-FEB-12 | DDP | NL817184234B01 | PT505460749 | MWW-GROUND-STANDARD | Prepay | EUR |
| ORDERED BY | | | CUSTOMER REFERENCE | | ADDITIONAL INFORMATION | | SITE CODE | |
| Nuno Passos, + 351 217 521 250 | | | 2912011 | | Intra Community Supply | | | |

| Line | PO Line | Item | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | TMN | P65-16-XDHV2-N TB565 2.6m ALX-C760-9601710-21707280/0-2650MHz Shipment.62 Delivery # 18/31293 WaybIll# 6046711510O4165423 | | 60 Each | | 60 | 1,193.18 | 71,590.80 |
| | | | Comments: | | | | | | |
| | | | PALLET SIZES | | | | | | |
| | | | No. of Cartons    5 | | | | | | |
| | | | No. of Pallets    5 | | | | | | |
| | | | Pallet Dimensions:285X100X100-5 | | | | | | |
| | | | Gross Weight:2316 KG | | | | | | |

| | | |
|---|---|---|
| Item Total | | 71,590.80 |
| Freight | | .00 |
| Vat | | .00 |
| Total | EUR | 71,590.80 |

Please remit all Germon Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No: 499017264   Bank Code: BLZ) 50010100
Bank: ING Bank Deutschland AG
Hahnstrasse 49., 60528 Frankfurt am Main, Germany

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN: DE27500210000499017264  SWIFT: INGBDEFF
Bank: ING Bank Deutschland AG
Hahnstrasse 49., 60528 Frankfurt am Main, Germany

For inquiries regarding this invoice please call Tel +44(0)1540 622 00
Ernst & Young VAT Rep BV., A.Vicoldtstraat 150, Amsterdam, acts as our general VAT representative under VAT ID number 0030.25.253.B.01

TM D.

Doc. N°3

**Powerwave**
technologies

**INVOICE**

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO. 20771552 | DATE 27-DEC-2011 | Page 1 of 1 |
|---|---|---|
| SALES ORDER NO 21021464 | | |
| PO NUMBER. 2812011 | RELEASE NO. | |

BILL TO:
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-477
Portugal

Ship To:
TEGHEL SA
ZONA INDUSTRIAL DA BARCA
LOTE 23-APARTADO 95
CORUCHE 2104-909
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1100 | 90 Days Net | 26-MAR-12 | CIP-CS | NL817160024B01 | PT505407140 | CEVA-OCEAN-OCEAN | Prepay | EUR |
| | ORDERED BY | | CUSTOMER REFERENCE | | ADDITIONAL INFORMATION | | SITE CODE | |
| Nuno Raposo, + 351 217 521 250 | | | 2812011 | | Intra Community Supply | | | |

| Line | PO Line | Item | | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | TMN | P65-16-XODHYC-N TB BSS 2.6m ALXT-790-860/1710-2170/2500-2690MHz Shipment #4  Delivery # 1856050 Waybill# SHARTIM057146 | | | 9 | Each | 9 | 1,193.18 | 10,738.62 |

Comments:
PALLET SIZES
No. of Cartons : 3
No. of Pallets : 3
Pallet Dimensions:285X100X161-2,285X49X28.5-1
Gross Weight 349.5 KG

Please remit Euro Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
Bank: DE2751001099510370844  SWIFT: INGDDEFF
Bank: ING Bank Deutschland AG
Hohenstraße 40,  60329 Frankfurt am Main, Germany

Please remit local (Germany Domestic EUR) Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No: 0911510844  Bank Code: (BLZ) 50010800
Bank: ING Bank Deutschland AG
Hohenstraße 40,  60329 Frankfurt am Main, Germany

| Item Total | 10,738.62 |
|---|---|
| Freight | .00 |
| Vat | .00 |
| Total | EUR | 10,738.62 |

For Inquiries regarding this Invoice please call Tel +1(0)540 822 00
Email & Young VAT Rep SV, A Vivaldistraat 150, Amsterdam, acts as our general VAT representative under VAT ID number 8303.25.253.B.01

TOT

Doc. N°4

# Powerwave
technologies

INVOICE

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO. | 2071503 | | DATE | 27-DEC-2011 | | Page 1 of 1 |
| SALES ORDER NO. | 21021688 | | | | | |
| PO NUMBER | 2592011 | | RELEASE NO. | | | |

Bill To :
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERNANI NEVES, 22-2A
LISBON 1600-177
Portugal

Ship To:
TEGNES, SA
ZONA INDUSTRIAL DA BARCA
LOTE 22-APARTADO 85
CORUCHE 2104-909
Portugal

| CUSTOMER NO. | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE REF | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
| 1100 | 90 Day Net Day | 26-MAR-12 | CIP-CA | INIL6779362-001 | PT505407740 | GEVA-CEGA-OCEAN | Prepay | EUR |
| | ORDERED BY | | 2592011 | CUSTOMER REFERENCE | ADDITIONAL INFORMATION | | SITE CODE | |
| Nuno Passos, + 351 217 621 260 | | | | | Intra Community Supply | | | |

| Line | PO Line | Item | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
| 1 | | P65-18-XONV02-A1 TB855 2.6m ALUT700-960H710-2170/2500-2690MHz | 8 | Each | 8 | 1,049.00 | 8,392.00 |
| | | Shipment #2  Delivery # 1893049 YhjAdt# SHARTM067145 | | | | | |
| | | Comments: | | | | | |
| | | PALLET SIZES | | | | | |
| | | No. of Cartons  :1 | | | | | |
| | | No. of Pallets  :1 | | | | | |
| | | Pallet Dimentions:265X100X161-1 | | | | | |
| | | Gross Weight:278 KG | | | | | |

| | | Item Total | | 8,392.00 |
| | | Freight | | .00 |
| | | Vat | | .00 |
| | | Total | EUR | 8,392.00 |

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN: DE97500010010010915544  SWIFT: INGDDEFF
Bank: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

Please remit Non Germany Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No: 4910175544  Bank Code (BLZ) 50010100
Bank: ING Bank Deutschland AG
Hahnstrasse 49,  60528 Frankfurt am Main, Germany

Please remit/ Mail/ Courier to:
Please remit regarding this Invoice please call Tel +44(0)5040 82700
Ernst & Young VAT Rep BV, A.Vonkistraat 150, Amsterdam, stds as our general VAT representative under VAT ID number 0030.25.253.B.01

Tcy

EXHIBIT 1

Doc N's

**Powerwave** technologies

**INVOICE**

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO. | 2071554 | DATE 27-DEC-2011 | Page 1 of 1 |
|---|---|---|---|
| SALES ORDER NO | 21021680 | RELEASE NO. | |
| PO NUMBER: 28932011 | | | |

Bill To:
NETPLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-477
Portugal

Ship To:
TEGAEL SA
ZONA INDUSTRIAL DA BARGA
LOTE 22-APARTADO 86
CORUCHE 2104-909
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|
| 1100 | 90 Days Net | 26-MAR-12 | CIP-CS | IN.07160424B01 | PT502540740 | Prepay | EUR |
| | ORDERED BY | | | CUSTOMER REFERENCE | | SITE CODE | |
| Nuno Passos + 351 217 921 350 | | | 28932011 | | | | |

| Line | PO Line | Item | | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | P85-18-XGHV2xN TBB92 2.6m ALXT-780-960/17t/O-2170/2250-2690MHz | | | | 12 | Each | 12 | 1,049.00 | 12,588.00 |
| | | Shipment #3 Delivery # 1696878 Waybills SHARTM00714S | | | | | | | | |

Comments:
PALLET SIZES
No. of Cartons   2
No. of Pallets   2
Pallet Dimensions: 235DX100X161-2
Gross Weight: 162 KG

| | Item Total | 12,588.00 |
|---|---|---|
| | Freight | .00 |
| | Vat | .00 |
| | **Total** | EUR | 12,588.00 |

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN: DE37500201001074254 SWIFT: HO80DEFF
Bank: ING Bank Deutschland AG
Holzstrasse 49, 60329 Frankfurt am Main, Germany

Please remit local German Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No: 01074254   Bank Code (BLZ) 50020100
Bank: ING Bank Deutschland AG
Holzstrasse 49, 60329 Frankfurt am Main, Germany

For inquires regarding this invoice please call Tel +49(0)540 823 09
Ernst & Young VAT Rep BV, A.Vredestraat 100, Amsterdam, and do our general VAT representathe under VAT ID number 000525.363.B.01

TC7

EXHIBIT 1

DOC.N°6

**Powerwave** technologies

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

# INVOICE

| INVOICE NO. 2271766 | DATE 27-DEC-2011 | Page 1 of 1 |
|---|---|---|
| SALES ORDER NO. 210021668 | RELEASE NO. | |
| PO NUMBER. 2892/2011 | | |

Bill To:
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERVANO NEVES, 2/2-A
LISBON 1600-177
Portugal

Ship To:
TEGAEL SA
ZONA INDUSTRIAL DA BAIRCA
LOTE 22-APARTADO R5
COTRUCHE 2104-009
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1100 | 090 DAYS NET | 26-MAR-12 | CIP-CS | INLXT136/244B1 | PT505407740 | LSV/OCEAN-OCEAN | Prepay | EUR |

| CUSTOMER REFERENCE | ADDITIONAL INFORMATION | SITE CODE |
|---|---|---|
| 2892/2011 | Intra Community Supply | |

| Line | PO Line | Item | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|
| 1 | | P65-18-XCHW2-N TB865 2.6m ALXT-700-860/1710-2170/2500-2690MHz Shipment #4  Delivery # 1985556 Waybill# SHARTIM087145 | 12 Each | 12 | 1,049.00 | 12,588.00 |

Comments:
PALLET SIZES
No. of Cartons : 2
No. of Pallets : 2
Pallet Dimensions:285XX100X161+2
Gross Weight:453 KG

Nuno Faceca, + 351 217 521 250
ORDERED BY

| | Item Total | 12,588.00 |
|---|---|---|
| | Freight | .00 |
| | Vat | .00 |
| | Total  EUR | 12,588.00 |

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN: DE57200700101310544  SWIFT: NGDDDEFF
Bank: ING Bank Deutschland AG
Niederlasse 49, 60528 Frankfurt am Main, Germany

Please remit Intra Germen Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No: 4910115544  Bank Code: (BLZ) 50021000
Bank: ING Bank Deutschland AG
Niederlasse 49, 60528 Frankfurt am Main, Germany

For invoices regarding this invoice please call Tel +49(0)840 922 00
Ernst & Young VAT Rep.s BV, A.Venijnistraat 150, Amsterdam, acts as our general VAT representative under VAT ID number 0003.92.393.B.01

EXHIBIT 1

Doc. N° 4

# Powerwave technologies

## INVOICE

Page 1 of 1

| INVOICE NO.2070724 | DATE 13-DEC-2011 |
| SALES ORDER NO 21021688 | |
| PO NUMBER. 289/2011 | |
| RELEASE NO. | |

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

**Bill To:**
NET PLAN TELECOMUNICAÇÕES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-477
Portugal

**Ship To:**
TESAEL SA
ZONA INDUSTRIAL DA BARCA
LOTE 22-APARTADO 85
CORUCHE 2104-909
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| Neto Passos, + 351 217 521 250 | 120-APR-12 | | DIP-CS | RU817180C24E01 | PT505407140 | CRVA-OCEAN-OCEAN | Prepay | EUR |
| ORDERED BY | | | CUSTOMER REFERENCE | | ADDITIONAL INFORMATION | | SITE CODE | |
| | | | 289/2011 | | Intra Community Supply | | | |

| Line | PO Line | Item | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|
| 1 | | P4S-18-XDHV2-N TB96S 2.6m ALXT-290-86DP1T1G-2T70/2500-2690MHz Shipment #1 Delivery # 1893586 Way/#88 SHARTXM656200 | 20 | Each | 20 | 1,049.00 | 20,980.00 |

Comments:
PALLET SIZES
No. of Cartons   2
No. of Pallets   2
Pallet Dimensions 250X100X161-2
Gross Weight763 KG

| Item Total | 20,980.00 |
| Freight | .00 |
| Vat | .00 |
| Total | EUR   20,980.00 |

Please remit Local German Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No: 6010175644 Bank Code: (BLZ) 50021000
Bank: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No: 6010175644  SWIFT: INGBDEFF
Bank: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

For inquiries regarding this invoice please call Tel +44(0)540 822.00
Emit & Young VAT Rep SV, ALVróbischeet 100, Amsterdam, and in our general VAT representative under VAT ID number 003235.263.8.01

TCY

99

EXHIBIT 1

DOC. N° 8

**Powerwave** technologies

**INVOICE**

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO. 2070931 | DATE 14-DEC-2011 | Page 1 of 2 |
|---|---|---|
| SALES ORDER NO 21021883 | | |
| PO NUMBER, 311/2011 | RELEASE NO. | |

Bill To :
NET PLAN TELECOMUNICACOES LDA
RUA HERNANI NEVES, 22-2A
CENTRO EMPRESARIAL DE TELHEIRA
LISBOA 1600-477
Portugal

Ship To:
DHL East Supply Chain
Amrew Park
Corp 3 - Francao 5
Quinta de Verdelha
ALVERCA 2615-201
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | FOB PAGS | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|---|
| 1100 | 90 Days Net | 13-MAR-12 | DDP-CS | | RLDT18H-24881 | PT505407140 | WWW-GROUND-STANDARD | Prepay | EUR |

Ship Pappal, + 351 217 521 290
ORDERED BY

CUSTOMER REFERENCE
311/2011

Intra Community Supply

ADDITIONAL INFORMATION

SITE CODE

| Line | PO Line | Item | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|
| 1 | | LGP21833 TWD 500-9001800-2100 SH | 51 | Each | 51 | 191.00 | 9,741.00 |

LPWE0914112011-5912
Sold #
LGP21903S5SB911480S143, LGP21903S5SB911480S148,
LGP21903S5SB911480S148, LGP21903S5SB911480S157,
LGP21803S5SB911480S158, LGP21903S5SB911480S182,
LGP21903S5SB911480S182, LGP21903S5SB911480S187,
LGP21903S5SB911480S171, LGP21903S5SB911480S174,
LGP21903S5SB911480S207, LGP21903S5SB911480S221,
LGP21903S5SB911480S207, LGP21903S5SB911480S240,
LGP21903S5SB911480S241, LGP21903S5SB911480S243,
LGP21903S5SB911480S244, LGP21903S5SB911480S248,
LGP21903S5SB911480S276, LGP21903S5SB911480S282,
LGP21903S5SB911480S283, LGP21903S5SB911480S287,
LGP21903S5SB911480S304, LGP21903S5SB911480S305,
LGP21903S5SB911480S309, LGP21903S5SB911480S316,
LGP21903S5SB911480S320, LGP21903S5SB911480S320,
LGP21903S5SB911480S322, LGP21903S5SB911480S326,
LGP21903S5SB911480S327, LGP21903S5SB911480S333,
LGP21903S5SB911480S334, LGP21903S5SB911480S335,
LGP21903S5SB911480S337, LGP21903S5SB911480S351,
LGP21903S5SB911480S357, LGP21903S5SB911480S358,
LGP21903S5SB911480S353, LGP21903S5SB911480S353,
LGP21903S5SB911480S491, LGP21903S5SB911480S500,
LGP21903S5SB911480S507, LGP21903S5SB911480S517,
LGP21903S5SB911480S521, LGP21903S5SB911480S507,
LGP21903S5SB911480S533, LGP21903S5SB911480S534,
LGP21903S5SB911480S538
Shipment #1  Delivery # 1894135 Waybill# 00871150010004512533

Comments:
PALLET SIZES  :1
No. of Cartons  :1
No. of Pallets  :1
Pallet Deliverdocct11000DX160-1
Gross Weight22.5 KG

Please send local US/UK Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.

Please send local German Demstab EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.

| Item Total | | 9,741.00 |
|---|---|---|

EXHIBIT 1

**Powerwave** technologies

**INVOICE**

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO. 2070831 | | DATE 14-DEC-2011 | | | Page 2 of 2 |
| SALES ORDER NO. 21021883 | | RELEASE NO. | | | |
| PO NUMBER. 3112011 | | | | | |

Bill To :
NET PLAN TELECOMUNICACOES LDA
RUA HERMANO NEVES, 22/2A
CENTRO EMPRESARIAL DE TELHEIRA
LISBOA 1600-477
Portugal

Ship To:
DHL Excel Supply Chain
Alverca Park
Cepõ B - Fracçao 5
Quinta do Vodelha
ALVERCA 2619-501
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | | SHIP METHOD | FREIGHT TERMS | CURRENCY |
| 1100 | 90 Days Net | 13-MAR-12 | DDP-CS | NL817160424B01 | PT505407140 | | IMWW--GROUND-STANDARD | Prepay | EUR |
| ORDERED BY | | | CUSTOMER REFERENCE | | ADDITIONAL INFORMATION | | | SITE CODE | |
| Nuno Passos, + 351 217 521 250 | | | 3112011 | | Intra Community Supply | | | | |

| Line | PO Line | Item | | | | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
| | | | | | | | Freight | | | | | .00 |
| | | | | | | | Vat | | | | | .00 |
| | | | | | | | Total | | | | EUR | 9,741.00 |

Account No: 491012094  Bank Code (BLZ) 50010100
Bank: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

IBAN DE37500210000491012094  SWIFT: INGBDEFF
Bank: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

For inquiries regarding this invoice please call Tel +49(0)542 822 00
Ernst & Young VAT Rep BV, A.Winckstraat 16t, Amsterdam, acts as our general VAT representative under VAT number 0030.25.263.B.01

EXHIBIT 1

101

Doc. Nº 9

**Powerwave®** technologies

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana,CA 92705
United States
www.powerwave.com

# INVOICE

| INVOICE NO. | Z071907 | | DATE 12-JAN-2012 | | Page 1 of 1 |
|---|---|---|---|---|---|
| SALES ORDER NO. 21021688 | | | RELEASE NO. | | |
| PO NUMBER: 28/02011 | | | | | |

Bill To :
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-477
Portugal

Ship To:
TESAEL SA
ZONA INDUSTRIAL DA BARCA
LOTE 22-APARTADO 65
CORUCHE 2101-909
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | | | |
|---|---|---|---|---|---|---|---|---|
| 1100 | 90 Days Net | 11-APR-12 | DDP | NL817180424601 | PT503407140 | | | |
| | ORDERED BY | | | CUSTOMER REFERENCE | ADDITIONAL INFORMATION | | | |
| Nuno Pissaro, + 351 217 521 050 | | | | 28/02011 | Intra Community Supply | | | |

| SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|
| MW4L-GROUND-STANDARD | Prepay | EUR |
| | SITE CODE | |

| Line | PO Line | Item | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|
| 1 | | 0Z12-A0 RET PARA ANTENA DE BANDA SNPLES 10-30VDC,AISG v2,8Z12-A0<br>Shipment #1 Delivery # 18264114 Waybill 004671195100055372I0 | 175 | Each | 175 | 75.00 | 13,125.00 |
| | | Comments:<br>PALLET SIZES<br>No. of Cartons : 2<br>No. of Pallets : 2<br>Pallet Dimensions:125X87X110-2<br>Gross Weight:0 KG | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Please remit EUR Wire Transfer Payments to: | Please remit local German Domestic EUR Payments to: | | Item Total | EUR | 13,125.00 |
| Beneficiary: Powerwave Technologies, Inc. | Beneficiary: Powerwave Technologies, Inc. | | | | |
| IBAN: DE97100700000918017544  SWIFT: DHGBDEFF | Account No: 0918017544  Bank Code: (BLZ) 01021000 | | Freight | | .00 |
| Bank: UBS Bank Deutschland AG | Bank: UBS Bank Deutschland AG | | | | |
| Häberstrasse 49,  60320 Frankfurt am Main, Germany | Häberstrasse 49,  60320 Frankfurt am Main, Germany | | Vat | | .00 |
| | | | | | |
| For inquiries regarding this invoice please call Tel +44(0)540 622 00 | | | Total | EUR | 13,125.00 |
| Ernst & Young VAT Reg BV, Amsterdam, acts as our general VAT representative under VAT ID number 0009.23.283.B.01 | | | | | |

TCT

EXHIBIT 1

Doc N° 10

## Powerwave° technologies

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

**INVOICE**

| | | |
|---|---|---|
| INVOICE NO.2072145 | DATE 16-JAN-2012 | Page 1 of 1 |
| SALES ORDER NO 20121666 | | |
| PO NUMBER, 29092011 | RELEASE NO | |

Bill To:-
NEXTPLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-477
Portugal

Ship To:-
TEGAEL, SA.
ZONA INDUSTRIAL DA BARCA
LOTE 22-APARTADO 58
CORUCHE 2104-909
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1100 | 90 Days Net | 15-APR-12 | CIP-CIS | NL817160424B01 | PT505407140 | CEVA-OCEAN-OCEAN | Prepay | EUR |
| | ORDERED BY | | CUSTOMER REFERENCE | | ADDITIONAL INFORMATION | | SITE CODE | |
| Nuno Raposo, + 351 217 921 350 | | 29092011 | | | Intra Community Supply | | | |

| Line | PO Line | Item | | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | P65-16-XDHV/2-N TB865 2.6m ALXT7390-5160/1710-2170/2500-2600MHz Shipment #5 Delivery # 1690097 Weight/ SHARTN/050133 | | | | 6 | Each | 6 | 1,049.00 | 6,294.00 |

Comments:
PALLET SIZES
No. of Cartons    2
No. of Pallets    2
Pallet Dimension 2x 285X100X16\1x285X100X72.5+1
Gross Weight 244 KG

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc
IBAN: DC2750010094901072544 SWIFT: INGBDEFF
Banc: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

| | Item Total | | 6,294.00 |
|---|---|---|---|
| | Freight | | .00 |
| | Vat | | .00 |
| | Total | EUR | 6,294.00 |

Please remit local German Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc
Account No: 49101072544   Bank Code: (BLZ) 50010200
Banc: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

For inquiries regarding this invoice please call Tel +44(0)845 822 00
Email & Young VAT Rep BV, A.Vos(Invest 150, Amsterdam, and is our general VAT reporadative under VAT ID number 0006.25.263.B.01

503

DOC. Nº 11

# Powerwave
technologies

## INVOICE

| INVOICE NO. 2072146 | DATE 16-JAN-2012 | Page 1 of 1 |
|---|---|---|
| SALES ORDER NO 21/021688 | | |
| P.O. NUMBER. 29020511 | RELEASE NO. | |

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

Bill To :
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22/2A
LISBON 1600-577
Portugal

Ship To:
TEOGEL, SA.
TEOGEL, SA.
ZONA INDUSTRIAL DA BARCA
LOTE 22 APARTADO 85
CORNICHE 2104-969
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1100 | 90 Days Net | 15-APR-12 | CIP-CIS | | PT505407143 | CEVA-OCEAN-OCEAN | Prepay | EUR |
| | ORDERED BY | | CUSTOMER REFERENCE | | ADDITIONAL INFORMATION | | | SITE CODE |
| Net Plan France, + 351 217 521 250 | | | 2380/2011 | | Intra Community Supply | | | |

| Line | PO Line | Item | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | P65-19-XCDWV2-N TB965 2.6m ALX/T-740-960/1710-2170/2500-2690MHz | | | 17 | Each | 17 | 1,049.00 | 17,833.00 |
| | | Shipment #0  Delivery # 1629/723 Waybill# SVART.M089139 | | | | | | | |

Comments:
PALLET SIZES
No. of Cartons    :2
No. of Pallets    :2
Pallet Dimensions 255X100X161-2
Gross Weight:560.6 KG

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN:DE37500200050101516044  SWIFT:NGBDBFF
Bank: NIB Bank Deutschland AG
Hahnstrasse 49,  60528 Frankfurt am Main, Germany

Please remit local German Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account Nr. 0101516044  Bank Code: (BLZ) 50020100
Bank: NIB Bank Deutschland AG
Hahnstrasse 49,  60528 Frankfurt am Main, Germany

| | Item Total | 17,833.00 |
|---|---|---|
| | Freight | .00 |
| | Vat | .00 |
| | Total     EUR | 17,833.00 |

For Inquiries regarding this Invoice please call Tel +44(0)540 822 00
Ernst & Young VAT Rep BV, A.Vredshtraat 159, Amsterdam, acts as our general VAT representative under VAT ID number 6000.35.263.B.01

TOT

EXHIBIT 1

Doc. N° 12

# INVOICE

**Powerwave** technologies

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO.2073775 | | DATE 15-FEB-2012 | | Page 1 of 1 |
|---|---|---|---|---|
| SALES ORDER NO 21022528 | | | | |
| PO NUMBER. 15/2012 | | RELEASE NO. | | |

BILL To :
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-477
Portugal

Ship To:
DHL EXEL SUPPLY CHAIN
ALVERCA PARK - CORPO S
FRACCAO 3 QUINTA DA VERDELHA
ALVERCA 2615-501
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1160 | 60 Days Net | 15-MAY-12 | DDP | NL817165424B01 | PT503407140 | MWW -GROUND-STANDARD | Prepay | EUR |
| | ORDERED BY | | | CUSTOMER REFERENCE | ADDITIONAL INFORMATION | | | SITE CODE |
| Nuno Passos + 351 217 521 250 | | | 15/2012 | | Intra Community Supply | | | |

| Line | PO Line | Item | | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | PBS-15-XDHW2-N TBRBS 1,4m ALXT-799-9500T710-21T02500-2590MHz | | | | 5 | Each | 5 | 792.00 | 3,960.00 |
| | | LPMBS815022310-7323 | | | | | | | | |
| | | Serial # | | | | | | | | |
| | | PBS-15-XDHW2-N SA:SB911S4969H4, PBS-15-XDHW2N4SA:SB9113714819, | | | | | | | | |
| | | PBS-15-XDHW2N4SA:SB9113714820, PBS-15-XDHW2N4SA:SB9113714825, | | | | | | | | |
| | | PBS-15-XDHW2-N4SA:SB9113714826 | | | | | | | | |
| | | Shipment 01  Delivery # 1907469 Waybill# 00487115510005865894 | | | | | | | | |
| | | | | | | | | | | |
| | | Comments: | | | | | | | | |
| | | PALLET SIZES: | | | | | | | | |
| | | No. of Cartons  :1 | | | | | | | | |
| | | No. of Pallets   :1 | | | | | | | | |
| | | Pallet Dimensions:150X100X100-1 | | | | | | | | |
| | | Gross Weight:140 KG | | | | | | | | |

| | | |
|---|---|---|
| Item Total | | 3,960.00 |
| Freight | | .00 |
| Vat | | .00 |
| Total | EUR | 3,960.00 |

Please remit legal German Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No 4910175954  Blatt-Code (BLZ) 50220100
Bank: ING Bank Deutschland AG
Hahnstrasse 40, 60255 Frankfurt am Main, Germany

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN: DE22 5022 0100 4910 1759 54  SWIFT: INGDDEFF
Bank: ING Bank Deutschland AG
Hahnstrasse 40, 60255 Frankfurt am Main, Germany

For Invoices regarding this Invoice please call Tel +49(0)540 822.00
Brint & Yoorij VAT Rep BV, Alvgodistraat 150, Amsterdam, acts as our general VAT representative under VAT ID number 0009.25.033.B.01

EXHIBIT 1

Doc. N° 13

# INVOICE

**Powerwave** technologies

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO.2073666 | DATE 21-FEB-2012 | Page 1 of 1 |
|---|---|---|
| SALES ORDER NO 21022456 | | |
| PO NUMBER: 13/2012 | RELEASE NO. | |

Bill To:
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-477
Portugal

Ship To:
TEXGAS, SA
ZONA INDUSTRIAL DA DARGA
LOTE 22-APARTADO 85
OCRUCHE 2104-909
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1100 | ISO Days Net | 21-MAY-12 | CIP-CG | IN.BYTESXN281 | PT505407140 | CEVA-OCEAN-OCEAN | Prepay | EUR |

| ORDERED BY | CUSTOMER REFERENCE | ADDITIONAL INFORMATION | SITE CODE |
|---|---|---|---|
| Nuno Passos+ 351217621250 | 13/2012 | Intra Community Supply | |

| Line | PO Line | Item | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|
| 1 | | P65-18-XO1V2-N TB865 2.6m ALX7-790-960 NT10-2170250D-2850MHz | 27 | Each | 27 | 1,153.00 | 31,131.00 |
| | | Shipment #1  Delivery # 1907775 Waybill# SMARTM070602 | | | | | |

Comments:
PALLET SIZES
No. of Cartons :  3
No. of Pallets  :  3
Pallet Dimensions:285X100X161-2,285X100X191.5-1
Gross Weight:1022.5 KG

Please remit your German (Domestic) EUR Payments to:
Beneficiary:Powerwave Technologies, Inc.
Account No: 491473564   Bank Code: (BLZ) 50020200
Bank: ING Bank Deutschland AG
Hahnstrasse 49,  60528 Frankfurt am Main, Germany

| | Item Total | 31,131.00 |
|---|---|---|
| | Freight | .00 |
| | Vat | .00 |
| | Total EUR | 31,131.00 |

Please remit your EUR Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN: DE22500203000491473564  SWIFT: INGBDEFF
Bank: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

For inquiries regarding this invoice please call +44 (0)1604 822 00
Ernst & Young VAT Rep BV, A.Vinkeloord 155, Amsterdam, acts as our general VAT representative under VAT ID number 0009.25.263.B.01

Doc Nº 14

**Powerwave** technologies

INVOICE

| | |
|---|---|
| INVOICE NO. 2974283 | DATE 20-FEB-2012 |
| SALES ORDER NO 27022458 | RELEASE NO. |
| PO NUMBER: 1322012 | |

Page 1 of 1

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

Bill To :
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-477
Portugal

Ship To:
TEGABI, SA
ZONA INDUSTRIAL DA BARCA
LOTE 22-APARTACD 65
CORUCHE 2100-609
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|
| 1100 | 90 Days Net | 22-MAY-12 | NL817262401 | PT505407140 | CEVA-OCEAN-OCEAN | Prepay | EUR |
| | ORDERED BY | | CUSTOMER REFERENCE | | ADDITIONAL INFORMATION | | SITE CODE |
| Nota Fiscal = 351217621250 | | | 1322012 | Intra Community Supply | | | |

| Line | PO Line | Item | | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | P65-18-XODHV2r.NTTB 865 2.6m ALXT-780-5500TT/0-2170/2500-2650MHz | | | | 17 | Each | 17 | 1,153.00 | 19,601.00 |
| | | Shipment #2  Delivery # 1911016 Waybill# SHARTM070228 | | | | | | | | |
| | | Comments: | | | | | | | | |
| | | PALLET SIZES | | | | | | | | |
| | | No. of Cartons :2 | | | | | | | | |
| | | No. of Pallets :2 | | | | | | | | |
| | | Pallet Dimensions:2650X100X161-2 | | | | | | | | |
| | | Gross Weight:623.3 KG | | | | | | | | |

| | |
|---|---|
| Please remit EUR Wire Transfer Payments to: | Please remit German Domestic EUR Payments to: |
| Beneficiary: Powerwave Technologies, Inc. | Beneficiary: Powerwave Technologies, Inc. |
| IBAN: DE27500700240010073954  SWIFT: INGDDEFF | Account No= 0010073954  Bank Code: (BLZ) 50070010 |
| Bank: ING Bank Deutschland AG | Bank: ING Bank Deutschland AG |
| Habichtswea 45, 60528 Frankfurt am Main, Germany | Habichtswea 45, 60528 Frankfurt am Main, Germany |

| | |
|---|---|
| Item Total | 19,601.00 |
| Freight | .00 |
| Vat | .00 |

| | | |
|---|---|---|
| Total | EUR | 19,601.00 |

For invoices regarding this invoice please call Tel +44(0)8401822.00
Email & Young's VAT Rep BV, A.Van der laat 196, Amsterdam, acts as our general VAT representative under VAT ID number 0839L25.283.B.01

T0/  R

EXHIBIT 1

DOC. N° 15

## Powerwave technologies

**INVOICE**

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO. | 2074532 | DATE | 27-FEB-2012 | | Page 1 of 1 |
|---|---|---|---|---|---|
| SALES ORDER NO. | 21022453 | | | | |
| P.O. NUMBER | 132012 | RELEASE NO. | | | |

**Bill To:**
NET PLANT TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-177
Portugal

**Ship To:**
TESAEL SA
ZONA INDUSTRIAL DA BARCA
LOTE 22-APARTADO 89
CORUCHE 2104-909
Portugal

| CUSTOMER NO. | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1100 | 60 Days Net | 27-MAY-12 | CIP-CS | INE817160Z4501 | PT505407103 | CEVA-OCEAN-OCEAN | Prepay | EUR |
| | ORDERED BY | | CUSTOMER REFERENCE | | ADDITIONAL INFORMATION | | SITE CODE | |
| Nuno Pacheco +351217621550 | | | 132012 | | Intra Community Supply | | | |

| Line | PO Line | Item | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | P65-18-XCDHW20-N TBB55 2.6m ALXT+790-960/1710-2170/2500-2690MHz Shipment #3 Delivery # 1910160 Waypallet SPARTM0670228 | | | 63 | Each | 63 | 1,153.00 | 72,639.00 |

Comments:
PALLET SIZES
No. of Cartons : 7
No. of Pallets : 7
Pallet Dimensions: 2355X1100X161-7
Gross Weight:2432.5 KG

| | | |
|---|---|---|
| Please remit EUR Wire Transfer Payments to: | Please remit local Germany Domestic EUR Payments to: | Item Total | 72,639.00 |
| Beneficiary: Powerwave Technologies, Inc. | Beneficiary: Powerwave Technologies, Inc. | | |
| IBAN: DE29700202700048191735041 SWIFT/BIC:HYVEDEMM | Account No: 0016175544 Bank Code: (BLZ) 50020200 | Freight | .00 |
| Bank: UniCredit Bank AG | Bank: ING Bank Deutschland AG | | |
| Hohenzollernstr 49, 60528 Frankfurt am Main, Germany | Hohenstrasse 49, 60528 Frankfurt am Main, Germany | Vat | .00 |
| | | Total | EUR 72,639.00 |

For any/final regarding this invoice please call Tel +44(0)8540 82200
Ernst & Young VAT Rep BV, A.Vivaldistraat 150, Amsterdam, acts as our general VAT representative under VAT ID number 0002.03.853.D.01

Tot P.

EXHIBIT 1

Doc. Nº 16

## Powerwave technologies

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana CA 92705
United States
www.powerwave.com

### INVOICE

| INVOICE NO.2074420 | DATE 29-FEB-2012 | Page 1 of 1 |
| --- | --- | --- |
| SALES ORDER NO.21022453 | | |
| PO NUMBER. 13/2012 | RELEASE NO. | |

Bill To:
NET PLANT TELECOMUNICACOES LDA,
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-477
Portugal

Ship To:
TEGGEL SA
ZONA INDUSTRIAL DA BARCA
LOTE 22-A PARTIADO 85
CORUCHE 2100-909
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1100 | 90 Days Net | 29-MAY-12 | CIP-DS | NL817180424091 | PT505407140 | NVWC-GROUND-STANDARD | Prepay | EUR |

| ORDERED BY | CUSTOMER REFERENCE | ADDITIONAL INFORMATION | SITE CODE |
| --- | --- | --- | --- |
| Nuno Fraszo + 351217521350 | 13/2012 | Intra Community Supply | |

| Line | PO Line | Item | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | | P8S-1S-XDSHV2-N TBB6S 2.6m ALX7-790-000/1710-2170/2500-2690MHz | 26 | Each | 26 | 1,153.00 | 29,978.00 |
| | | Shipment #1 Delivery # 1911543 Waybill# 046671105100008900 | | | | | |

Comments:
PALLET SIZES
No. of Cartons :3
No. of Pallets :3
Pallet Dimensions265X100X160+2/265X100X162-1
Gross Weight1040 KG

| Item Total | | 29,978.00 |
| --- | --- | --- |
| Freight | | .00 |
| Vat | | .00 |
| Total | EUR | 29,978.00 |

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN: DE07500700100401915544 SWIFT: HGERDEFF
Bank: ING Bank Deutschland AG
Hahnenstrasse 46, 63328 Frankfurt am Main, Germany

Please remit Intra (German Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No. 401915544 Bank Code (BLZ) 50070010
Bank: ING Bank Deutschland AG
Hahnenstrasse 46, 63328 Frankfurt am Main, Germany

For logistics regarding this invoice please call Tel ++49(0)549.822.00
Remit to (or email at) ...Amsterdam 150, Amsterdam, ada as our general VAT representative under VAT ID number 0003.35.253.59.01
Emst & Young VAT Rep BV, Amsterdam

EXHIBIT 1

Doc. N° 17

# Powerwave
technologies

## INVOICE

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO. | 2074917 | | DATE | 07-MAR-2012 | | Page 1 of 1 |
|---|---|---|---|---|---|---|
| SALES ORDER NO | 21022055 | | | | | |
| PO NUMBER | 31022011 | | RELEASE NO. | | | |

**Bill To:**
NET PLAT TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-177
Portugal

**Ship To:**
TEGAEL SA
ZONA INDUSTRIAL DA BARCA
LOTE 22-APARTADO 05
COIMBRA 2114-909
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1100 | 90 Days Net | 05-JUN-12 | DDP | INU817350426001 | PT505407143 | NWXVL-GROUND-STANDARD | Prepay | EUR |
| | ORDERED BY | | | CUSTOMER REFERENCE | ADDITIONAL INFORMATION | | SITE CODE | |
| Nuno Pessoa, +351 217 521 260 | | | 31022011 | | Intra Community Supply | | | |

| Line | PO Line | Item | | | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | 7335.10 ALUC-500-2500-50/00-50S-0-N | | | | | 50 | Each | 50 | 35.57 | 1,778.50 |

Shipment I:1 Delivery # 1914159 Waybill 004871156100064483363

Commodor
PALLET SIZES :
No. of Cartons  :1
No. of Pallets  :1
Pallet Dimensions:120x80x140-1
Gross Weight: KG

|  |  |
|---|---|
| Please remit EUR Wire Transfer Payments to: | Please remit Intel German Domestic EUR Payments to: |
| Beneficiary: Powerwave Technologies, Inc. | Beneficiary: Powerwave Technologies, Inc. |
| IBAN: DE37500700240516172544  SWIFT:DEUTDEFF | Account No: 0516172544  Bank Code: (BLZ) 50070000 |
| Bank: ING Bank Deutschland AG | Bank: ING Bank Deutschland AG |
| Hahnstrasse 49,  60528 Frankfurt am Main, Germany | Hahnstrasse 49,  60528 Frankfurt am Main, Germany |

| | | |
|---|---|---|
| Item Total: | | 1,778.50 |
| Freight | | .00 |
| Vat | | .00 |
| Total | EUR | 1,778.50 |

For inquiries regarding this invoice please call Tel:+49(0)541 823 C01
Ernst A Young VAT Rep BV, A.Woelst/seat 190, Amsterdam, acts as our general VAT representative under VAT ID number 0019.22.550.B.01

T-07  6

110                                                                    EXHIBIT 1

Doc. Nº 18

# Powerwave technologies

## INVOICE

| INVOICE NO. 2076042 | DATE 09-MAR-2012 | Page 1 of 1 |
| SALES ORDER NO.21022058 | | |
| PO NUMBER. 12/2012 | RELEASE NO. | |

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana CA 92705
United States
www.powerwave.com

Bill To :
NET PLANT ELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBOA 1600-477
Portugal

Ship To:
TEGGEL SA
ZONA INDUSTRIAL DA BARCA
LOTE 22-APARTADO 85
CORUCHE 2104-909
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1100 | 90 Days Net | 07-JUN-12 | CP-CS | NL8179042481 | PT505407140 | CEVA-OCEAN-OCEAN | Prepay | EUR |
| | ORDERED BY | | | CUSTOMER REFERENCE | ADDITIONAL INFORMATION | | SITE CODE | |
| Nuno Pascoa + 35121 7521250 | | | | 13/2012 | Intra Community Supply | | | |

| Line | PO Line | Item | | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | PHS-18-XDHWZ4N TB865 2.5m ALX7-730-9601770-21T02S2O-2E590MHz Shipment #4 Delivery # 1912712 Voyyaii# SHARTM072036 | | | | 80 | Each | 80 | 1,153.00 | 92,240.00 |

Comments:
PALLET SIZES
No. of Cartons   :8
No. of Pallets   :8
Pallet DimensionsE205X100X151-9
Gross Weight=3059 KG

| | | |
|---|---|---|
| Please remit EUR View Transfer Payments to: | Item Total | 92,240.00 |
| Beneficiary: Powerwave Technologies, Inc. | | |
| Account No: 410175544 | Bank Code: (BLZ) 50020000 | Freight | .00 |
| IBAN: DE27500210040410175544 SWIFT: LNGBHDEFF | | |
| Bank: ING Bank Deutschland AG | Vat | .00 |
| Hahnstrasse 49, 60528 Frankfurt am Main, Germany | | |
| | Total | EUR | 92,240.00 |

Please remit EUR View Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No: 410175544   Bank Code: (BLZ) 50020000
IBAN: DE27500210040410175544 SWIFT: LNGBHDEFF
Bank: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

For inquiries regarding this invoice please call Tel +49(0)541 822.00
Ernst & Young VAT Rep BV, A.Vreidsetraat 150, Amsterdam, sets as our present VAT representative under VAT ID number 0030.35.263.B.01

Doc. Nº 19

# Powerwave technologies

## INVOICE

Page 1 of 1

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO. | 2070543 |
| SALES ORDER NO. | 21022458 |
| PO NUMBER | 13/2012 |
| DATE | 08-MAR-2012 |
| RELEASE NO. | |

Bill To:
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESERIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-177
Portugal

Ship To:
TESGAL SA
ZONA INDUSTRIAL DA BARCA
LOTE 22-APARTADO 85
CORUCHE 2104-909
Portugal

| CUSTOMER NO. | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1160 | 90 Days Inv | 07-JUN-12 | CIF-CS | PT980577640 | PT505407140 | CEVA OCEAN-OCEAN | Prepay | EUR |

| ORDERED BY | | CUSTOMER REFERENCE | | ADDITIONAL INFORMATION | | | SITE CODE | |
|---|---|---|---|---|---|---|---|---|
| Nuno Passos + 351217021250 | | 13/2012 | | Intra Community Supply | | | | |

| Line | PO Line | Item | | | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | P65-15-XDHVG.N TBBSC 1.4m ALX/C790-960/1710-2170/C50/0-2600MHz | | | | | 18 | Each | 18 | 792.00 | 14,256.00 |
| | | Shipment #1  Delivery # 1913767 Waybill# SHARTM/722038 | | | | | | | | | |

Comments:
PALLET SIZES
No. of Cartons    2
No. of Pallets    2
Pallet Dimensions:100X120X150,5+1160X100X102,5+1
Gross Weight:453 KG

|  | | Item Total | 14,256.00 |
|---|---|---|---|
| | | Freight | .00 |
| | | Vat | .00 |
| | | Total | EUR  14,256.00 |

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN:DE27500010040167584 SWIFT: INGDDEFF
Bank:ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

Please remit local German Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No: 0910172844 Bank Code: (BLZ) 50010100
Bank:ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

For inquiries regarding this invoice please call Tel +44(0)5340 422 00
Ernst & Young VAT Rep BV, A.Vreedezaan 150, Amsterdam, acts as our general VAT representative under VAT number:0023.25.203.B.01

112

EXHIBIT 1

Doc. Nº 20

# Powerwave technologies

Powerwave Technologies, Inc.
1801 E. Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

## INVOICE

| INVOICE NO. 2070803 | DATE 29-MAR-2012 |
|---|---|
| SALES ORDER NO. 21022155 | |
| PO NUMBER. 1320212 | RELEASE NO. |

| | Page 1 of 1 |

Bill To:
NETT PLAN TELECOM NICA/ACCESS LDA.
CENTRO EMPRESARIAL DE TELHERAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-477
Portugal

Ship To:
TESGABI, SA
ZONA INDUSTRIAL DA BARCA
LOTE 22-APARTADO 85
CORUCHE 2104-909
Portugal

| CUSTOMER NO. | PAYMENT TERMS | DUE DATE | | CUSTOMER VRN | | SHIP METHOD | | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|---|
| 7160 | 90 Days Net | 16-JUN-12 | | PT505407140 | | CEVA-OCEAN-OCEAN | | Prepay | EUR |

| | | FOB POINT | POWERWAVE VRN | | | | |
|---|---|---|---|---|---|---|---|
| | | CIP-CS | NL8175/30/V/6B01 | | ADDITIONAL INFORMATION | | SITE CODE |

| | ORDERED BY | | CUSTOMER REFERENCE | | | |
|---|---|---|---|---|---|---|
| Num Posses + 35121752/1250 | | 13/2/2012 | | Intra Community Supply | | |

| Line | PO Line | Item | | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | P65-15-XDBWO2A TBB65 1.4m ALXT c730-550/710-2170/2500-2600MHz Shipment /R2 Delivery # 1519476 Weight## SHARTM072853 | | | | 32 | Each | 32 | 793.00 | 25,344.00 |

Comments:
PALLET SIZES
No. of Cartons :3
No. of Pallets :3
Pallet Dimensions:3160X100X150,5-3-1-305.00
Gross Weight:827 KG

Please remit EUR wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No.: 6491175044 Bank Code: (BLZ) 50030000
Bank: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

Please remit local German Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No.: 6491175044 SWIFT: INGBDEFF
Bank: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

| Item Total | 25,344.00 |
|---|---|
| Freight | .00 |
| Vat | .00 |
| Total | EUR 25,344.00 |

For inquiries regarding this invoice please call Tel +44 (0)845 0 923 00
Emst & Young VAT Reg BV, A.J.vddGinnart 150, Amsterdam, acts as our general VAT representative under VAT ID number 0003.25.350.B.01

DOC. N° 21

# Powerwave technologies

## INVOICE

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| | |
|---|---|
| INVOICE NO. 2075804 | DATE 20-MAR-2012 |
| SALES ORDER NO 21022455 | RELEASE NO. |
| PO NUMBER: 12/2012 | Page 1 of 1 |

Bill To:
NET PLANT TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-477
Portugal

Ship To:
TEKMAS, SA
ZONA INDUSTRIAL DA BARGA
LOTE 22-APARTADO 85
CORUCHE 2100-909
Portugal

| CUSTOMER NO. | PAYMENT TERMS | DUE DATE | FOB PORT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1100 | 90 Days Net | 18-JUN-12 | CUC-CS | NLB17187924991 | PT505807740 | CEVA-OCEAN-OCEAN | Prepay | EUR |
| | ORDERED BY | | CUSTOMER REFERENCE | | | | | SITE CODE |
| Nuno Passos + SS121752/1680 | | | 13/2012 | | ADDITIONAL INFORMATION | Intra Community Supply | | |

| Line | PO Line | Item | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount CURRENCY |
|---|---|---|---|---|---|---|---|
| 1 | | P05-55-XD31WC-N T8BG5 1.4m ALXT-700-960/1710-2170/2500-2690MHz<br>Shipment IG Delivery # 1919489 Waybill# SHARTM072833 | 20 | Each | 20 | 792.00 | 15,840.00 |

Comments:
PALLET SIZES
No. of Cartons : 4
No. of Pallets : 4
Pallet Dimensions180x180X100X190.5-3-1-23.50/160X160X72.5-1-1-09.00
Gross Weight490 KG

| | | |
|---|---|---|
| Item Total | EUR | 15,840.00 |
| Freight | | .00 |
| Vat | | .00 |
| Total | EUR | 15,840.00 |

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN: DE82700100190197684X SWIFT: IN00GB3F
Bank: ING Bank Deutschland AG
Hahnstrasse 48, 60528 Frankfurt am Main, Germany

Please remit USD Bank German Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No: 8910197684X Bank Code: (BLZ) 50210900
Bank: ING Bank Deutschland AG
Hahnstrasse 48, 60528 Frankfurt am Main, Germany

For Invoice inquiry log this invoice phone at Tel +49(0)540 932 00
Ernst & Young VAT Rep BV, A.Vreeldtstraat 150, Amsterdam, act as our general VAT representative under VAT number 0030.25.253.B.01

EXHIBIT 1

Doc. N° 22

# Powerwave technologies

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

## INVOICE

| INVOICE NO: 2075954 | DATE: 23-MAR-2012 |
| SALES ORDER NO: 21033016 | |
| PO NUMBER: 4G2012 | RELEASE NO: |
| | Page 1 of 1 |

Bill To:
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERNANI NEVES, 22-2A
LISBON 1600-177
Portugal

Ship To:
DHL EXEL SUPPLY CHAIN
ALVERCA PARK - CORPO 8
FRACCAO 2 QUINTA DA VERDELHA
ALVERCA 2615-501
Portugal

| CUSTOMER NO. | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | CURRENCY |
|---|---|---|---|---|---|---|
| 1100 | 90 Days Net | 21-JUN-12 | DDP | | PT506497VG | EUR |

| SHIP METHOD | FREIGHT TERMS |
|---|---|
| NWWL-GROUND-STANDARD | Prepay |

ORDERED BY
Nova Pzszzz, + 351 217 921 250

CUSTOMER REFERENCE
4/6/2012

ADDITIONAL INFORMATION
Intra Community Supply

SITE CODE

| Line | PO Line | Item | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|
| 1 | | LGP21903 TMD 800-900/1800-2100 SH<br>LPNSERS23032012026674<br>Serial #<br>LGP21903SHSB911500146T, LGP21903SHSB911500147O,<br>LGP21903SHSB911500152B, LGP21903SHSB911500153S,<br>LGP21903SHSB911500165S<br>LPNSERS23032012026673<br>Serial #<br>LGP21903SHSB911500142A, LGP21903SHSB911500145T,<br>LGP21903SHSB911500147J, LGP21903SHSB911500150A,<br>LGP21903SHSB911500163B<br>Shipment #1 Delivery # 1022218 Waybill 12EF4Q4A/0091220 | 10 | Each | 10 | 182.96 | 1,829.60 |

Comments:
PALLET SIZES
No. of Cartons : 2
No. of Pallets : 0
Pallet Dol Dimensions: 59X45X55-2-1-18.30
Gross Weight: 35.6 KG

| | | |
|---|---|---|
| Please remit SUR Via Transfer Payments to: | Please remit Real German Domestic EUR Payments to: | Item Total | 1,829.60 |
| Benificary: Powerwave Technologies, Inc. | Benificary: Powerwave Technologies, Inc. | | |
| IBAN: DE37 500700100076170000 | Account No.: 0076170000 Bank Code (BLZ) 50070000 | Freight | .00 |
| Bank: HSB Bank Deutschland AG | Bank: HSB Bank Deutschland AG | | |
| Habsstrasse 49, 60528 Frankfurt am Main, Germany | Habsstrasse 49, 60528 Frankfurt am Main, Germany | Vat | .00 |
| | | Total | EUR | 1,829.60 |

For inquiries regarding this invoice please call Tel +44(0)560 622 00
Ernst & Young VAT Reg B.V., A. Vreelandseat 1 CD, Amsterdam, adz is our general VAT ID number 0038.52.263.34.01

Doc N° 23

# Powerwave
technologies

## INVOICE

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO.8000705 | DATE 27-MAR-2012 | Page 1 of 1 |
|---|---|---|
| SALES ORDER NO. 21023016 | | |
| PO NUMBER. 4/2012 | RELEASE NO. | |

Bill To :
NET PLAN TELECOMUNICAÇÕES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-477
Portugal

Ship To:
DHL EXEL SUPPLY CHAIN
ALVERCA PARK - CORPO B
FRACCAO C QUINTA DA VERDELHA
ALVERCA 2615-S51
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1100 | 60 Days Net | 25-JUN-12 | | NL817604240B1 | PT505407740 | | Prepay | EUR |
| | ORDERED BY | | | CUSTOMER REFERENCE | ADDITIONAL INFORMATION | | SITE CODE | |
| | | | | | Intra Community Supply | | | |

| Line | PO Line | Item | | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | LGP21903 TMD 800-900/1800-2100 SH | | | | 10 | Each | 10 | 108.10 | 1,081.00 |
| | | Shipment # Delivery # Waybill | | | | | | | | |

Comments:

| Please remit EUR Wire Transfer Payments for: | Please remit local German Domestic EUR Payments to: | Item Total | 1,081.00 |
|---|---|---|---|
| Beneficiary: Powerwave Technologies, Inc. | Beneficiary: Powerwave Technologies, Inc. | | |
| IBAN: DE92500210000010173544 SWIFT: INGBDEFF | Account No: 0010173544 Bank Code BLZ: 50021000 | Freight | .00 |
| Bank: ING Bank Deutschland AG | Bank: ING Bank Deutschland AG | | |
| Hahnstrasse 49, 60528 Frankfurt am Main, Germany | Hahnstrasse 49, 60528 Frankfurt am Main, Germany | Vat | .00 |
| | | Total | 1,081.00 EUR |

For inquiries regarding this invoice please call Tel +1(855)40 822 00
Ernst & Young VAT Reg DTL A.Vinci Street 103, Amsterdam. Int'l as our po/and VAT representative enter VAT ID number 0033.25.353.B.01

Toy

Doc. N° 24

**Powerwave** technologies

## INVOICE

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO. 2076227 | DATE 20-MAR-2012 | Page 1 of 1 |
| SALES ORDER NO. 21022169 | | |
| PO NUMBER. 13/2012 | RELEASE NO. | |

BILL To :
NET PLAN TELECOMUNICAÇOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERNANO NEVES, 22-2A
LISBON 1600-477
Portugal

Ship To:
TECAEL, SA.
ZONA INDUSTRIAL DA BARCA
LOTE 22-APARTADO 55
CORUCHE 2104-909
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1100 | NET 90 | 25-JUN-12 | CIP-CS | PT505407-10 | PT501612420801 | INWHL-GROUND-STANDARD | Prepay | EUR |
| | ORDERED BY | | | CUSTOMER REFERENCE | ADDITIONAL INFORMATION | | SITE CODE | |
| | Nuno Passos + 351217251250 | | 13/2012 | | Intra Community Supply | | | |

| Line | PO Line | Item | | | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | P65-18-XCUHW2-N TB855 2,6m ALXT-790-960/1710-2170/2500-2690MHz | | | | | 87 | Each | 87 | 1,153.00 | 100,311.00 |
| | | Shipment#2 Delivery # 1520059 Waybill HC 8EDEN PT | | | | | | | | | |

Comments:
PALLET SIZES   35
No. of Cartons   35
No. of Pallets   35
Pallet Dimensions:235X100X160-4-1-352,00 285X100X190-4-1-452,00
Gross Weight:6301 KG

| | | Item Total | 100,311.00 |
|---|---|---|---|
| | | Freight | .00 |
| | | Vat | .00 |
| | | **Total** | EUR 100,311.00 |

Please remit local German Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No: 491673544   Bank Code: (BLZ) 50001000
Bank: ING Bank Deutschland AG
Hahnstrasse 40, 60528 Frankfurt am Main, Germany

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN: DE27500010000491673544   SWIFT: INGBDEFF
Bank: ING Bank Deutschland AG
Hahnstrasse 40, 60528 Frankfurt am Main, Germany

For inquiries regarding this invoice please call Tel +44(0)040 932.00
Ernst & Young VAT Rep BV, A.Wedtstraat 150, Amsterdam, acts as our general VAT representative under VATID number 0003.55.383.601

EXHIBIT 1

Doc. Nº 25

# Powerwave technologies

## INVOICE

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| | |
|---|---|
| INVOICE NO. 0070228 | DATE 28-MAR-2012 | Page 1 of 2 |
| SALES ORDER NO. 21030032 | RELEASE NO. | |
| PO NUMBER. 472012 | | |

Bill To:
NET PLAN TELECOMUNICACOES LDA,
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-477
Portugal

Ship To:
DHL EXEL SUPPLY CHAIN
ALVERCA PARK - CORPO B
FRACCAO 5 QUINTA DA VERDELHA
ALVERCA 2615-001
Portugal

| CUSTOMER NO. | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE REFERENCE | CUSTOMER VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|---|
| 1100 | 90 Days Net | 26-JUN-12 | OR-CA | | PT505407140 | PT505407691 | CEVA/RRS/STANDARD | Prepay | EUR |
| Nume Passos, + 351 217 321 250 | | | | CUSTOMER REFERENCE | | ADDITIONAL INFORMATION | | SITE CODE | |
| | ORDERED BY | | 472012 | | Intra Commodity-Supply | | | | |

| Line | PO Line | Item | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | LGP21903S 1MD 800-800/1600-2100 SH | | | 50 | Each | 50 | 131.70 | 6,585.00 |

LPNM/SZ28033012-1006
Serial#
LGP21903SHS8915110216, LGP21903SHS8915110238,
LGP21903SHS8915110251, LGP21903SHS8915110274,
LGP21903SHS8915110338, LGP21903SHS8915110415,
LGP21903SHS912010384, LGP21903SHS912010385,
LGP21903SHS8912010395, LGP21903SHS912010396,
LGP21903SHS8912010398, LGP21903SHS912010399,
LGP21903SHS8912010400, LGP21903SHS912010402,
LGP21903SHS8912010408, LGP21903SHS912010409,
LGP21903SHS8912010410, LGP21903SHS912010411,
LGP21903SHS8912010412, LGP21903SHS912010413,
LGP21903SHS8912010414, LGP21903SHS912010419,
LGP21903SHS8912010420, LGP21903SHS912010422,
LGP21903SHS8912010423, LGP21903SHS912010424,
LGP21903SHS8912010425, LGP21903SHS912010431,
LGP21903SHS8912010432, LGP21903SHS912010433,
LGP21903SHS8912010434, LGP21903SHS912010435,
LGP21903SHS8912010436, LGP21903SHS912010443,
LGP21903SHS8912010442, LGP21903SHS912010444,
LGP21903SHS8912010448, LGP21903SHS912010452,
LGP21903SHS8912010457, LGP21903SHS912010459,
LGP21903SHS8912010467, LGP21903SHS912010462,
LGP21903SHS8912010464, LGP21903SHS912010466,
LGP21903SHS8912010468, LGP21903SHS912010471,
LGP21903SHS8912010474, LGP21903SHS912010478,
LGP21903SHS912010169x, LGP21903SHS8912010169
Shipment#1  Delivery # 102204 Waybill# 02409811

Comments:
PALLET SIZES    :1
No. of Cartons  :1
No. of Pallets  :1
Pallet Dimensions: 111 W83X123.5-1-41-190.30
Gross Weight 190.2 KG

| | | |
|---|---|---|
| | Item Total | 6,585.00 |
| | Freight | .00 |

Please remit local German domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account: IBAN: DE22500210000011725644 BankCode (BLZ) 50021000
Bank: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

Please remit EUR Intra Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN: DE22500210000011725644 SWIFT: INGBDEFF
Bank: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

EXHIBIT 1

**Powerwave®** technologies®

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana CA 92705
United States
www.powerwave.com

**INVOICE**

| | |
|---|---|
| INVOICE NO.2078228 | DATE 28-MAR-2012 |
| SALES ORDER NO 21020332 | RELEASE NO. |
| PO NUMBER. 47/2012 | |

Bill To :
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-477
Portugal

Ship To:
DHL EXEL SUPPLY CHAIN
ALVERCA PARK - CORPO D
FRACCAO 5 QUINTA DA VERDELHA
ALVERCA 2616-531
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1100 | 90 Days Net | 26-JUN-12 | CIP-CS | NL817160426B01 | PT508407410 | CEVA-AIR-STANDARD | Prepay | EUR |

CUSTOMER REFERENCE: 47/2012

| | ORDERED BY | | | | ADDITIONAL INFORMATION | | SITE CODE | |
|---|---|---|---|---|---|---|---|---|
| Nuno Pastor, + 351 217 521 250 | | | | | Intra Community Supply | | | |

| Line | PO Line | Item | | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|---|

| | | | | | | | Vat | | .00 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Total | EUR | 6,595.00 |

For inquiries regarding this invoice please call Tel +44(0)540 822.00
Ernst & Young VAT Rep BV, A.Verdistraat 103, Amsterdam, acts as our general VAT representative under VAT ID number 0030.25.303.B.01

ΤΟΙ b

119                                    EXHIBIT 1

Doc. Nº 26

# INVOICE

**Powerwave technologies**

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO. 2077132 | DATE 12-APR-2012 | Page 1 of 1 |
| SALES ORDER NO 21022005 | RELEASE NO. | |
| PO NUMBER: 3162011 | | |

Bill To :
.NET PLANT-TELECOMUNICAÇOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22/2A
LISBON 1600-477
Portugal

Ship To:
TEKSELL,SA
ZONA INDUSTRIAL DA BARCA
LOTE 22-APARTADO 55
COIMBRE 2104-909
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
| 1100 | 90 Days Net | 11-JUL-12 | DDP | IE9578536WH | PT50480740 | GEVAV.LTR-STANDARD | Priority | EUR |

| DELIVERED BY | CUSTOMER REFERENCE | ADDITIONAL INFORMATION | SITE CODE |
| DHL | 3162011 | Infra Community Supply | |

| Line | PO Line | Item | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
| 1 | | P85-17-XQH-H/-RET DB85S 2.0m 700-960/1710-2170-65-17/16B-AiO – no RET motor attached | 30 | Each | 30 | 687.00 | 20,610.00 |
| | | Shipment #1 Delivery # 1593236 Waybill# 02408754 | | | | | |
| | | Comments: | | | | | |
| | | PALLET SIZES | | | | | |
| | | No. of Cartons   :3 | | | | | |
| | | No. of Pallets   :3 | | | | | |
| | | Pallet Dimension:221x75x163,3-2-1-262,00/221x75x085,5-1-1-184,00 | | | | | |
| | | Gross Weight:516 KG | | | | | |

| | Item Total | 20,610.00 |
| Please remit EUR Wire Transfer Powerwave Inc. | | |
| BeneficiaryPowerwave Technologies, Inc. | Freight | .00 |
| IBAN:DE25500700100043107339 / SWIFT: DEUDE0FF | | |
| Bank:ING Bank Deutschland AG | Vat | .00 |
| Hoheszrasse 49, 60328 Frankfurt am Main, Germany | | |
| | Total | EUR | 20,610.00 |

Please remit EUR Wire Transfer Powerwave Inc.
Beneficiary:Powerwave Technologies, Inc.
IBAN:DE25500700100043107339 / SWIFT: DEUDE0FF
Bank:ING Bank Deutschland AG
Hoheszrasse 49, 60328 Frankfurt am Main, Germany

For inquiries regarding this invoice please call Tel +46(8)549 922 00
Ernst & Young VAT Rep BV, A.VanStolkweg 15b, Amsterdam, acts as our general VAT representative under VAT ID number 0039.25.263.3.01

120

EXHIBIT 1

Doc. Nº 27

**Powerwave** technologies

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

## INVOICE

| INVOICE NO. 2078097 | |
|---|---|
| SALES ORDER NO. 21023365 | |
| PO NUMBER: 452012 | |
| RELEASE NO. | |
| DATE 07-MAY-2012 | Page 1 of 1 |

Bill To:
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES N 22-2A
LISBOA 1600-477
Portugal

Ship To:
NET PLAN TELECOMUNICACOES LDA
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES N 22 2A
LISBOA Portugal 1600-477
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1100 | 90 Days Net | 05-AUG-12 | 020-CS | NL671319424601 | PT505407140 | DEVA-AIR-STANDARD | Prepay | EUR |

| ORDERED BY | ADDITIONAL INFORMATION | SITE CODE |
|---|---|---|
| N Passos (T +351 217 321 250) | Intra Community Supply | |

| Line | PO Line | Item | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|
| 1 | | EAU01 4711 PCR-KIT, INTERNAL, STD REPEATER AND RADIO HEAD | 35 Each | 35 | | 537.30 | | 18,805.50 |

CUSTOMER REFERENCE
PO 452012

LPN#1938739
Shipment #1  Delivery # 1938739 Waybill# 83477281

Commodals:
PALLET SIZES

QTY @ L W H NET WEIGHT GROSS WEIGHT

1   77 x 65 x 35   5.60 KG   12.00 KG

25 CARTONS
1 PALLET

| | |
|---|---|
| Item Total | 18,805.50 |
| Freight | .00 |
| Vat | .00 |
| Total  EUR | 18,805.50 |

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.

Please remit (Legal Currency) Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No: 4701013544 : Bank Code: (BLZ) 50021000
Bank: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

For invoices regarding this invoice please call Tel +49(0)64 832-00
Email & Young VAT Rep BV, Amsterdam, reg as our general VAT representative under VAT number 0205.24.253.B.01

EXHIBIT 1

Doc. Nº 28

# Powerwave® technologies

## INVOICE

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO. 2028589 | | DATE 29-MAY-2012 | | Page 1 of 1 |
|---|---|---|---|---|
| SALES ORDER NO. 21023393 | | | | |
| PO NUMBER. 45/2012 | | RELEASE NO. | | |

| Bill To : | Ship To : |
|---|---|
| NET PLAN TELECOMUNICACOES LDA. | NET PLAN TELECOMUNICACOES LDA. |
| CENTRO EMPRESARIAL DE TELHEIRAS | CENTRO EMPRESARIAL DE TELHEIRAS |
| RUA HERMANO NEVES, 22-2A | RUA HERMANO NEVES N 22 2A |
| LISBON 1600-177 | LISBOA Portugal 1600-477 |
| Portugal | Portugal |

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER | CUSTOMER VRN | SHIP METHOD | | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|---|---|
| 1100 | 60 Days-Net | 10-AUG-12 | DDP-CS | IE9317990V2601 | P12034077410 | Inara Community Supply | CEV-AIR-STANDARD | | Prepay | EUR |
| | ORDERED BY | | CUSTOMER REFERENCE | | | | ADDITIONAL INFORMATION | | SITE CODE | |
| N Faccas (T +351 217 521 220) | | | PO 45/2012 | | | | | | | |

| Line | PO Line | Item | Order Qty | UOM | Shipped Qty | | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|
| 1 | | EA101 4/7H RQR-KIT, INTERNAL, STD REPEATER AND RADIO HEAD<br>LPNF819426099-2<br>Shipment #2  Delivery # 1942099 Way Bill 93477319 | 2 | Each | 2 | | 537.30 | 1,074.60 |
| 2 | | 500-13817-001 CU BOARD,RoHS,FORMER K1033<br>LPNF819426099-1<br>Shipment #1  Delivery # 1942099 Way Bill 93477319<br>Price: 275 EURO | 35 | Each | 35 | | .00 | .00 |
| 3 | | 500-13817-001 CU BOARD,RoHS,FORMER K1033<br>LPNF819426099<br>Shipment #2  Delivery # 1942099 Way Bill 93477319<br>Price: 275 EURO | 2 | Each | 2 | | .00 | .00 |

Comments:
PALLET SIZES

QTY @ L W H  NET WEIGHT  GROSS WEIGHT

| 1 CARTON | | |
|---|---|---|
| 1 | 59 x 40 x 23 | 5.20 KG   5.60 KG |

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN: DE97500700100010073544  SWIFT: DEUTDEFF
Bank: ING Bank Deutschland AG
Habsteinstr 49,  60329 Frankfurt am Main, Germany

Please remit local German Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No 010073544  Bank Code (BLZ) 50070010
Bank: ING Bank Deutschland AG
Habsteinstr 49,  60329 Frankfurt am Main, Germany

For inquiries regarding this invoice please call Tel +44(0)845 6822 00
Emet & Young VAT Reg BV, A. Vredestraat 150, Amsterdam, acts as our general VAT representative under VAT ID number 0030.25.553.B.01

| Item Total | | 1,074.60 |
|---|---|---|
| Freight | | .00 |
| Vat | | .00 |
| Total | EUR | 1,074.60 |

EXHIBIT 1

Doc. Nº 29

## INVOICE

**Powerwave Technologies, Inc.**
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO. | 2279111 |
|---|---|
| SALES ORDER NO. | 26015521 |
| PO NUMBER | 5/2012 |
| DATE | 22-MAY-2012 |
| RELEASE NO. | |
| Page 1 of 1 | |

**Bill To:**
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBOA 1600-477
Portugal

**Ship To:**
NET PLAN TELECOMUNICACOES LDA
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES K 22 2A
LISBOA, Portugal 1600-477
Portugal

| CUSTOMER NO. | PAYMENT TERMS | DUE DATE | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|
| 1100 | 90 Day Net | 20-AUG-12 | PT505407140 | CGW-AIR-STANDARD | Prepay | EUR |

| ORDERED BY | POWERWAVE VRN | ADDITIONAL INFORMATION | SITE CODE |
|---|---|---|---|
| Nome Pereira <nome.pereira@netplan.pt> | NL817150429B01 | Intra Community Supply | |

| FOB POINT | CUSTOMER REFERENCE |
|---|---|
| DDP | |

| Line | PO Line | Item | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|
| 1 | | K125910 550i FON BOARD 1310nm RoHS | 1 | Each | 1 | 845.00 | 845.00 |

Shipment #1 Delivery # 1942220 Waybill CEVA VIA AMSTERDAM 83477349

Comments:
PALLET SIZES
No. of Cartons :
No. of Pallets :
Pallet Dimensions:
Gross Weight LB

Please remit USD, German Domestic, EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No: 491075964  Bank Code: (BLZ) 50010900
Bank: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN: DE33500109000491075964  SWIFT: INGBDEFF
Bank: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

For inquiries regarding this invoice please call Tel +48(67)549 822.00
Email & Young VAT Rep BV, A.Vondelstraat 150, Amsterdam, 623 as our present VAT representative under VAT ID number 0600.25.303.B.01

| Item Total | 845.00 |
|---|---|
| Freight | .00 |
| Vat | .00 |
| Total | EUR 845.00 |

EXHIBIT 1

Doc. Nº 30

# INVOICE

**Powerwave** technologies

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO.2070519 | | DATE 01-JUN-2012 | | Page 1 of 1 |
|---|---|---|---|---|
| SALES ORDER NO 21023751 | | | | |
| PO NUMBER: 6/2012 | | RELEASE NO. | | |

| Bill To : | Ship To: |
|---|---|
| NETT ANT TELECOMUNICAÇOES LDA. | DHL EXEL SUPPLY CHAIN |
| CENTRO EMPRESARIAL DE TELHEIRAS | ALVERCA PARK - CORPO B |
| RUA HERMANO NEVES, 22-2A | FRACCAO 5 QUINTA DA VERDELHA |
| LISBON 1600-177 | ALVERCA 2616-001 |
| Portugal | Portugal |

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1100 | 90 Days Net | 30-AUG-12 | DDP-CAS | NL817180V26801 | PT505407140 | | Prepay | EUR |
| | ORDERED BY | | CUSTOMER REFERENCE | ADDITIONAL INFORMATION | | | SITE CODE | |
| N Passos (T + 351 217 521 250) | | | PO 6/2012 | Data Community Supply | | | | |

| Line | PO Line | Item | | | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | LGP18520 TMA-DDD 1800 Twin FB 12dB SL AISG 2.0 | | | | | 27 | Each | 27 | 370.00 | 9,990.00 |

LPN/ENS/0106/2012-4529
Serial #
LGP18520SAS8911430473, LGP18520SAS8911434374,
LGP18520SAS8911430375, LGP18520SAS8911430393,
LGP18520SAS8911434389, LGP18520SAS8911430983,
LGP18520SAS8911430400, LGP18520SAS8911430405,
LGP18520SAS8911430407, LGP18520SAS8911430411,
LGP18520SAS8911434417, LGP18520SAS8911430448,
LGP18520SAS8911430420, LGP18520SAS8911430421,
LGP18520SAS8911430422, LGP18520SAS8911430435,
LGP18520SAS8911430441, LGP18520SAS8911430443,
LGP18520SAS8911430449, LGP18520SAS8911430451,
LGP18520SAS8911430450, LGP18520SAS8911430455,
LGP18520SAS8911430454, LGP18520SAS8911430461,
LGP18520SAS8911430460, LGP18520SAS8911434467,
LGP18520SAS8911430349
Shipped #1 Delivery # 1046543 Waybill# 00487116510039612531

**Comments:**
PALLET SIZES
No. of Cartons  :1
No. of Pallets  :1
Pallet Dimensions:120x087x000-1-1-220.50
Gross Weight:220.5 KG

Please remit local German Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN: DE52502200000071304544 SWIFT: INGBDEFF
Bank: ING Bank Deutschland AG
Hahnstrasse 42, 60528 Frankfurt am Main, Germany

| Item Total | 9,990.00 |
|---|---|
| Freight | .00 |
| Vat | .00 |
| Total | EUR 9,990.00 |

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN: DE52502200000071304544 SWIFT: INGBDEFF
Bank: ING Bank Deutschland AG
Hahnstrasse 42, 60528 Frankfurt am Main, Germany

For inquiries regarding this invoice please call Tel +44(0)5043832.00
Email A. Newry VAT Rec Div., A.Vercel box 101, Amsterdam, as it as per penal VAT representative under VAT ID number 0030.25.553.B.01

EXHIBIT 1

Doc. Nº 30

**Powerwave** technologies

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

INVOICE

| | |
|---|---|
| INVOICE NO. 2075974 | DATE 06-JUN-2012 | Page 1 of 2 |
| SALES ORDER NO. 21022752 | RELEASE NO. | |
| PO NUMBER: 29/2012 | | |

Bill To -
NET PLAN TELECOMUNICAÇOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-177
Portugal

Ship To -
NET PLAN TELECOMUNICAÇOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES N 22 2A
LISBOA Portugal 1600-477
Portugal

| CUSTOMER NO. | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1100 | 180 Days Net | 04-SEP-12 | DDP | NLB171682426H1 | PT505460740 | MWVAL-GROUND-STANDARD | Prepay | EUR |
| Nuns Passos: + 351 217 321 250 | | ORDERED BY | CUSTOMER REFERENCE | | ADDITIONAL INFORMATION | | SITE CODE | |
| | | 29/2012 | | | Intra Community Supply | | | |

| Line | PO Line | Item | Order Qty | UOM | Shipped Qty | UOM | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|
| 1 | | 7335.10 ALDC-800-2500-59/65C-G/60-D-N<br>LPNIEPR05060/2012-5171<br>Serial #<br>7335.10SWSB9120631959, 7335.10SWSB9120632000,<br>7335.10SWSB9120632001, 7335.10SWSB9120632002,<br>7335.10SWSB9120632005, 7335.10SWSB9120632006,<br>7335.10SWSB9120632007, 7335.10SWSB9120632008,<br>7335.10SWSB9120632009, 7335.10SWSB9120632010,<br>7335.10SWSB9120632012, 7335.10SWSB9120632013,<br>7335.10SWSB9120632014, 7335.10SWSB9120632015,<br>7335.10SWSB9120632016, 7335.10SWSB9120632017,<br>7335.10SWSB9120632019, 7335.10SWSB9120632020,<br>7335.10SWSB9120632021, 7335.10SWSB9120632022,<br>7335.10SWSB912120181, 7335.10SWSB912120181A,<br>7335.10SWSB912120181B, 7335.10SWSB912120181B,<br>7335.10SWSB912120181E, 7335.10SWSB912120181G,<br>7335.10SWSB912120181R, 7335.10SWSB9121201820,<br>7335.10SWSB9121201822, 7335.10SWSB9121201822,<br>7335.10SWSB9121201823, 7335.10SWSB9121201825,<br>7335.10SWSB9121201827, 7335.10SWSB9121201828,<br>7335.10SWSB9121201824, 7335.10SWSB9121201830,<br>7335.10SWSB9121201831, 7335.10SWSB9121201832,<br>7335.10SWSB9121201833, 7335.10SWSB9121201834,<br>7335.10SWSB9121201835, 7335.10SWSB9121201836,<br>7335.10SWSB9121201837, 7335.10SWSB9121201838,<br>7335.10SWSB9121201839, 7335.10SWSB9121201840,<br>7335.10SWSB9121201841, 7335.10SWSB9121201842,<br>7335.10SWSB9121201843, 7335.10SWSB9121201844,<br>7335.10SWSB9121201845, 7335.10SWSB9121201846,<br>7335.10SWSB9121201854, 7335.10SWSB9121201855,<br>7335.10SWSB9121201856, 7335.10SWSB9121201857,<br>7335.10SWSB9121201859, 7335.10SWSB9121201860,<br>7335.10SWSB9121201861, 7335.10SWSB9121595301,<br>7335.10SWSB9121595304, 7335.10SWSB9121595302,<br>7335.10SWSB9121595305, 7335.10SWSB9121595309,<br>7335.10SWSB9121595310, 7335.10SWSB9121595316,<br>7335.10SWSB9121595316, 7335.10SWSB9121595317, | 100 | Each | 100 | | 35.57 | 3,557.00 |

# Powerwave technologies

## INVOICE

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.pwrwave.com

| INVOICE NO.2070974 | | | DATE 06-JUN-2012 | | Page 2 of 2 |
|---|---|---|---|---|---|
| SALES ORDER NO 21622752 | | | | | |
| PO NUMBER: 2812012 | | | RELEASE NO. | | |

Bill To :
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-177
Portugal

Ship To:
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES N 22 2A
LISBOA Portugal 1600-477
Portugal

| CUSTOMER NO. | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE REFERENCE | CUSTOMER VRN | POWERWAVE VRN | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1100 | 90 Days Net | 04-SEP-12 | DDP | | PT505401740 | PT517160424601 | Prepay | EUR |

| ORDERED BY | | | | | | ADDITIONAL INFORMATION | SITE CODE | |
|---|---|---|---|---|---|---|---|---|
| | | | CUSTOMER REFERENCE | | Into Community Supply | | | |

| Nuno Passos + 351 217 501 250 | 2812012 | |
|---|---|---|

| Line | PO Line | Item | | | | Order-Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|---|

7335.105W5B912150S320, 7335.105W5B912150S330,
7335.105W5B912150S307, 7335.105W5B912150S330,
7335.105W5B912150S344, 7335.105W5B912150S345,
7335.105W5B912150S352, 7335.105W5B912150S353,
7335.105W5B912150S357, 7335.105W5B912150S358,
7335.105W5B912150S359, 7335.105W5B912150S350,
7335.105W5B912150S362, 7335.105W5B912150S360,
7335.105W5B912150S355, 7335.105W5B912150S357,
7335.105W5B912150S369, 7335.105W5B912150S371,
7335.105W5B912150S374, 7335.105W5B912150S375,
7335.105W5B912150S376, 7335.105W5B912150S341,
7335.105W5B912150S345, 7335.105W5B912150S337
Shipment #1  Delivery # 1940026 WaysBill:00456T1551006940050

Commercial:
PALLET SIZES
No. of Cartons    :1
No. of Pallets    :1
Palat Dimensions:120X80X72-1-1-104.00
Gross Weight:104 KG

| | Item Total | | 3,557.00 |
|---|---|---|---|
| | Freight | | .00 |
| | Vat | | .00 |
| | Total | EUR | 3,557.00 |

Plzase remit Local German Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No: 0610724564 . Bank Code: (BLZ) 50220100
Bank: ING Bank Deutschland AG
Holxelstrasse 49,  60528 Frankfurt am Main, Germany

Plzase remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN: DE27502201000610724564  SWIFT: INGBDEFF
Bank: ING Bank Deutschland AG
Holxelstrasse 49,  60528 Frankfurt am Main, Germany

For inquires regarding this invoice phone call Tel +44(0)540 822 00
Ernst & Young VAT Rep BV., A Vreeldostraat 100, Amsterdam, acts as our general VAT representative under VAT ID number 0205.25.203.B.01

EXHIBIT 1

DOC. Nº 31

# Powerwave technologies

## INVOICE

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO. | 0080795 | | DATE | 20-JUN-2012 | Page 1 of 2 |
| SALES ORDER NO. | 21022228 | | RELEASE NO. | | |
| PO NUMBER | 56/2012 | | | | |

Bill To:
NET PLANT TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-477
Portugal

Ship To:
DHL EXEL SUPPLY CHAIN
ALVERCA PARK - CORPO B
FIVROCAO 5 QUINTA DA VERDELHA
ALVERCA 2516-501
Portugal

| CUSTOMER NO. | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
| 1100 | 90 Days Net | 18-SEP-12 | DDP | | PT508407140 | MWWL-GROUND-STANDARD | Prepay | EUR |
| ORDERED BY | | | CUSTOMER REFERENCE | | ADDITIONAL INFORMATION | | SITE CODE | |
| Num Pages | | | 56/2012 | | Intra Community Supply | | | |

| Line | PO Line | Item | | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|------|---------|------|--|--|--|-----------|-----|-------------|-----------|-----------------|
| 1 | | LGP21033 TWD 900-950W1800-2100 SH LPNMERS20050201/2-5714 | | | | 72 | Each | 72 | 98.50 | 7,092.00 |

Serial #
LGP21033SHSB915110217, LGP21090SHSB915110218,
LGP21033SHSB915110220, LGP21090SHSB915110223,
LGP21033SHSB915110233A, LGP21090SHSB915110236,
LGP21033SHSB915110234, LGP21090SHSB915110246,
LGP21033SHSB915110224, LGP21090SHSB915110255,
LGP21033SHSB915110264, LGP21090SHSB915110262,
LGP21033SHSB915110264A, LGP21090SHSB915110265,
LGP21033SHSB915110268, LGP21090SHSB915110267,
LGP21033SHSB915110269, LGP21090SHSB915110271,
LGP21033SHSB915110277, LGP21090SHSB915110278,
LGP21033SHSB915110277, LGP21090SHSB915110297,
LGP21033SHSB915110283, LGP21090SHSB915110291,
LGP21033SHSB915110300, LGP21090SHSB915110301,
LGP21033SHSB915110330, LGP21090SHSB915110334A,
LGP21033SHSB915110338, LGP21090SHSB915110344,
LGP21033SHSB915110347, LGP21090SHSB915110349A,
LGP21033SHSB915110351, LGP21090SHSB915110353,
LGP21033SHSB915110357, LGP21090SHSB915110355,
LGP21033SHSB915110357, LGP21090SHSB915110358,
LGP21033SHSB915110363, LGP21090SHSB915110371,
LGP21033SHSB915110372, LGP21090SHSB915110375,
LGP21033SHSB915110381, LGP21090SHSB915110379,
LGP21033SHSB915110387, LGP21090SHSB915110388,
LGP21033SHSB915110401, LGP21090SHSB915110403,
LGP21033SHSB915110338, LGP21090SHSB915110405,
LGP21033SHSB915110404, LGP21090SHSB915110413,
LGP21033SHSB915110406, LGP21090SHSB915110407,
LGP21033SHSB915110406, LGP21090SHSB915110408,
LGP21033SHSB915110416, LGP21090SHSB915110417,
LGP21033SHSB915110419, LGP21090SHSB915110420,
LGP21033SHSB915110424, LGP21090SHSB915110429,
LGP21033SHSB915110427, LGP21090SHSB915110428,
LGP21033SHSB915110431, LGP21090SHSB915110442,
LGP21033SHSB915110432, LGP21090SHSB915110434,
LGP21033SHSB915120002, LGP21090SHSB915120014,
LGP21033SHSB915120042, LGP21090SHSB915120046,
LGP21033SHSB915120050, LGP21033SHSB915120051
Shipment # Delivery # 195407 Waybill 0048711551000379415

EXHIBIT 1

![Powerwave Technologies logo]

**INVOICE**

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| | | |
|---|---|---|
| INVOICE NO. 2090755 | | Page 2 of 2 |
| SALES ORDER NO. 21022270 | DATE 22-JUN-2012 | |
| PO NUMBER. 55/2012 | RELEASE NO. | |

Bill To:
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
1600-177
Portugal

Ship To:
DHL EXEL SUPPLY CHAIN
ALVERCA PARK - CORPO B
FRACCAO 5 QUINTA DA VERDELHA
ALVERCA 2614-501
Portugal

| CUSTOMER NO. | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|---|
| 1100 | N30 Days Net | 18-SEP-12 | DDP | N-517110-0424EXT | PT505407240 | MWW-GROUND-STANDARD | Prepay | | EUR |
| | ORDERED BY | | | CUSTOMER REFERENCE | ADDITIONAL INFORMATION | | | SITE CODE | |
| Nuno Passos | | | 55/2012 | | Inata Community Supply | | | | |

| Line | PO Line | Item | | | | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|---|

Comments:
PALLET SIZES
No. of Cartons   :1
No. of Pallets   :1
Pallet Dimensions 1110X60X160-1-1-265.50
Gross Weight266.5 KG

Please remit Global German Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No: 493013564   Bank Code: (BLZ) 50010000
Bank: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

| | | |
|---|---|---|
| Item Total | EUR | 7,092.00 |
| Freight | | .00 |
| Vat | | .00 |
| Total | EUR | 7,092.00 |

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN: DE27500100000493013564   SWIFT: INGBDEFF
Bank: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

For inquires regarding this invoice please call Tel +49(0)549 822 00
Email & Young VAT Rep BV, A.Vrauthanstraat 150, Amsterdam, acts as our general VAT representative under VAT ID number 0030.25.330.B.01

*TCJ 8*

EXHIBIT 1

Doc. N°32

# Powerwave
technologies

**INVOICE**

| | | | | INVOICE NO. 2091142 | | DATE 25-JUN-2012 | | Page 1 of 1 |
|---|---|---|---|---|---|---|---|---|
| | | | | SALES ORDER NO 21023278 | | RELEASE NO. | | |
| | | | | PO NUMBER: 560012 | | | | |

Powerwave Technologies, Inc.
1801 E Saint Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

Bill To :
NET PLAN TELECOMUNICAÇÕES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22/A A
LISBON 1600-477
Portugal

Ship To:
DHL EXEL SUPPLY CHAIN
ALVERCA PARK – CORPO B
FRACÇÃO A QUINTA DA VERDELHA
ALVERCA 2610-501
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|---|
| 1100 | 90 Days Net | 23-SEP-12 | C/P-OS | | NL817180424B01 | PT505407140 | CEVA-CAR-STANDARD | Prepay | EUR |
| | ORDERED BY | | | CUSTOMER REFERENCE | | ADDITIONAL INFORMATION | | SITE CODE | |
| Nuno Passos | | | 560012 | | | Intra Community Supply | | | |

| Line | PO Line | Item | Order Qty | UOM | Shipped Qty | Unit Price | Extended Amount | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1 | | LGP21S03 TMD 800-50G/1800-2100 SH | 15 | Each | 15 | 98.50 | 1,477.50 | |

LPN6A5Z26450Z012-6G023
Serial #
LGP21S033HS891Z1T04148, LGP21S033HS891Z1T04150,
LGP21S033HS891Z1T04156, LGP21S033HS891Z1T04158,
LGP21S033HS891Z1T04165, LGP21S033HS891Z1T04169,
LGP21S033HS891Z1T04171, LGP21S033HS891Z1T04176,
LGP21S033HS891Z1T04188, LGP21S033HS891Z1T04223,
LGP21S033HS891Z1T04214, LGP21S033HS891Z1T04216,
LGP21S033HS891Z1T04217, LGP21S033HS891Z1T04210,
LGP21S033HS891Z1T04219
Shipment #2 DotIvery # 9505825 WaybillM 62415972

Comments:
PALLET SIZES :
No. of Cartons : 1
No. of Pallets : 1
Pallet Dimensions:61 X 80 X 67.5 =1,477.50
Gross Weight:57.7 KG

| | | |
|---|---|---|
| | Item Total | 1,477.50 |
| | Freight | .00 |
| | Vat | .00 |
| | **Total** | **EUR   1,477.50** |

Please remit EUR Wire Transfer Payments to:
Beneficiary: Powerwave Technologies, Inc.
IBAN: DE25500700100094430100 Swift: DEUTDEFF
Bank: INB Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

Please remit local German Domestic EUR Payments to:
Beneficiary: Powerwave Technologies, Inc.
Account No: 0910775544 Bank Code: (BLZ) 50021000
Bank: ING Bank Deutschland AG
Hahnstrasse 49, 60528 Frankfurt am Main, Germany

For shipper reporting this Invoice please call Tel +44(0)540 82200
Ernst & Young VAT Rep BV, A.V.Hoitlaan 150, Amsterdam, acts as our general VAT representative under VAT Id number 0003.25.283.B.01

EXHIBIT 1

Doc. Nº 33

# Powerwave
technologies

## INVOICE

Powerwave Technologies, Inc.
1801 E 5th & Andrew Place
Santa Ana, CA 92705
United States
www.powerwave.com

| INVOICE NO. | 2281298 | | DATE | 27-JUN-2012 | Page 1 of 1 |
|---|---|---|---|---|---|
| SALES ORDER NO. 21023278 | | | | | |
| PO NUMBER. 5920412 | | | RELEASE NO. | | |

**Bill To:**
NET PLAN TELECOMUNICACOES LDA.
CENTRO EMPRESARIAL DE TELHEIRAS
RUA HERMANO NEVES, 22-2A
LISBON 1600-477
Portugal

**Ship To:**
DHL EXEL SUPPLY CHAIN
ALVERCA PARK - CORPO B
FRACCAO 5 QUINTA DA VERDELHA
ALVERCA 2616-501
Portugal

| CUSTOMER NO | PAYMENT TERMS | DUE DATE | FOB POINT | POWERWAVE VRN | CUSTOMER VRN | SHIP METHOD | FREIGHT TERMS | CURRENCY |
|---|---|---|---|---|---|---|---|---|
| 1100 | 60 Day Net | 26-SEP-12 | CIP-CA | NL817180246B01 | PT505467740 | CEVA-AIR-STANDARD | Prepay | EUR |
| | ORDERED BY | | | | | | SITE CODE | |
| Nuno Passos | | 5920412 | CUSTOMER REFERENCE | | Intra Community Supply | ADDITIONAL INFORMATION | | |

| Line | PO Line | Item | | | | Order Qty | UOM | Shipped Qty | UOM | Unit Price | Extended Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | LGP21903 TMD 800-900/1800-2100 SH | | | 3 | Each | | 3 | | 98.50 | 295.50 |
| | | LPNMUSZ27/032012-6102 | | | | | | | | | |
| | | Serial # | | | | | | | | | |
| | | LGP21903SHSB912170147, LGP21903SHSB912170180, | | | | | | | | | |
| | | LGP21903SHSB912170225 | | | | | | | | | |
| | | Shipment #4  Delivery # 1597405 Waybill# 02415725 | | | | | | | | | |
| | | | | | | | | | | | |
| | | Comments: | | | | | | | | | |
| | | PALLET SIZES : | | | | | | | | | |
| | | No. of Cartons  : 1 | | | | | | | | | |
| | | No. of Pallets  :1 | | | | | | | | | |
| | | Pallet Dimensions 57x75x65X43.5-1-1-13.50 | | | | | | | | | |
| | | Gross Weight 13.5 KG | | | | | | | | | |

| Please remit (EUR Wire Transfer Payments) to: | Please remit local German Currency (EUR Payments) to: | | Item Total | 295.50 |
|---|---|---|---|---|
| Beneficiary: Powerwave Technologies, Inc. | Beneficiary: Powerwave Technologies, Inc. | | | |
| IBAN: DE82221100046401 ... SWIFT: INGDDEFF | Account No.: 651172544  Bank Code (BLZ) 50012000 | | Freight | .00 |
| Bank: ING Bank Deutschland AG | Bank: ING Bank Deutschland AG | | | |
| Hahnstrasse 40, 60298 Frankfurt am Main, Germany | Hahnstrasse 40, 60298 Frankfurt am Main, Germany | | Vat | .00 |
| | | | Total | 295.50 |
| For inquiries regarding this invoice please call Tel +49(0)6940 802 00 | | | EUR | 295.50 |
| Ernst & Young VAT Rep BV, A.Vreulstraat 102, Amsterdam, and as a general VAT representative under VAT number 6020.52.362.B.01 | | | | |

TCУ P

                    EXHIBIT 1

Doc. Nº 34

Pedro Sousa Uva

| | |
|---|---|
| From: | Nuno Passos <npassos@netplan.pt> |
| Sent: | terça-feira, 23 de Fevereiro de 2010 17:47 |
| To: | Juan Algara |
| Cc: | João Santos |
| Subject: | RE: Reseller agreement |

Hi Juan,

Here are our comments to the still open issues:

- Commission: please, we need more details about your expenses. We do not understand the logistic process. We sale DDP to customers.

Yes, it is true you sale DDP to Portugal. But in certain cases like Optimus the warehouse where the antennas are stored is rented by Net Plan. In any case if all the information we gave you is not enough, keep the 4%, we will not discuss this anymore.

- Commission in all products coming to Portugal: PWAV can not accept this because in some cases PWAV does not know final destination of goods, specially when we sale to OEM. If we do that, in same cases we could find situations where we have to pay two o more commissions depending where the goods are bought by the OEM and the final destination.

Ok, keep it as it is.

So, please, send us the final version of the Reseller Agreement.

Kind Regards,
*Nuno Passos*

Net Plan - Telecomunicações e Energia, S A.
Centro Empresarial de Telheiras
Rua Hermano Neves, Nº 22 - 2º A, 1600 - 477 Lisboa
Phone: + 351 217 521 250
Fax: + 351 217 521 255
npassos@netplan.pt
www.netplan.pt



Por favor pense no ambiente antes de imprimir este e-mail

**From:** Juan Algara [mailto:Juan.Algara@pwav.com]
**Sent:** terça-feira, 23 de Fevereiro de 2010 17:19
**To:** Nuno Passos
**Cc:** João Santos
**Subject:** RE: Reseller agreement

Hi Nuno,
I have check with the US and I have the following comments:
- Payment 90 days: OK.
- Commission: please, we need more details about your expenses. We do not understand the logistic process. We sale DDP to customers.
- Commission in all products coming to Portugal: PWAV can not accept this because in some cases PWAV does not know final destination of goods, specially when we sale to OEM. If we do that, in same cases we could find situations where we have to pay two o more commissions depending where the goods are bought by the OEM and the final destination.

1

TU

EXHIBIT 1

Thanks
Juan

From: Nuno Passos [mailto:npassos@netplan.pt]
Sent: 22 February 2010 18:16
To: Juan Algara
Cc: João Santos
Subject: RE: Reseller agreement

Hi Juan,

As I told you the main open points regarding the Reseller Agreement are as follows:

Payment conditions should 90 days after invoice. We have agreed with Powerwave 90 days after the invoice and it should stay like that and we have this payment conditions also forced by our clients (e.g. Vodafone) as you know.

Regarding the commission, 4% we still think is too low, because:
- Promotion and Sales– Net Plan invests a lot of money and time on promoting Powerwave products through all our customers and we have to support the warehouse and logistic process for sales.
- Implementation support - supporting the correct implementation of Powerwave products, like NetWayVison and commissioning of repeaters. Remember the case of NWV for TMN and VDF where we were immediately invoiced by Powerwave and we still couldn't invoice the client due to the fact that the system is not running properly. In both cases these occurred during the last 2 years and our technicians had to be several times on site with the correspondent costs supported by Net Plan.
- Logistic – Net Plan do all the local support & maintenance plus all the logistics involved on the R&R process.

In my previous mail you didn't comment the following: "We also consider that we should receive a percentage in all the products from Powerwave that are coming to Portugal, even if they are not supplied by us."

Kind Regards,
*Nuno Passos*

Net Plan - Telecomunicações e Energia, S.A.
Centro Empresarial de Telheiras
Rua Hermano Neves, Nº 23 - 2º A, 1600 - 477 Lisboa
Phone + 351 217 321 250
Fax: + 351 217 321 255
npassos@netplan.pt
www.netplan.pt



Por favor pense no ambiente antes de imprimir este e-mail

From: Juan Algara [mailto:Juan.Algara@pwav.com]
Sent: quarta-feira, 27 de Janeiro de 2010 10:43
To: Nuno Passos
Cc: João Santos
Subject: FW: Reseller agreement

Hi Nuno.
Here you have our comments in red.

Juaj

Regarding this Reseller Agreement, the comments we have right now are the same as Eduardo sent you already, as follows:

2

EXHIBIT 1

- The contract introduction specifies a non-exclusive reseller, which is wrong, what we have now in an exclusive agreement for all the countries that we are working on and that were defined by Powerwave

  PWAV will not sign an exclusive agreement, but as long they are performing well; we will not introduce another reseller.

- Point 2.1, does not makes sense due to the above stated item.
- Point 3.2, Powerwave should be liable to previous signed agreements when withdrawing a product from the market, This means covering all the cost involved on the termination of that supply to a customer that is for example a annual frame agreement for supply and support

- Point 6.4, Payment conditions should 90 days after invoice. We have agreed with Powerwave 90 days after the invoice and it should stay like that
  We need to stick to the 60 days, this is Europe, and 60 days is not uncommon. In the best case we could go to 75 days.

As for the 4% commission we still think is too low, because of the promotion and support work that we do in Portugal. Powerwave needs to know that we annual invest a lot of money and time on promoting its products through all our customers and supporting the correct implementation of it. Also, we do all the local support & maintenance plus all the logistics involved on the R&R process. We think these are all good reasons to show them that 4% is too low
Netplan need to justify their level of commission.


We also consider that we should receive a percentage in all the products from Powerwave that are coming to Portugal, even if they are not supplied by us.
As you know, after that all the necessary local support & maintenance plus all the logistics involved on the R&R process are supported by us
PWAV has signed an agreement with the company Resource Holding Group (RGH) for Middle East and African markets. Netplan has to contact this company and coordinate the business in Africa.


Kind Regards,
*Nuno Passos*

Net Plan - Telecomunicações e Energia, S.A.
Centro Empresarial de Telheiras
Rua Hermano Neves, Nº 22 - 2º A, 1600 - 477 Lisboa
Phone: + 351 217 521 250
Fax: + 351 217 521 255
npassos@netplan.pt
www.netplan.pt

   
PME líder      · SGS      SGS      · SGS

Por favor pense no ambiente antes de imprimir este e-mail.

From: Juan Algara [mailto:Juan.Algara@pwav.com]
Sent: segunda-feira, 18 de Janeiro de 2010 11:40
To: Nuno Passos
Subject: Reseller agreement

Nuno,
Please, let me know when I could call you to talk about the reseller agreement.

3

Best regards

Juan Algara
Powerwave Technologies
RSM Spain&Portugal
+34 669 668 312

Click here to report this email as spam.

EXHIBIT 1

PROCURAÇÃO

POWER OF ATTORNEY

Kevin Michaels, natural de August 26, 1958, de nacionalidade norte-americana, portador do passaporte número 211342031, emitido em 16/07/2004, pela United States of America, residente em 9 Vista Montemar, Laguna Niguel, CA 92677, E.U.A, na qualidade de Chief Financial Officer da sociedade POWERWAVE TECHNOLOGIES INC, uma sociedade comercial constituída regularmente ao abrigo do direito de Delaware, com o capital social autorizado de 105,000,000, com sede em 1801 East Saint Andrew Place, Santa Ana, Califórnia, Santa Ana, 92705 EUA, constitui seus bastantes procuradores da sociedade sua representada os Senhores Drs. José Maria Corrêa Sampaio e Pedro Sousa Uva, Advogados, da sociedade de advogados ABREU & ASSOCIADOS – SOCIEDADE DE ADVOGADOS RL, com sede na Avenida das Forças Armadas, n.º 125, 12.º, Lisboa, a quem confere, com a faculdade de substabelecer, por uma ou mais vezes, em conjunto ou separadamente, os mais amplos poderes forenses em direito permitidos, e ainda os especiais para confessar, transigir, desistir e ainda receber custas de parte.

Kevin Michaels, born in August 26, 1958, US citizen, holder of passport number 211342031, issued on the July 16, 2004, by the United States of America, resident at 9 Vista Montemar, Laguna Niguel, CA 92677, in the quality of Chief Financial Officer of the company under the corporate name of POWERWAVE TECHNOLOGIES, INC., a duly registered Delaware company, with the authorized share capital of 105,000,000, with head office at 1801 East Saint Andrew Place, Santa Ana, California, Santa Ana, 92705 USA, hereby appoints as their lawful attorneys, José Maria Corrêa Sampaio and Pedro Sousa Uva lawyers at the law firm ABREU & ASSOCIADOS – SOCIEDADE DE ADVOGADOS RL, with its head office at Avenida das Forças Armadas, 125 – 12th floor, 1600-079 Lisbon, to whom it grants, with the powers to delegate some or all of the above described powers acting jointly or individually, the widest legal representative powers, including the special powers to confess, withdraw and settle any judicial proceedings, as well as to receive payment.

Santa Ana, Califórnia, 27 de Fevereiro de 2013

Santa Ana, California, February 27, 2013

EXHIBIT 1